Bond No. 103804493

| PAYMENT BOND<br>(See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br>March 18, 2002 | OMB No.:9000-0045<br>Expires: 09/30/98 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, DC 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

PRINCIPAL (Legal name and business address)

Centex Construction Co., Inc.
3924 Pender Drive
Fairfax, VA 22030

TYPE OF ORGANIZATION ("X" one)

☐ INDIVIDUAL          ☐ PARTNERSHIP

☐ JOINT VENTURE     ☐ CORPORATION

STATE OF INCORPORATION

SURETY(IES) (Name(s) and business address(es))

Travelers Casualty and Surety
Company
7920 Belt Line Road, 8th Floor
Dallas, TX 75240

| PENAL SUM OF BOND | | | |
|---|---|---|---|
| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| 103 | 722 | 000 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 6/7/2001 | GS-11P-01-MKC-0022 (Neg) |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| Centex Construction Co., Inc. | | PRINCIPAL | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) | | |
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. | (Seal) |
| NAME(S) (Typed) | 1. | 2. | |

| | | CORPORATE SURETY(IES) | | | | |
|---|---|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | Travelers Casualty and Surety Company | STATE OF INC.<br>CT | LIABILITY LIMIT<br>$ 103,722,000.00 | | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Carmen Mims<br>Attorney-In-Fact | | 2. | | |

NSN 7540-01-152-9061
Previous edition not usable

STANDARD FORM 25A (REV. 1-90)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

Acceptability of Bonds Verified
Contracting Officer



PLAINTIFF'S
EXHIBIT
A
ALL-STATE LEGAL SUPPLY CO.

| CORPORATE SURETY(IES) *(Continued)* | | | | | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | 2. | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | 2. | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | 2. | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | 2. | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | 2. | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | 2. | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity. (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25A *(REV. )* BACK

Acceptability of Bonds Verified
Contracting Officer  *calz*

520,662.37
$ 520,444.37

Morkko

# CENTEX CONSTRUCTION COMPANY, INC.
## EXHIBIT E
## PAYMENT BOND

BOND #:8762374
GAIC Bond No. 4389716

KNOW ALL MEN BY THESE PRESENTS:

That I/we Allegheny Jefferson Millwork, LLC _____, of, Sterling _____ d/b/a an individual / partnership / corporation organized under the laws of the State of PA _____, hereinafter called the Subcontractor, and Fidelity and Deposit Company of Maryland and Great American Insurance Company _____ of Baltimore and Cincinnati _____ a corporation organized under the laws of the State of MD/OH _____, hereinafter called the Surety, are held and firmly bound unto Centex Construction Company, Inc. Mid-Atlantic Division, hereinafter called the General Contractor, in the sum of Five Million Nine Hundred Twenty Thousand Ninety Two Dollars and and/or $5,920,092.00 for the payment whereof the Subcontractor and the Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

Whereas, the Subcontractor has, by means of a written agreement dated October 17, 2004 entered into a Subcontract, No. 304-Prettyman-064000-S _____ hereinafter called the Subcontract with General Contractor for work at the project known as Architectural Millwork for the E. Barrett Prettyman Courthouse Annex and Renovation _____, which said Subcontract is incorporated herein by reference and made a part hereof for all purposes.

NOW THEREFORE, the condition of this obligation is such that if the Subcontractor shall make payment to all claimants for all costs and expenses resulting from the performance of this Subcontract and for all labor, materials, equipment, supplies, services and the like, used or reasonably required for use in the performance of this Subcontract, for all or any part of which the General Contractor or Owner is liable, failing which such claimants shall have a direct right of action against the Subcontractor and Surety under this obligation, subject to the General Contractor's priority, and/or the General Contractor shall have the right to bring an action against the Subcontractor and Surety on behalf of unpaid claimants, then this obligation shall be null and void, otherwise, it shall remain in full force and effect;

AND PROVIDED, that any alterations which may be made in the terms of the Subcontract or in the work to be done under it, or the giving by the General Contractor of any extension of time for the performance of the Subcontract, or any other forbearance on the part of either the General Contractor or the Subcontractor to the other shall not in any way release the Subcontractor and the Surety, or either of them, their heirs, executors, administrators, successors or assigns, from their liability hereunder, notice to the Surety of any such alteration, extension or forbearance being hereby waived.

AND PROVIDED FURTHER, that any increase in the Subcontract amount shall automatically result in a corresponding increase in the penal amount of the bond without notice to or consent from the Surety, such notice and consent being hereby waived. Decreases in the Subcontract amount shall not, however, reduce the penal amount of the Bond unless specifically provided in said Change Order.

WITNESSED AND SEALED this 17th day of January , A.D. 2005

WITNESSES:

_R.A. Serdy_

_Frank C. Roddey, Jr._

COUNTERSIGNED: (If applicable)

Signature/State Resident Agent NA
NA
Type or Print Name

Allegheny Jefferson Millwork, LLC
Subcontractor

By _____ By: R.A. Serdy

Typed Name Michael Corrigan, Manager

Richard Serdy, Manager

Fidelity and Deposit Company of Maryland and Great American Insurance Company
Surety

By: Patricia L. Lewis

Typed Name Patricia L. Lewis, Attorney-In-Fact

Jay Black, Attorney-In-Fact

(seal) FIDELITY AND DEPOSIT INCORPORATED 1890 OF MARYLAND

PLAINTIFF'S
EXHIBIT
B
ALL-STATE® INTERNATIONAL



# STANDARD FORM
# OF SUBCONTRACT AGREEMENT

DATE:     2/12/2005

SUBCONTRACTOR:     ~~Dale Lacy Installation, Inc.~~  D.L.I. INCORPORATED

SUBCONTRACTOR ADDRESS:     1823 2nd Ave., N, Lake Worth, FL 33461

PROJECT:     E. Barrett Prettyman Courthouse Annex and Renovation

OWNER:     General Service Administration

ARCHITECT: Graves SHG Joint Venture

GENERAL CONTRACTOR:     Centex Construction Company, Inc.

SUBCONTRACT PRICE:     One Million One Hundred Seventy Five Thousand

00/100                    Dollars ( $ 1,175,000.00 )

PROGRESS ESTIMATE DATE:     20th

PERFORMANCE BOND AND PAYMENT BOND:     NA

RETAINAGE PERCENTAGE:     0%

Allegheny Jefferson Millwork, LLC, Contractor, and the Subcontractor, with their respective offices at the addresses shown above, do hereby enter into this agreement. The foregoing terms are incorporated into and are more fully explained in the following provisions.

1. **Work.**   Subcontractor shall furnish all labor, materials, tools, equipment, supervision and services necessary to prosecute and complete in all respects the work described and referenced herein (the "Work"), being a portion of the work to be required of Contractor under the General Contract (the "Contract") between the General Contractor and Contractor. The Work shall be performed by Subcontractor in a good and workmanlike manner strictly in accordance with the Contract Documents described and referenced herein and incorporated herein by reference (the "Contract Documents"). The Contract Documents are intended to include all labor, materials, tools, equipment supervision and services whether specified therein or not, necessary to complete the Work.

2. **Price.**   Subject to all of the other provisions of this Subcontract, Contractor shall pay to Subcontractor for the due and full performance of the Work the Subcontract Price set forth above (the "Price"); except that if all or a portion of the Work is to be performed on a unit price basis, then the Price set forth shall be deemed an estimated total price for the Work and the actual Price shall be computed in accordance with the lump sum prices, if any, and the unit prices set forth in Schedule A based on actual quantities determined in accordance with the Contract Documents. Notwithstanding any acceptance of this Subcontract by the Contractor, it shall not be binding upon the Contractor until the Subcontractor is notified in writing that the Contractor and General Contractor have signed their written

3. **Progress Payments.**   As soon as practicable after the execution of this Subcontract, Subcontractor shall submit to Contractor a schedule of values of the various portions of the Work, including quantities if required by the Contractor, to enable Contractor to prepare a schedule of values for the entire Contract. Subcontractor's schedule shall be prepared in such form and supported by such data as the Architect or Contractor may direct, and shall be subject to Contractor's approval. The total of scheduled values shall equal the Price and shall be divided in such manner as will facilitate progress payments to Contractor and Subcontractor on the basis of the Work satisfactorily in place. Each scheduled item shall include its proper share of Subcontractor's overhead and profit.

On or before the progress estimate date identified above, Subcontractor shall submit to Contractor an itemized progress estimate, supported by such data as Contractor may require, showing the estimated value of work completed, based on Subcontractor's approved schedule of values and on the conditions for payment under the Contract, including (without limitation) conditions relating to material and equipment delivered to and suitably stored on the site and title to the materials and equipment. Each such progress estimate shall show also the amount of all previous payments under the Subcontract and the amount of current retainage, and shall be accompanied by a duly executed and acknowledged sworn Subcontractor's statement of persons furnishing materials and labor, in form satisfactory to Contractor, and by a waiver of lien in form satisfactory to Contractor. Subcontractor shall be paid on its applications for progress payments after all approvals of its work have been given (including those of the Architect and General Contractor and lender), it has fully complied with all other applicable provisions herein, it is not in default on any other agreement with the Contractor ~~and the Contractor has received payment for Subcontractor's work.~~

Subcontractor's progress estimate shall be used in the preparation of Contractor's application for payment to the General Contractor under the Contract. Contractor shall pay to Subcontractor, ~~upon receipt of payment from the General Contractor,~~ an amount equal to the value of Subcontractor's completed work, to the extent allowed and paid by the General Contractor on account of Subcontractor's work, less all previous payments and less the

Rev. 10/97                                    1

PLAINTIFF'S
EXHIBIT
C
ALL-STATE® INTERNATIONAL

amount of current retainage. "Previous payments" shall include all amounts theretofore paid on account of the Work, all charges for materials or services furnished by Contractor and properly chargeable to Subcontractor and all costs incurred by Contractor properly chargeable to Subcontractor as obligations of Subcontractor. "Current retainage" shall be calculated by multiplying the value of the Work completed and qualified for payment by retainage percentage set forth above. ABSOLUTELY NO WORK SHALL BE DONE BY THE SUBCONTRACTOR WITHOUT ALL REQUIRED INSURANCE POLICIES IN FORCE. ABSOLUTELY NO PAYMENTS SHALL BE MADE TO THE SUBCONTRACTOR IF IT DOES NOT HAVE ALL SUCH REQUIRED INSURANCE.

At any time during the administration of the Contract the Contractor may request the Subcontractor to provide satisfactory evidence that all required insurance policies are in force as of the time of the request for a Progress Payment. Also at any time during the administration of the Contract, the Contractor may require the Subcontractor to provide satisfactory evidence that it is in full and current compliance with all governmental and/or administrative requirements, including, but not limited to, the items mentioned in sections 18(a) and 18(f) hereof, and all administrative and reporting and accounting requirements of the Project.

~~Failure to provide the foregoing items in this section 3 shall be sufficient cause to withhold any progress payment either in process or otherwise actually due and owing to the Subcontractor.~~

~~Conditions upon and provided that the Subcontractor has fully and completely complied with the foregoing terms and provisions, the Subcontractor shall be able to paid within seven (7) days of Contractor's receipt of payment from the Owner. Notwithstanding the foregoing, if the Contractor reasonably believes that there is not a sufficient sum exclusive of retainage left to be paid on this Subcontract to have the Work completed, the Contractor may withhold any part or all of a payment requested by the Subcontractor until such time as the Subcontractor provides the Contractor (1) sufficient proof documentation including purchase orders, sub-subcontracts, canceled checks and other records and (2) written assurances satisfactory to the Contractor, which will conclusively demonstrate that there are sufficient monies left to be billed to complete the Work after payment of the sum requested. At all times during the administration of this subcontract, in addition to any retainage held by the Contractor, there must be a sum unpaid by the Contractor sufficient to complete the Subcontractor's remaining Work.~~

**4. Final Payment.** A final payment, consisting of the unpaid balance of the Price, shall be made within sixty (60) days after the last of the following to occur: (a) full completion of the Work by Subcontractor, (b) timely and proper performance under all other agreements with the Contractor, (c) final acceptance thereof by the Architect and Owner, ~~(d) final payment by Owner to Contractor under the Contract,~~ (e) the furnishing of evidence (satisfactory to Contractor and Owner) by Subcontractor to Contractor that the Subcontractor has paid in full all persons furnishing labor or materials in connection with the Work including any taxes or governmental charges with respect thereto or with respect to the Work, and that neither Subcontractor nor any person claiming under or through Subcontractor has filed or has the right to maintain a lien or other claim against the ~~Owner,~~ the Contractor, Contractor's surety, if any, or the Project Premises, including a sworn certification of payment and releases of liens by all suppliers and persons working under the Subcontractor, and (f) the delivery of all guaranties, warranties, ~~bonds, instruction manuals, performance charts, diagrams, as-built drawings and~~ similar items required of the Subcontractor as its suppliers with respect to the Work. Acceptance of final payment by the Subcontractor shall act as a release of all claims the Subcontractor or any person claiming under or through him may have against the Owner, the Contractor, the Contractor's surety, if any, or the Project premises. ~~The foregoing provisions in this section and section 3 and all other terms and provisions in all sections of this entire agreement are conditions of this agreement and must be completely and strictly fulfilled before any duty by the Contractor shall be owed. They are not provisions which merely reference the timing of payments or other acts required to be performed prior to payment, but rather are conditions to payment and allocate the risks of doing business and precedent, or other wise distinguished in any manner. Neither they nor any other term or provision in this agreement shall be deemed or interpreted as~~

**5. Payment of Labor, Supplies and Material.** Subcontractor will receive such payments made by the Contractor and will hold the right to receive such payments as a trust fund to be applied first to the payment of its subcontractors (hereinafter also known as "Sub-subcontractors"), laborers and suppliers for the Work, including any amounts payable to any employee benefit plan covering such persons, and Subcontractor will so apply the payments from Contractor before using any part thereof for any other purpose. The Subcontractor shall also require each of its Sub-subcontractors to make similar payments to its Sub-subcontractors and suppliers. Subcontractor shall, as often as requested by Contractor, furnish an affidavit showing the names and addresses of all persons who shall have furnished labor or materials for the Work and the amount due or to become due to each such person. Progress payments may, in the discretion of Contractor, be made in the form of checks payable jointly to Subcontractor and its suppliers or its Sub-subcontractors. If Subcontractor shall fail to pay promptly, when due, for all labor, supplies and materials furnished in connection with the performance of the Work, Contractor may, but shall not be required to, pay the amount of such liabilities and recover the amount thereof from Subcontractor, directly or by the application of any portion of the Price then, or thereafter becoming, due hereunder.

**6. Time of Completion.** Completion of the Work and its several parts within the time allotted or reasonably contemplated under the Contract is of the essence of this Subcontract. Therefore, Subcontractor agrees: (a) to provide, if requested, a schedule for completion of the Work, (b) to provide at the Project site (identified on page 1 hereof) the materials, equipment, laborers and supervision necessary to begin the Work upon Contractor's order to do so, and (c) to perform the Work and all parts thereof promptly, diligently and in such order and sequence as the Contractor may direct to assure the efficient, expeditious and timely prosecution of the entire work under the Contract, including furnishing sufficient forces, supervision, equipment and materials, at such times and for such periods, as the Contractor may direct. Contractor may upon forty-eight (48) hours prior written notice require Subcontractor to provide additional labor and supervision at the Project site. Contractor reserves the right to modify any such progress schedule with respect to the required sequence or duration of the Work or any portion thereof, and Contractor makes no representation that Subcontractor will be able to commence, prosecute, or complete the Work in accordance with any progress schedule.

**7. Extensions of Time.** If for reasons beyond its control Subcontractor shall be materially delayed at any time in the progress of the Work under such circumstances as would entitle the Contractor to an extension of time under the Contract, Subcontractor shall be entitled to a corresponding extension of time for completion of the Work hereunder, provided that Subcontractor shall have filed with Contractor a written claim for each such extension that complies with the requisites for making a claim under the Contract and in sufficient time to permit Contractor to file such a claim against Owner for an extension or other relief under the Contract. If Subcontractor shall be materially delayed by the willful and wrongful act or omission of Contractor, the time for the completion of the Work shall be extended for a period equal to the reasonably estimated period of delay, as determined by Contractor. Anything herein to the contrary notwithstanding, no extension of time shall be granted unless a written claim therefor shall be presented to Contractor within forty-eight (48) hours after the commencement of the delaying event or condition. In no event shall the Subcontractor be allowed any pecuniary compensation for any such delays unless otherwise allowed by the Owner.

Rev. 10/97

2

**8. Changes.**   Contractor may, without invalidating the Subcontract or any bond given hereunder, order additions, deletions, or other modifications to the Work, such changes to be effective only upon written order of Contractor. Any adjustment to the Price or to the time for completion of the Work shall be made in accordance with the applicable provisions of the Contract. Notwithstanding any inability to agree upon any adjustment or the basis for an adjustment, Subcontractor shall, if directed by Contractor, nonetheless proceed in accordance with the order, and the Price and time of completion shall be adjusted in accordance with the foregoing. If requested by Contractor to justify the adjustment, Subcontractor shall submit forthwith its detailed estimate of the value and time involved in any such change or proposed change, including unit costs if requested, and shall furnish detailed records of costs or savings actually realized as a result of any such change. If any such changes diminish the quantity of work to be done, they shall not form the basis for a claim by Subcontractor for loss of anticipated profits. Any additions and deletions will be made at the respective unit prices, if applicable. Anything herein to the contrary notwithstanding, no adjustment to the Price or to the time for completion of the Work shall be allowed the Subcontractor by reason of any change unless a written claim therefor shall be presented to the Contractor within forty-eight (48) hours following the receipt of notice of such change from the Contractor.

If the Contract is terminated, this Subcontract shall be thereupon likewise terminated, and compensation to the Subcontractor shall be made in accordance with the provisions of the Contract, or in the absence of applicable provisions then on an equitable basis based solely on direct labor and material costs incurred by Subcontractor to the time of termination as substantiated by evidence satisfactory to Contractor.

**9. Relationships.**   Subcontractor shall be bound by the decisions of the Architect with respect to the quality and quantity of the Work, meaning of the Contract Documents, acceptability of persons or organizations performing the Work and other matters set forth in the Contract Documents, to the same extent that Contractor may be bound thereby. Subcontractor's Work shall conform to any additional specifications, drawings, or explanations furnished by the Architect for the purpose of detailing and illustrating the Work.

Contractor shall have the right to direct the prosecution of the Work and to coordinate such Work with the work of others; and Contractor shall have, with respect to Subcontractor, the same rights and powers as the Owner has reserved to itself with respect to Contractor for the performance of the applicable portions of the Contract. Subcontractor shall cooperate with, and shall not delay, impede, or otherwise impair the work of others participating in the construction Project.

If Subcontractor is damaged by an act of the Owner, for which act the Contract affords benefits and remedies solely to Contractor, then Subcontractor shall be derivatively entitled to the benefits to be achieved by pursuit of such remedies, as Subcontractor's interest may appear; provided, however, Contractor shall not be required to file any claim or take any other action against Owner on behalf of Subcontractor unless Subcontractor shall provide adequately for the payment of, and shall pay for, all costs and expenses, including attorneys' fees, that may be incurred by Contractor, in proportion to the amount of Subcontractor's claim, in the pursuit of such remedies. Contractor shall not be required on behalf of Subcontractor to file any claim or take any action against any person other than Owner, nor any claim or action that is not asserted in good faith or that would unreasonably extend the date for a substantial final payment under the Contract.

Nothing contained herein shall create any contractual relation between the Owner and Subcontractor or any of its Sub-subcontractors or suppliers. By an appropriate agreement, written where legally required for validity, the Subcontractor shall require each of its subcontractors, to the extent of the Work to be performed by the Sub-subcontractors, to be bound to the Subcontractor by the terms of the Contract Documents, and to assume toward the Subcontractor all the obligations and responsibilities which the Subcontractor, by the Subcontract, assumes hereunder. Said agreement shall preserve and protect the rights of the Owner under the Contract Documents with respect to the Work to be performed by the Sub-subcontractor so that the sub-subcontracting thereof will not prejudice such rights, and shall allow to the Sub-subcontractor the benefit of all rights, remedies and redress against the Subcontractor that the Subcontractor, by the Contract Documents has against the Contractor, any part of the Work performed for the Subcontractor by a Sub-subcontractor shall be pursuant to a written Sub-subcontract between the Subcontractor and such Sub-subcontractor and shall contain provisions that:

(a)   require that such Work be performed in accordance with the requirements of the Contract Documents;

(b)   require submission to the Subcontractor of applications for payment under each Sub-subcontract to which the Subcontractor is a party, in reasonable time to enable the Subcontractor to apply for payment in accordance with the provisions of Sections 3 and 4;

(c)   waive all rights the contracting parties may have against one another or that the Sub-subcontractor may have against the Contractor or the Owner for damages caused by fire or other perils covered by the property insurance described in Section 13;

(d)   recognize the rights of the Contractor pursuant to the Conditional Assignments of Sub-subcontracts under this Section 9 and require the Sub-subcontractor (upon notice by the Contractor that the Contractor has terminated this Subcontract with the Subcontractor pursuant to the terms of Section 21 hereof and that the Contractor has elected, pursuant to this Section 9 to retain the Sub-subcontractor pursuant to the terms of its Subcontract with the Contractor) to complete the unperformed obligations under such Sub-subcontract and, if requested by the Contractor, to enter into an agreement in form and substance satisfactory to the Contractor evidencing the fact that the Sub-subcontractor is bound to the Contractor under its Sub-subcontract in the manner in which it had been bound to the Subcontractor; and

(e)   require the Sub-subcontractor to carry and maintain liability insurance in accordance with Section 13;

and contain no provisions inconsistent with any of the foregoing subsections (a) through (e).

If an Application for Payment is not approved for a cause which is the fault of the Subcontractor, or if the Subcontractor fails to make payment which is properly due to a particular Sub-subcontractor, the Contractor may pay such Sub-subcontractor directly, less the amount to be retained under its Sub-subcontract. Any amount so paid by the Contractor shall be deducted from any payment or payments thereafter due and/or shall be repaid to the Contractor by the Subcontractor immediately upon demand of the Contractor.

The Contractor shall have no obligation to pay, or to see to the payment of, any monies to any Sub-subcontractor. Nothing contained herein shall be deemed to create any contractual relationship between the Contractor and any Sub-subcontractor or to create any rights in any Sub-subcontractor against the Contractor or the Owner.

The Subcontractor shall promptly advise the Contractor of any claim or demand by a Sub-subcontractor claiming that any amount is due to such Sub-subcontractor or claiming any default by the Subcontractor in any of its obligations to such Sub-subcontractor.

As an inducement to the Contractor to execute this Subcontract, the Subcontractor hereby conditionally assigns to the Contractor

all Sub-subcontracts executed by the Subcontractor in connection with the Work and in accordance with the requirements of the Contract Documents, subject to the conditions that (1) this assignment, although a present assignment, shall become effective only upon a termination of this Agreement pursuant to Section 21 and only as to those Sub-subcontracts which the Contractor accepts in writing; and (2) the Contractor shall assume only those assigned Sub-subcontracts which it accepts, as provided in the foregoing subsection (a) and shall become liable only for the obligations thereunder which accrue after the date of termination.

This section shall serve as the instrument of assignment at such time as the assignment becomes effective pursuant to the terms hereof. The Subcontractor agrees, however, upon the Contractor's request, to execute whatever instruments the Contractor may request to conform such assignments. The Subcontractor does hereby constitute and irrevocably appoint the Contractor as his attorney-in-fact in his name, place and stead to execute such documents, in the event that the Subcontractor fails to do so within five (5) days after demand. This power of attorney is irrevocable and coupled with an interest.

**10. Assignment.**     Subcontractor shall not assign, transfer, subcontract or otherwise dispose of this Subcontract, or any part thereof, nor assign any monies due or to become due hereunder, except with the prior written consent of the Contractor. Any assignment of this Subcontract consented to by Contractor shall not operate to relieve Subcontractor of its primary responsibility to Contractor for the due and full performance hereof, nor shall it create any contractual relationship between Contractor and such sub-subcontractor or assignee, and Subcontractor shall continue to be liable to Contractor for all acts and omissions of its sub-subcontractors and assignees.

**11. Bonds.**     Unless the word "none" appears in the space opposite "performance bond and payment bond" on page 1 hereof, Subcontractor, at its own expense, shall obtain from a commercial surety acceptable to Contractor a bond (a) for the due and complete performance of each of Subcontractor's obligations hereunder and (b) for the timely payment of all charges for labor, services and materials furnished for the prosecution of the Work. Such bonds shall be for a sum in liquidated damages equal to the amount set forth in the appropriate space on page 1 hereof, shall be in a form acceptable to Contractor and shall be delivered to Contractor within seven (7) days after execution hereof. If according to the foregoing provisions Subcontractor is not required to furnish such bonds, Subcontractor shall, if requested, submit to Contractor a current financial statement; and Subcontractor reserves the right at any time to require Subcontractor to furnish such bonds, but at Contractor's expense.

**12. Indemnity.**     Subcontractor agrees to defend, indemnify and save harmless Contractor and Owner, their officers, agents and employees from and against all claims, damages, losses, or expenses (including costs and attorney's fees) by reason of liability imposed by law upon Contractor or Owner for damages because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, or on account of damage to property, including loss of use thereof, arising out of or in consequence of the performance of the Work, provided such injury to persons or damage to property is due or claimed to be due in whole or in part to the wrongful or negligent act or omission of the Subcontractor, his employees or agents.

Without limiting the generality of the foregoing the Subcontractor specifically waives the immunity against claims for contribution or indemnity of any applicable Workers' Compensation Act with regard to claims arising from injuries or death of Subcontractor's actual, statutory, temporary or borrowed servants or employees; the Subcontractor shall indemnify and hold harmless the Contractor from liability for acts of the Contractor's own negligence or claimed negligence which result in harm to the employees of the Subcontractor.

**13. Insurance.**     Until completion and final acceptance of the Work, Subcontractor shall maintain and pay for insurance coverage with respect to the Work, of the types and with the minimum limits set forth on the Attachment hereto. Such coverage shall be maintained in form and with companies acceptable to Contractor, Architect and Owner. Notwithstanding said Attachment, or if there is no Attachment hereto regarding insurance, the Subcontractor shall in any event always meet all applicable requirements imposed under the Contract or by any governmental authority having jurisdiction over the Work. Each policy of insurance required herein above shall provide for 30 days' notice to Contractor prior to cancellation or material change in coverage.

The Subcontractor shall bear all risk of loss to, and shall carry appropriate insurance on, any and all of its equipment, tools and material on the job, which coverage shall protect the Subcontractor against all risks including but not limited to fire, vandalism, casualty and theft. The subcontractor waives all rights of subrogation against the Contractor in the event of loss or harm.

Subcontractor shall be responsible for any desired coverage against damage or loss to materials, facilities, tools, equipment, plant scaffolds, bracing and similar items not covered by Owner's or Contractor's fire insurance policy (with builder's risk endorsement), if any, including any materials or equipment of the Owner in transit or not delivered to the Project site under the control of the Subcontractor.

Subcontractor shall furnish Contractor certificates of the insurance required hereunder prior to commencing the Work, showing Owner and Contractor as additional insureds, and a copy of each lost-time accident report made to Subcontractor's insurance carriers. Subcontractor shall cooperate with its insurers to facilitate the adjustment of any claim or demand arising out of operations within the scope of the Work. Nothing contained in this Section 13 shall relieve Subcontractor of its indemnity obligations set forth elsewhere in the Subcontract.

**14. Liens.**     Subcontractor hereby expressly and completely waives and relinquishes on behalf of itself, its successors and assigns and his Sub-subcontractors, any and all claims of, or right to, mechanic's or materialman's lien, against, or with respect to, the Project site or the Work or any portion thereof, or any improvements or materials thereon, or with respect to any unpaid portion of the Price which may be due at any time pursuant hereto. Subcontractor shall deliver to Contractor written verification of such waiver of lien by Subcontractor in form and substance required by Contractor. Such verification shall be recorded in accordance with the law in the county in which the Project site is located. It is expressly agreed that the effect of this waiver shall not be impaired, affected, or diminished by the provisions of this Subcontract relating to the production, from time to time of written waivers of liens or sworn statements, or by any other provisions apparently inconsistent with this waiver. Subcontractor hereby acknowledges that this Subcontract has been executed and entered into by Contractor in reliance upon the aforesaid waiver of rights by Subcontractor. Subcontractor shall defend, indemnify and hold harmless Contractor, Contractor's sureties and Owner from any lien or claim filed or made by Subcontractor or any third person or firm on account of alleged non-payment for labor, materials, or services furnished or performed as part of the Work. Subcontractor shall promptly discharge or remove any such lien or claim by bonding, payment, or otherwise.

**15. Labor.**     Subcontractor shall conform to the labor policy of Contractor and shall not employ any persons or engage in any activities which cause, or are likely to cause, a strike, work stoppage, or other similar concerted labor action. Subcontractor shall comply with all wage scales, reporting obligations and other labor requirements established under the Contract or Contract Documents and by any governmental authority having jurisdiction. Subcontractor shall maintain and exercise control over all employees engaged in the performance of the Work; provided, however, Subcontractor shall remove or cause to be removed from the Project premises any such

Rev. 10/97                                                                4

DLJ INCORPORATED

employee whose presence is determined by the Owner or Contractor to be detrimental to the Owner's best interests.

Subcontractor shall at all times supply a sufficient number of skilled workers to perform the work covered by this subcontract with promptness and diligence. Should any workers performing work covered by this subcontract engage in a strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind, Contractor may, at its option and without prejudice to any other remedies it may have, after forty-eight (48) hours written notice to Subcontractor, provide any such labor and deduct the cost thereof from any monies then due or thereafter to become due Subcontractor.

~~Further, Contractor may at its option, without prejudice to any other remedies it may have, terminate the employment of Subcontractor for the work under this subcontract, and shall have the right to enter upon the premises and take possession for the purpose of completing the work hereunder of all Subcontractor's materials, tools and equipment thereon and to finish this work either with its own employees or other Subcontractors, and in case of such termination of the employment by Subcontractor, Subcontractor shall not be entitled to receive any further payments under the subcontract or otherwise but shall nevertheless remain liable for any damages which Contractor incurs. If the expenses incurred by Contractor in completing the work shall exceed the unpaid balance due Subcontractor, Subcontractor shall pay the difference to Contractor together with any other damages incurred by Contractor in the event of Subcontractor's default. Contractor shall have a lien upon all materials, tools and appliances taken possession of, to secure the payments thereof.~~

~~In the event of any inconsistency between the provisions of this Performance Clause and the Subcontract or the Contract Documents, notwithstanding such inconsistency the provisions of this Performance Clause shall prevail. Without limiting the foregoing, any provision of the Subcontract or Contract Documents with respect to arbitration, or determination of disputes by the Architect, Arbitrators or others, shall not apply to this Performance Clause.~~

**16. Taxes.**    Subcontractor shall pay, or cause to be paid, when due all taxes of every kind imposed, levied, or assessed by any governmental authority with respect to the Work, including taxes for labor, materials and equipment utilized therein and expressly including all sales, use, personal property, excise and payroll taxes. Subcontractor, upon request of Contractor, shall furnish satisfactory evidence of such payments.

**17. Defective Work.**    Subcontractor shall provide safe, sufficient and proper facilities at all times for the inspection of the Work by the Contractor, Owner and Architect, or their representatives. Subcontractor shall, commencing within twenty-four (24) hours after receiving written notice from Contractor, promptly take down and remove all portions of the Work which the Contractor or Architect shall condemn as unsound, improper, or in any way failing to conform to the Contract or the Contract Drawings, and shall make good all Work damaged or destroyed thereby, all at Subcontractor's expense. If Subcontractor fails to correct any such defective Work, Contractor may order Subcontractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, this right of Contractor to stop the Work shall not give rise to any duty on his part to exercise this right for the benefit of Subcontractor or any other person or entity. This right shall be in addition to, and not in restriction of, Contractor's rights under Section 21 hereof.

**18. General.**    Subcontractor shall, at its own expense:

(a)    obtain all necessary permits and licenses and comply with all statutes, ordinances, rules, regulations and orders of any governmental or quasi-governmental authority applicable to the performance of the Work, and be responsible for compliance therewith and correct any violations thereof, including, without limitation, the provisions of equal opportunity clauses applicable to the Project which are set forth in 41 Code of Federal Regulations M60-1.4 (1977), 41 C.F.R. M60-250.4 (1977) and 41 C.F.R. M60-741.4 (1977), as may be amended from time to time, all of which are incorporated herein by reference;

(b)    prepare and submit to Contractor all necessary shop and erection drawings, plans and diagrams, and furnish all necessary samples, catalogue cuts, laboratory and inspection reports and engineering calculations, in sufficient time to permit the orderly and timely prosecution of the Work;

(c)    remove, at least weekly or more often as directed by Contractor, all rubbish and surplus and waste material resulting from the prosecution of the Work and all tools, scaffolding and equipment not currently required in the prosecution of the Work (If such removal is not accomplished promptly, Contractor may remove the same at the expense of Subcontractor);

(d)    not remove from the Project site any material, appliances or equipment delivered thereto without the consent of the Contractor;

(e)    comply with the reasonable recommendations of the Owner's, Contractor's and Subcontractor's insurance carriers or their ratemaking bodies;

(f)    conform to the basic safety policy of Contractor, and comply with all specific safety requirements promulgated by Owner or Contractor, including any such requirements made a part of the Contract Documents as required by the Occupational Safety Health Act (If such safety requirements are not promptly performed by Subcontractor, Contractor may fulfill such requirements at the expense of Subcontractor);

(g)    protect the Work from damage ~~and pilferage~~ until accepted by the Owner, *UP TO FIVE FEET VERTICAL AND HORIZONTAL MILLWORK SURFACES*

(h)    immediately upon request of Contractor, repair all damage to the Work or property of others caused by Subcontractor,

(i)    furnish temporary facilities, ~~and if requested by the Contractor pay for the cost of all water and electric current used by Subcontractor~~

(j)    have an approved representative at all job meetings;

(k)    ~~prepare and make available to Owner and Contractor as-built drawings covering Subcontractor's Work;~~

(l)    hereby agree that any back charges of either party under this Subcontract shall be the cost of all field labor, materials, tools, equipment, insurance and taxes, plus 10% for overhead and profit; and

02/16/2006 13:15 FAX  8474328950          EMALFARB SWAN & BAIN



(m)    furnish ~~supplies~~, labor, ~~engineering, materials~~, tools, equipment and services necessary to complete the Work in a good and workmanlike manner, and the Contract Documents shall not limit or restrict Subcontractor's duties or obligations with respect to the Work.

**19. Guarantee.**    Subcontractor guarantees that the Work shall be free from ~~defects~~ and shall conform to and meet the requirements of the Contract and the Contract Documents; and shall furnish any separate guarantee for the Work, or portions thereof, required under the Contract or Contract Documents. Subcontractor agrees to make good without cost to Contractor or Owner to the satisfaction of the Owner, any portion or portions of the Work which prove defective from the date of acceptance of the Project by Owner. Subcontractor agrees to defend, indemnify and save harmless Contractor against any claims, damages, losses or expenses (including attorneys' fees) made by Owner against the Contractor under the Contract or otherwise with respect to the Work. Acceptance of final payment by the Subcontractor shall not release the Subcontractor from any liability hereunder for defective work.

If no such period is specified in the Contract Documents the Subcontractor shall be responsible to the Contractor for its Work for such period as is allowable under law. Provided, however, and notwithstanding any statute of limitation, rule of law or any term or provision to the contrary herein or in any other Contract Document, if any time hereafter the Owner asserts a claim against the Contractor, whether directly or for contribution or indemnity or otherwise, whether for intentional or negligent acts or omissions, and whether in strict liability, tort, breach of contract or any other cause of action arising out of or relating to the Subcontractor's Work, the Subcontractor may be joined in any such action, arbitration or other dispute resolution proceeding involving such claim. Alternatively, at the Contractor's option, the Contractor may bring an action against the Subcontractor for indemnity at any time prior to the expiration of one year after final judgment is entered against the Contractor and all appeals have been dismissed. In either event, whether by joinder or by separate action by the Contractor, the Subcontractor shall indemnify and hold the Contractor harmless from any and all such claims including but not limited to ~~pay~~ and all losses, charges, costs or expenses paid or incurred by the Contractor, including attorneys' fees.  *1 YEAR.*

**20. Patents.**    Subcontractor agrees to defend, indemnify and save harmless Contractor and Owner from and against loss, liability, damage, cost, or expense (including attorneys' fees) on account of infringement or alleged infringement of any patent rights by reason of the Work or materials used by Subcontractor. Subcontractor shall pay all license fees and royalties pertaining to the Work.

**21. Breach.**    If the Subcontractor performs any Work which does not conform to the Contract requirements, or the Subcontractor commits any act or allows any omission that is a breach of this agreement, whether or not the same rises to the level of a default, the Subcontractor shall be responsible for and indemnify and hold the Contractor harmless from any and all losses, harm, costs, charges and expenses, including, but not limited to, consequential damages, liquidated damages, fines, penalties, costs and attorneys fees, which the Contractor may suffer, pay or incur arising out of or relating to such breach. Without in any way limiting the foregoing, if either before or after the completion of the Work, a claim is made against the Contractor by a federal, state or local authority, or any agency or instrumentality, thereof for violation or alleged violation of any law, statute, ordinance or regulation which arises out of or relates to the Work performed or omitted by the Subcontractor, the Subcontractor shall indemnify and hold the Contractor harmless as stated above. This obligation of the Subcontractor shall apply in all cases where the Subcontractor is or is alleged to be either wholly or partially responsible for the violation or alleged violation. The foregoing rights are intended to be in addition to, and not in lieu of, any other right or remedy the Contractor may have at law or in equity, and nothing herein shall be interpreted or deemed to in any way diminish those rights and remedies.

**22. Default.**

(a) In the event of a default by the Subcontractor, the Contractor shall have all of the rights and remedies as stated above for breach. The Contractor shall have the following additional rights and remedies provided in this Section 22 in the event of a default.

(b) In the event that Subcontractor fails to perform any of its ~~various~~ obligations hereunder, including without limitation, its refusal or neglect to supply a sufficiency of skilled laborers or ~~materials~~ of the proper quality and quantity, its failure to prosecute the Work with promptness and diligence, its failure to provide the exact types and amounts of insurance required hereunder, the filing of a serious or greater violation against the Subcontractor under OSHA, its failure to comply with any of the provisions of Sections 8 through 6 herein, or its causing stoppage, delay or interference with the work of the Contractor or other subcontractors, or in the event the Subcontractor shall become insolvent or commits an act of bankruptcy, or should there be filed by or against it a petition for bankruptcy or for an arrangement, reorganization or appointment of a receiver, then in any such events, each of which shall constitute a default hereunder, Contractor shall have the right, to (i) remedy, or cause any surety to remedy such default utilizing such persons or firms and such equipment and materials as may be necessary and recover from the Subcontractor the amount of any default, loss or damage, whether liquidated or unliquidated, suffered or incurred as a result of such default, including, without limitation, attorneys' fees, penalties, increased costs and loss of profits, in which event Contractor may deduct and withhold from payments otherwise due Subcontractor any of the foregoing amounts, which deductions shall be deemed credits or back charges against the Price, or (ii) terminate this Subcontract, or(iii) proceed to exercise both (i) and (ii), in which event all of contractor's remedies set forth herein shall survive such termination.

(c) In the event of a Subcontractor default under this Subcontract, Contractor may use Subcontractor's ~~materials and equipment~~ to complete the Work, or may complete the Work in any other expedient manner, and the Subcontractor shall receive no further payments until the Work is complete. Upon completion, if the unpaid balance of the Price exceeds Contractor's cost of completion (including compensation to Architect for additional services made necessary by Subcontractor's default), such excess shall be paid to the Subcontractor; but if such cost of completion exceeds the unpaid balance of the Price, the Subcontractor shall pay the difference to the Contractor immediately upon demand. Contractor is hereby granted a security interest in the equipment, plant tools and materials of Subcontractor which shall from time to time be located upon the Project site, to secure the performance of this Subcontract and the completion of the Work; and Contractor may file or record this Subcontract as a security agreement, financing statement or part of a financing statement under the provisions of the Uniform Commercial Code.

~~(d)~~ The foregoing remedies for default by Subcontractor shall be considered distinct, separate and cumulative and shall be in addition to any other right and remedy given elsewhere in this Subcontract or now or hereafter existing at law or in equity, including any right to the recovery of attorneys fees.

(e)  Subcontractor shall have the rights and remedies available at law or in equity for a breach of this Subcontract by Contractor, provided, however, any alleged breach or default by Contractor hereunder shall be deemed waived unless Subcontractor shall within seven (7) days of any such alleged breach or default give written notice to Contractor specifying the details thereof.

(f)  In the event that the Contractor issues a termination for default and it is subsequently determined or adjudicated that there was not sufficient cause for finding the Subcontractor in default, the termination shall be deemed a termination for convenience and the Subcontractor entitled exclusively to the rights and remedies set forth in the Section herein allowing for termination by the Contractor for convenience.

(g)  In the event of a default under this agreement by the Subcontractor, the contractor shall give the Subcontractor forty-eight (48) hours written notice prior to the exercise of a remedy or remedies by Contractor or otherwise give the Subcontractor prompt notice of its intentions. Provided, however, the Contractor may, but shall not be required to, proceed immediately and without any notice to the Subcontractor at any time which the Contractor believes that there is (1) imminent danger of bodily harm to any person, or (2) there is imminent threat of damage to property, or (3) there is reasonable cause to believe that the project schedule will be delayed if the Contractor does not act promptly, or (4) the Subcontractor has committed the same or substantially the same act or omission on a prior occasion and was given written notice, or (5) notice is for any reasonable cause impractical under the circumstances. In no event shall failure by the Contractor to give the Subcontractor notice be a condition to the Contractor proceeding to exercise a remedy when the Subcontractor has committed a default under this agreement. If the Subcontractor believes that it has not defaulted under this agreement and the Contractor has wrongfully proceeded to exercise a right or remedy hereunder, the Subcontractor shall give the Contractor written notice of the same within forty-eight (48) hours after it learns of the Contractor's actions and specify in detail why the Subcontractor believes that the Contractor has proceeded improperly or the failure to give notice shall be waived. In the event that the Subcontractor gives timely and detailed notice as required and it is determined that Contractor has improperly exercised any right or remedy specified under this agreement, the Subcontractor shall be entitled to be compensated for its direct costs incurred as a result of the Contractor's actions, but in no event shall the Contractor be responsible for any claim of consequential damages or lost profit or any other claim for damages.

23.  **Cancellation.**  In addition to the Contractor's rights in the event of breach and default under Sections 21 and 22, the Contractor may at any time, with or without the Subcontractor being in default, terminate the contract and order the Subcontractor to cease work, for any reason or for no reason, solely at the Contractor's convenience. In the event that the Contractor exercises this right to cancel, and conditioned upon the Subcontractor being in full compliance with all of the terms and provisions of this Subcontract, the Contractor shall pay the Subcontractor according to the procedure herein for the work actually performed in an amount proportionate to the Subcontract price. The Contractor shall not be liable to the Subcontractor for any other charges or costs whatsoever, including, but not limited to, the balance of the Subcontract price or prospective profits or overhead, on work for any reason not actually performed. Further, if the reason for the termination is because of any default or action by the Owner or the Architect or as the result of any Court Order or public authority, then the Contractor shall not be liable to the Subcontractor for any sum greater than that which the Contractor receives from the Owner on behalf of the Subcontractor's performance, less any costs and/or attorneys' fees incurred by the Contractor. In any event, termination, with or without cause, shall not relieve the Subcontractor of any of its responsibilities hereunder or its guarantees on work actually provided.

24.  **Notices.**  All written notices provided for in this Subcontract shall be deemed given by telegram, by fax (with written confirmation copy following), or mailed postage prepaid, certified mail, return receipt requested, to the parties at the address set forth on page 1 of this Subcontract. Either party may, from time to time, by notice as herein provided, designate a different address to which notices to it shall be sent.

25.  **Inspection of Site.**  Subcontractor acknowledges that its authorized representatives have personally inspected the Project site and satisfied itself as to the physical condition thereof and the locally prevailing labor, transportation, utilities, weather and storage conditions.

26.  **Use of Contractor's Equipment.**  Any tools, equipment, scaffolds, ladders and similar items and all materials and building supplies of Contractor leased to or used by Subcontractor shall be leased or used by Subcontractor in an "as is" condition without any warranty, express or implied, by Contractor, and Subcontractor agrees to assume all risk for injury to person or property from all causes in connection with the use or operation of the same.

27.  **Miscellaneous.**

(a)  As regards the subject matter hereof, this writing constitutes the entire agreement between the parties.

(b)  If any provision of this Subcontract conflicts with a provision of the Contract or the Contract Documents, the Contract or Contract Documents provision shall govern.

(c)  This Subcontract shall not be modified or amended in any way except (i) by a writing executed by both parties or (ii) as otherwise expressly provided herein. Except in case of emergency, the only work for which the Contractor shall be responsible and pay for is work directed to be done by an authorized representative of the Contractor in writing. And, it is understood and acknowledged and agreed by the Subcontractor that the only persons authorized to make written contracts or agreements or work authorizations of any kind, or any other legally binding agreement on behalf of the Contractor, are the President and Vice-Presidents of Contractor and the project manager who is expressly designated by one of the above mentioned officers of Contractor as project manager for the Project. Accordingly, without limiting the foregoing, excepting only for emergency situations which threaten life or health or threaten immediate and serious injury to property, no job superintendent or other unauthorized person has any authority to enter into a contract or make a change order or otherwise amend any contract. Except in emergencies, any extra work order, extra work authorization, contract, change order or any other document which purports to change the scope of work, price or any other term of this agreement or in any other way legally binds Contractor to any other contract or agreement which is signed by a job superintendent or other unauthorized person shall be void and inadmissible in

any dispute. The Subcontractor shall not be paid for such work unless, and only to the extent that, such extra work or change, and any contract, or agreement or writing of any kind referencing such work or change, is specifically and expressly accepted and ratified in writing by an authorized representative of the Contractor.

(d)    This Subcontract shall be binding upon and shall inure to the benefit of the parties hereto and their heirs, personal representatives, successors and assigns.

(e)    Where the context requires, the neuter shall include the masculine and feminine and the singular shall include the plural, and vice versa.

(f)    The Contract Documents are available for examination by the Subcontractor at all reasonable times at the Office of Contractor. Subcontractor hereby represents and agrees that it has carefully examined and understands this Subcontract and other Contract Documents, has brought its experience to bear upon the Contract Documents and has reported any error, inconsistency or omission therein to Contractor, has investigated the nature, locality and site of the Work and the conditions and difficulties under which it is to be performed, and that it enters into this Subcontract on the basis of its own examination, investigation and evaluation of all such matters and not in reliance upon any options or representations of the Contractor, the Architect or the Owner, or of any of their respective officers, agents, servants, or employees.

(g)    With respect to the Work to be performed and furnished by Subcontractor hereunder, Subcontractor agrees to be bound to Owner, and to Contractor, by each and all of the terms and provisions of the Contract Documents, and to assume toward Owner and Contractor all of the duties, obligations and responsibilities that Contractor by those Contract Documents assume toward Owner, and Subcontractor agrees further that Owner and Contractor shall have the same rights and remedies as against Subcontractor as Owner under the terms and provisions of the other Contract Documents has against Contractor with the same force and effect as though every such duty, obligation, responsibility, right or remedy were set forth herein in full. Subcontractor shall not be relieved of any of its obligations under this Subcontract by the activities or duties of the Architect. The terms and provisions of this Subcontract with respect to the Work to be performed and furnished by Subcontractor hereunder are intended to be and shall be in addition to and not in substitution for any of the terms and provisions of the Contract Documents.

28. Legal Interpretation. Claims.    The Subcontractor shall be of no force or effect unless and until accepted in writing by the Contractor at its office at Pittsburgh, Pennsylvania. In the event of any claim or controversy regarding this Subcontract, it shall be interpreted in accordance with the laws of the Commonwealth of Pennsylvania, and the parties consent that exclusive jurisdiction and venue of all claims or controversies shall lie in Allegheny County. In the event of any inconsistency between the provisions of this section 28 and the remainder of the Subcontract or the Contract or any of the Contract Documents, notwithstanding such inconsistency, the provisions of this section shall prevail. Without limiting the foregoing, any provisions of this Subcontract or Contract Documents with respect to arbitration, or determination of disputes by the Architect, Arbitrators or others, shall not apply to this Subcontract except for proceedings in arbitration involving the Owner and Contractor. In the event that the Owner files for arbitration with Contractor, or if Contractor files for arbitration with the Owner and the Owner files a counterclaim, Contractor shall have the right and option to join the Subcontractor in such arbitration proceeding, and judgment may be entered upon the decision of the arbitrator or arbitrators in accordance with law.

29. Merit Shop Project.    It is expressly understood by the Subcontractor that this Contract applies to a merit shop construction job wherein employees of both union and non-union employers will be working on the jobsite at the same time. Contractor shall not be responsible for any direct or consequential expenses or damages incurred by the Subcontractor resulting from any labor disputes, including but not limited to damages for work delays. Subcontractor shall work harmoniously with Contractor and the other subcontractors in completing the work in a timely manner. Subcontractor, its employees, suppliers and visitors shall adhere to and abide by the reserved gate or gates which are designated for the use of the Subcontractor in entering and leaving the jobsite.

30. Hazard Communication Standards.    The Subcontractor shall comply with all aspects of the Hazard Communication Standards (29 CFR 1910.1200) and shall share all information regarding hazardous chemicals (by Material Safety Data Sheets) with the Contractor.

31. Continuing Agreement Covering Future Work.    This agreement shall be deemed a continuing agreement between the parties governing any and all future work assignments. In the event that the Contractor orally or in writing authorizes the Subcontractor to perform any other work on this or any other jobsite or project for this or any other owner the terms and provisions of this agreement, except for price and scope of work, shall govern unless and except as modified in writing by both parties. The terms and provisions herein shall automatically apply and constitute the terms and provisions of the contract between the parties whether or not the parties make any reference to this agreement in future work assignments.

32. Prompt Payment Act Notice.    The Subcontractor acknowledges the following information was given prior to entering into said Subcontract: The due date for receipt of payments from the owner of this project is as stated at the beginning of this Agreement, less the specified retention and subject to other terms and provisions of the Owner/Contractor Agreement. This notice is given pursuant to the Pennsylvania Contractor and Subcontractor Payment Act solely for the purpose of complying with the Act. It in no way deletes, modifies, changes or amends any of the terms and provisions of the foregoing Subcontract, including, but not limited to, the Subcontractor's obligations to perform its Work on schedule in a good and workmanlike manner, in strict accordance with the plans and specifications and subject to all other terms and conditions precedent to payment set forth in Sections 3 and 4 of this Subcontract and all other terms and provisions herein.

## SCHEDULE A

**Work**

The Work shall consist of:

Unloading, distribution and installation of all millwork as per the attached scope ~~face sheet which was~~ ~~prepared and related items included in our contract with Centex Construction Co. included but not~~ ~~terms of contract between Allegheny Jefferson Millwork, LLC and Centex Construction Co. included but not~~ ~~limited to schedule are incorporated and made part of this subcontract.~~ Also included: ~~fasteners, adhesives~~, clean-up, protection, caulking, touch-up. Unloading, ~~premium time,~~ hoisting and all necessary passes or permits required for unloading or access to work area. ~~The Subcontractor is to verify the existence of~~ ~~adequate in-wall blocking.~~ The subcontractor shall not proceed in the absence of adequate blocking ~~without~~ written authorization from the contractor. Work per AWI premium grade specifications. ~~See Attached~~ ~~Schedule A dated 1/21/05.~~

(See attached for any unit prices or lump sum prices, if applicable.)

## SCHEDULE B

**Contract Documents**

The contract documents shall consist of all portions of the following documents relating to or affecting the performance of the Work:

| | | |
|---|---|---|
| 1 | The Plans dated: | See attached Exhibit A |
| 2 | The Specifications dated: | August 31, 2001 |
| 3 | The ~~Contract listed~~ | ~~October ??, 2001~~ 2/21/2005 |
| 4 | The Safety Addendum Dated: | Exhibit "I" Subcontractor Safety Package (undated) |
| 5 | All addenda to the Plans and Specification as they either reference or affect any of the Subcontractor's Work. | |
| 5 | Allegheny Jefferson Millwork's Shop Drawings as approved by the Architect. | |
| 6 | Allegheny Jefferson Millwork's scope of work dated 1/21/05 (Schedule A). | |
| 7 | ~~Exhibit A-1 GSA Construction Contract Clauses is available for review, if requested.~~ | |
| 8 | Scope of work for Dale Lacy Installation, Inc. | |

## SCHEDULE C

Subcontractor and any of its sub-subcontractors shall, with respect to the Work, maintain and pay for insurance coverages as required by Section #13. No work shall begin without required coverages.

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this Subcontract, in duplicate, as of the date set forth on page 1 hereof:

**Allegheny Jefferson Millwork, LLC**

By: _____
Title:    Richard A. Serdy, Manager


By: _____
Title:    Michael Corrigan, Manager

**Dale Lacy Installation, Inc.**

Subcontractor

By: _____
Title: _____

Rev. 10/97

9



**JEFFERSON
MILLWORK
& DESIGN**

# ALLEGHENY MILLWORK

### Dale Lacy Installation, Inc.

### E. Barrett Prettyman
### Scope of Work

**Scope of work:** Installation of the following:

1) All panels, handrails and trims associated atrium stair.
2) All panels, railings, ~~railing grille~~, trims and handrails associated atrium walkways and guard railings.
3) All veneer bookcases, trims, counter tops, nosing, wainscot and baseboard associated with 5th & 6th floor areas.
4) All type 3 jamb casings and scribes. (Excludes installation of jambs, doors and hardware.)
5) All plastic laminate casework and counter tops.
6) All baseboard trim according to the finish schedule dated 7-20-04. (See attached).
7) Mock-ups as required.
8) Daily clean-up and installation and maintenance of protection materials.

**Inclusions:** Complete installation, normal fasteners, and tools as required, unloading and distribution of material and deliver it to the work site. General layout for installation of required millwork. Removal of trash and debris from job site daily. Applying protection to millwork. Daily work reports with total man-hours worked, work performed and job site conditions turned into the site foreman every day. Required manpower on site throughout the completion of the project. Provide manpower ~~and overtime~~ needed to complete this project on time. ~~Evening work as required.~~

**Exclusions:** All permits, ~~bonds and~~ building fees. Elevator charges, hoisting fees, and electricity. All protection material, rough carpentry and in wall blocking.

FLOORS 2,3,*4 BOOKCASES, WAINSCOT, AND RELATED
TRIM, ETC.

02/16/2006 13:18 FAX 8474328950    EMALFARB SWAN & BAIN

# CENTEX CONSTRUCTION COMPANY, INC.

3824 Pender Drive    Fairfax, Virginia 22030    703-273-3311
703-834-5520
(Fax)

## EXHIBIT A
## CONTRACT DOCUMENTS
## E. BARRETT PRETTYMAN COURTHOUSE
## ANNEX AND RENOVATION
## WASHINGTON, DC

The Contract Documents referred to in the Subcontract Agreement shall consist of the Prime Contract dated March 15, 2002 (Including Prime Contract Documents listed below), Subcontract Agreement (including Subcontract General Conditions, Scope of Work, Special Provisions) and Exhibits A through I and Subcontract Amendment No. 1 (if Subcontractor is included in Contractor's Subguard Program.

Provisions which are specifically required to be inserted into each Subcontract and/or Purchase Order agreement as attached hereto as Exhibit A.1.
List of Documents, Exhibits and other Attachments attached hereto as Exhibit A.2.
Tax Exemption Letter attached hereto as Exhibit A.3.

Document List:

Architectural Drawings, Complete (see attached list)
Straightline Corporation Field Use Drawings, Complete
Amendments 1-4
Specification Sections 5700, 5710, 6400, & 6410
RFIs and Proposals received to date by Subcontractor

THE LAW OFFICE OF

## SHAWN C. WHITTAKER

SUITE 340

9055 COMPRINT COURT

GAITHERSBURG, MARYLAND 20877-1310

PHONE (301) 208-9114

FACSIMILE (301) 208-0362

ADMITTED IN MD, VA, DC

**FILE COPY**

www.whittaker-law.com

shawn@whittaker-law.com

### REQUEST FOR PAYMENT BOND

February 22, 2006

**BY CERTIFIED MAIL 7004 2510 0003 0993 7756**
**RETURN RECEIPT REQUESTED**

U.S. General Services Administration
Public Buildings Service
1800 F Street, NW
Washington, DC 20405

　　　　　　Re:　E. Barrett Prettyman Courthouse Annex
　　　　　　　　and Renovation
　　　　　　　　Washington, DC
　　　　　　　　General Contractor:　Centex
　　　　　　　　Construction Company, Inc.
　　　　　　　　Claimant:　DLI, Incorporated
　　　　　　　　Amount of Claim:　$535,033.70

To Whom It May Concern:

　　　The undersigned has been retained as counsel by DLI, Inc. with regards to the above referenced claim. Prior to October 17, 2004, Centex Construction Company, Inc. ("Centex") entered into a general contract with the U.S. General Services Administration, for the construction of renovations and improvements to the E. Barrett Prettyman Courthouse. I am hereby requesting, pursuant to 40 U.S.C.S. § 3133 a copy of the payment bond as required by the Miller Act, 40 U.S.C.S. § 3133. The required affidavit is enclosed. If there are any costs involved and if you have any further questions, please do not hesitate to contact me.

　　　　　　　　　　DLI, Inc.

　　　By:　_____

　　　　　　　　　　Its Attorney and Agent
　　　　　　　　　　Shawn C. Whittaker

Form Letters I



PLAINTIFF'S
EXHIBIT
D
ALL-STATE LEGAL SUPPLY CO.

## AFFIDAVIT

I, Shawn C. Whittaker, do depose and state as follows:

1.   I am counsel and agent for DLI, Incorporated ("DLI"), a subcontractor on the E. Barrett Prettyman Courthouse Annex and Renovation Project in Washington, DC.

2.   Prior to October 17, 2004, Centex Construction Company, Inc., ("Centex") entered into a general contract with the United States General Services Administration for improvements and renovations to the E. Barrett Prettyman Courthouse.

3.   On October 17, 2004, Centex entered into a subcontract with Allegheny Jefferson Millwork, LLC ("Jefferson") for Jefferson to provide labor and materials for improvements and renovations to the E. Barrett Prettyman Courthouse.

4.   On or about December 6, 2004, Jefferson entered into a subcontract with DLI for DLI to supply labor and installation materials, including screws, nails, and adhesive for the installation of architectural millwork and casework for the improvements and renovations to the E. Barrett Prettyman Courthouse.

5.   As of February 22, 2006, DLI is owed $535,033.70 for materials and labor furnished for the prosecution of the above mentioned Project.

I HEREBY affirm pursuant to the penalties of perjury that I have personal knowledge of the information contained in this Affidavit and the information contained in this Affidavit is true

THE LAW OFFICE OF SHAWN C. WHITTAKER
9055 Comprint Court – Suite 340
Gaithersburg, MD 20877
Tel: 301.208.9114 / Fax: 301.208.0362

and accurate to the best of my personal knowledge, information and belief.

Shawn C. Whittaker
Attorney and Agent for DLI, Inc.

DATE: 2/22/06

STATE OF MARYLAND

COUNTY OF MONTGOMERY

I, Sharon Rose, notary public for the aforesaid, do certify that Shawn C. Whittaker, attorney and agent of DLI, Inc. this day made oath before me in my presence aforesaid that the information contained in the foregoing Affidavit is true and accurate and made upon personal knowledge.

Given under my hand this the 22nd day of February, 2006.

Sharon Rose
My Commission Expires:  January 1, 2008

AFFIDAVIT - 2

THE LAW OFFICE OF SHAWN C. WHITTAKER
9055 Comprint Court – Suite 340
Gaithersburg, MD 20877
Tel: 301.208.9114 / Fax: 301.208.0362

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

## OFFICIAL USE

| | |
|---|---|
| Postage | $ 0.39 |
| Certified Fee | 2.40 |
| Return Receipt Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.64 |

Postmark FEB 24 2006

Sent To *Centex Construction Company, Inc.* CSC Lawyers Inc Svc company

Street, Apt. No., or PO Box No. *11 East Chase Street*

City, State, ZIP+4 *Baltimore, MD 21202* ( DLI

7005 0390 0001 9811 9816

PS Form 3800, June 2002    See Reverse for Instructions

**DLI.COURTHOUSE
NOTICE #1**



PLAINTIFF'S EXHIBIT
E
ALL-STATE LEGAL SUPPLY CO.

THE LAW OFFICE OF

## SHAWN C. WHITTAKER

SUITE 340

9055 COMPRINT COURT

GAITHERSBURG, MARYLAND 20877-1310

PHONE (301) 208-9114

FACSIMILE (301) 208-0362

**FILE COPY**

ADMITTED IN MD, VA, DC

www.whittaker-law.com

shawn@whittaker-law.com

## <u>NOTICE OF PAYMENT BOND CLAIM</u>

February 21, 2006

**<u>BY CERTIFIED MAIL 7004 2510 0003 0993 7763</u>**
**<u>RETURN RECEIPT REQUESTED</u>**

Fidelity and Deposit Company of Maryland
Attn:  Resident Agent
Robert L. Lawrence
3910 Keswick Road
Baltimore, MD 21211

**<u>BY CERTIFIED MAIL 7004 2510 0003 0993 5608</u>**
**<u>RETURN RECEIPT REQUESTED</u>**

Great American Insurance Company
580 Walnut Street
Cincinnati, OH 45202

**<u>BY CERTIFIED MAIL 7004 0390 0001 9811 9182</u>**
**<u>RETURN RECEIPT REQUESTED</u>**

Centex Construction Company, Inc.
Attn:  Resident Agent
CSC Lawyers Incorporating Service Company
11 East Chase Street
Baltimore, MD 21202

**<u>BY CERTIFIED MAIL 7004 2510 0003 0993 7749</u>**
**<u>RETURN RECEIPT REQUESTED</u>**

Allegheny Jefferson Millwork, LLC
Attn:  Registered Agent
44098 Mercure Circle, Suite 115
Sterling, VA 20166

ALL-STATE LEGAL®
PLAINTIFF'S
EXHIBIT
F

Re:     E. Barrett Prettyman Courthouse Annex and Renovation
Washington, DC

Form Letters1

Fidelity and Deposit Company of Maryland Payment Bond
No. 8762374
Great American Insurance Company Payment Bond No.
4389716
Payment Bond Date:  January 17, 2005
Claimant:  DLI, Incorporated
Amount of Claim:  $535,033.70

DLI, Incorporated ("DLI") contracted with Allegheny Jefferson Millwork, LLC ("Jefferson") to supply labor and installation materials, including screws, nails, and adhesive for the installation of architectural millwork and casework beginning on or about December 6, 2004 for the above mentioned project pursuant to the aforementioned payment bond between the Principal, Jefferson, and the Surety, Fidelity and Deposit Company of Maryland and Great American Insurance Company.  The most recent date of work or delivery for materials supplied by DLI was December 15, 2005.  There remains due and owing to DLI for materials and labor furnished for the prosecution of the above mentioned project the sum of $535,033.70, as of the date of this Notice.

If DLI's claim is not satisfied within thirty (30) days from the date of this letter, DLI does hereby reserve its claim to file suit pursuant to the payment bond referred to above.

Executed this 22nd day of February, 2006.

DLI, Incorporated

By:

Its Attorney and Agent
Shawn C. Whittaker

Form Letters1

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Centex Construction Co Inc
CSC Lawyers Incorporating
Service Company
11 East Chase Street
Baltimore, MD 21202

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
☐ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
E Henne                            02.13.06

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*    ☐ Yes

2. Article Number
*(Transfer from service label)*    7005 0390 0001 9811 9182    DLI

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

**DLI.COURTHOUSE
NOTICE #1**



PLAINTIFF'S
EXHIBIT

G

LAW OFFICES OF

# SHAWN C. WHITTAKER

SUITE 340

9055 COMPRINT COURT

GAITHERSBURG, MARYLAND 20877-1310

PHONE (301) 208-9114

FACSIMILE (301) 208-0362

ADMITTED IN MD, VA, DC

www.whittaker-law.com
shawn@whittaker-law.com

## NOTICE OF PAYMENT BOND CLAIM ON SUBCONTRACTOR'S PAYMENT BOND AND GENERAL CONTRACTOR'S PAYMENT BOND PURSUANT TO MILLER ACT

March 10, 2006

**BY CERTIFIED MAIL 7004 2510 0003 0993 5615**
**RETURN RECEIPT REQUESTED**

Fidelity and Deposit Company of Maryland
Attn: Resident Agent
Robert L. Lawrence
3910 Keswick Road
Baltimore, MD 21211

**BY CERTIFIED MAIL 7004 2510 0003 0993 5622**
**RETURN RECEIPT REQUESTED**

Great American Insurance Company
580 Walnut Street
Cincinnati, OH 45202

**BY CERTIFIED MAIL 7004 2510 0003 0993 5639**
**RETURN RECEIPT REQUESTED**

Centex Construction Company, Inc.
Attn: Resident Agent
CSC Lawyers Incorporating Service Company
11 East Chase Street
Baltimore, MD 21202

**BY CERTIFIED MAIL 7004 2510 0003 0993 5646**
**RETURN RECEIPT REQUESTED**

Allegheny Jefferson Millwork, LLC
Attn: Registered Agent
44098 Mercure Circle, Suite 115
Sterling, VA 20166

Form Letters1


PLAINTIFF'S EXHIBIT

H

ALL-STATE LEGAL®

# SHAWN C. WHITTAKER

Re:     E. Barrett Prettyman Courthouse Annex and Renovation
                Washington, DC
        General Contractor's Payment Bond – Unknown,
                Requested from General Services Administration
                pursuant to the Miller Act on February 22, 2006
        Subcontractor's Payment Bond - Fidelity and Deposit
                Company of Maryland Payment Bond No. 8762374
        Subcontractor's Payment Bond Great American Insurance
                Company Payment Bond No. 4389716
        Subcontractor's Payment Bond Date: January 17, 2005
        Claimant: DLI, Incorporated
        Amount of Claim: $565,141.78

DLI, Incorporated ("DLI") contracted with Allegheny Jefferson Millwork, LLC ("Jefferson") to supply labor and installation materials, including screws, nails, and adhesive for the installation of architectural millwork and casework beginning on or about December 6, 2004 for the above mentioned project pursuant to the aforementioned subcontractor's payment bond between the Principal, Jefferson, and the Surety, Fidelity and Deposit Company of Maryland and Great American Insurance Company. The most recent date of work or delivery for materials supplied by DLI was December 15, 2005. There remains due and owing to DLI for materials and labor furnished for the prosecution of the above mentioned project the sum of $565,141.78, as of the date of this Notice.

Additionally, please accept this as notice pursuant to the provisions of 40 U.S.C. 270b of DLI's intention to proceed under Centex Construction Company, Inc.'s ("Centex") payment bond. Please forward to the undersigned a copy of Centex's payment bond.

If DLI's claim is not satisfied within thirty (30) days from the date of this letter, DLI does hereby reserve its claim to file suit pursuant to the payment bonds referred to above.

Executed this 10th day of March, 2006.

                        DLI, Incorporated


        By:     _____
                Its Attorney and Agent
                Shawn C. Whittaker

Form Letters1



**DLI.COURTHOUSE
NOTICE #2**



| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____  ☐ Agent  ☐ Addressee<br>B. Received by ( Printed Name )   C. Date of Delivery<br>G. Konat   03.13.06 |

1. Article Addressed to:

Centex Construction Co. Inc
Attn: Resident Agent
CSC Lawyers Incorporating
11 East Chase St.
Baltimore MD 21202

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered      ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)    7004 2510 0003 0993 5639     DLI

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**DLI.COURTHOUSE
NOTICE #2**



ALL-STATE LEGAL® PLAINTIFF'S EXHIBIT J



GSA National Capital Region

RECEIVED
APR 1 7 2006
BY:_____

APR 1 3 2006

Mr. Shawn C. Whittaker, Esq.
9055 Comprint Court
Gaithersburg, MD 20877-1310

Dear Mr. Whittaker:

This is in response to your February 22, 2006, request for a copy of the payment bond for the E. Barrett Prettyman Courthouse Annex and Partial Renovation Project.
A copy of the payment bond from Centex is enclosed.

It is my hope that this information addresses your request. However, should you need additional information, please do not hesitate to contact me or Thomas James, Deputy Assistant Regional Administrator, at (202) 708-5891.

Sincerely,

Robin G. Graf
Acting Assistant Regional Administrator
Public Buildings Service

Enclosure



**U.S. General Services Administration**
301 7th Street, SW
Washington, DC 20407-0001
www.gsa.gov





# DLI.COURTHOUSE
## NOTICE #2



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fidelity & Deposit Co.
Attn: Resident Agent
Robert L. Lawrence
3910 Keswick Rd.
Baltimore, MD 21211

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
Edward S   3-1-06

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7004 2510 0003 0993 5615   DLI

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Great American Insurance
580 Walnut St.
Cincinnati, OH 45202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Richard Fuehrmann   ☐ Addressee

B. Received by ( Printed Name)   2. Date of Delivery
3/3/06

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7004 2510 0003 0993 5622   DLI

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**DLI.COURTHOUSE
NOTICE #2**



**PLAINTIFF'S EXHIBIT
M**
ALL-STATE LEGAL SUPPLY CO.



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 0.39 |
| Certified Fee | 2.40 |
| Return Receipt Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | — |
| Total Postage & Fees | $ 4.64 |

Postmark Here FEB 22 2006

Sent To Fidelity & Deposit Company of Maryland    Robert L. Lawrence
Street, Apt. No.; or PO Box No. 3910 Keswick Rd
City, State, ZIP+4 Baltimore, MD 21211    DLI

7004 2510 0003 0993 7763

PS Form 3800, June 2002    See Reverse for Instructions

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 0.39 |
| Certified Fee | 2.40 |
| Return Receipt Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | — |
| Total Postage & Fees | $ 4.64 |

Postmark Here FEB 22 2006

Sent To Great American Insurance Company
Street, Apt. No.; or PO Box No. 580 Walnut Street
City, State, ZIP+4 Cincinnati, OH 45202    DLI

7004 2510 0003 0993 9808

PS Form 3800, June 2002    See Reverse for Instructions

## DLI.COURTHOUSE
## NOTICE #1



PLAINTIFF'S EXHIBIT
N
ALL-STATE LEGAL SUPPLY CO.

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>*Richard Fuehman*  ☐ Agent  ☐ Addressee<br>B. Received by ( Printed Name )    C. Date of Delivery  2/7/4 |
| 1. Article Addressed to:<br><br>Great American Insurance<br>Company<br>580 Walnut Street<br>Cincinnati, OH 45202 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No<br><br>3. Service Type<br>☒ Certified Mail    ☐ Express Mail<br>☐ Registered    ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)    ☐ Yes |
| 2. Article Number<br>(Transfer from service lab)    7004 2510 0003 0993 5608    ( DLB) | |

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

## DLI.COURTHOUSE
## NOTICE #1



USPS - Track & Confirm                                                    Page 1 of 1

 **UNITED STATES POSTAL SERVICE**

Home  |  Help

<u>Track & Confirm</u>

# Track & Confirm

## Search Results

Label/Receipt Number: **7004 2510 0003 0993 7763**
Status: **Arrival at Unit**

Your item arrived at 9:43 am on February 23, 2006 in BALTIMORE, MD
21211. No further information is available for this item.

Information on this item has been restored from offline files and will be
available online for 30 days from 05/03/2006.

**Track & Confirm**

Enter Label/Receipt Number.

 POSTAL INSPECTORS     site map    contact us    government services    jobs    **National & Premier Accounts**
Preserving the Trust       Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy