## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA         :
for the use and benefit of
D.L.I. INCORPORATED              :

          Plaintiff            :
                                  Case No.: 1:06CV00875 (RCL)
v.                               :

ALLEGHENY JEFFERSON             :
MILLWORK, LLC, et al.
                       :
          Defendants

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, Allegheny Jefferson Millwork, LLC, Fidelity and Deposit Company of Maryland, Great American Insurance Company, and Travelers Casualty and Surety Company, hereby move for partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7.  In support of this Motion, defendants state that with respect to plaintiff's claims for damages for costs associated with having to comply with a government determination regarding additional wages due to plaintiff's laborers on the project (the so-called "Davis Bacon" issue), there is no genuine dispute as to any material fact and defendants are entitled to judgment with respect to that issue as a matter of law. The defendants respectfully refer this Court to the attached Memorandum of Points and Authorities in support of this motion.

WHEREFORE, defendants respectfully request that this Court grant their motion for partial summary judgment in the above-captioned matter.

Respectfully submitted,

GAVETT AND DATT, P.C.


BY _____/s/_____

    Geoffrey S. Gavett
    D.C. Bar No. 375884
    15850 Crabbs Branch Way
    Suite 180
    Rockville, Maryland 20855-2622
    (301) 948-1177
    **Counsel for Defendants**
    **Allegheny Jefferson Millwork, LLC**
    **Fidelity and Deposit Co. of Maryland**
    **Great American Insurance Co.**
    **Travelers Casualty and Surety Co.**

## POINTS AND AUTHORITIES

1.    Federal Rule of Civil Procedure 56.

2.    Attached Memorandum of Points and Authorities.


_____/s/_____
Geoffrey S. Gavett

## REQUEST FOR HEARING

Defendants respectfully request a hearing on their Motion for Partial Summary Judgment.


_____/s/_____
Geoffrey S. Gavett

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Defendants' Motion for Partial Summary Judgment, Statement of Material Facts as to Which There is no Genuine Issue, supporting Memorandum of Points and Authorities, and proposed order were electronically filed and electronically served on this 30 day of July, 2007 to:

Shawn C. Whittaker, Esquire                                    **Counsel for Plaintiff**
The Law Office of Shawn C. Whittaker, P.C.
902 Wind River Lane, Suite 203
Gaithersburg, Maryland 20878
240-477-1677


                                                    _____/s/_____
                                                    Geoffrey S. Gavett

F:\Data\GD\Corporate\428.001\pleadings\AJM Motion for Partial Summary Judgment.wpd

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**<br>**for the use and benefit of**<br>**D.L.I. INCORPORATED** | **:**<br><br>**:** | |
| **Plaintiff** | **:** | **Case No.: 1:06CV00875 (RCL)** |
| **v.** | **:** | |
| **ALLEGHENY JEFFERSON**<br>**MILLWORK, LLC, et al.** | **:**<br><br>**:** | |
| **Defendants** | | |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Civil Rule 7(h), defendants, Allegheny Jefferson Millwork, LLC, Fidelity and Deposit Company of Maryland, Great American Insurance Company, and Travelers Casualty and Surety Company, respectfully submit this statement of material facts as to which defendants contend there is no genuine issue.

1.      Defendant, Allegheny Jefferson Millwork, LLC ("AJM"), is a limited liability company formed by Allegheny Millwork, Inc. and Jefferson Millwork & Design, Inc. *See* MSJ Ex. 1, Depo. of M. Corrigan at pp. 6-8.

2.      On October 17, 2004, Centex Construction Co. ("Centex")[1], as general contractor, entered into a subcontract with AJM, as subcontractor, to supply and install a portion of the architectural millwork and casework for the E. Barrett Prettyman

---

[1]Following a recent merger with another company, Centex is now known as Balfour Beatty Construction.

Courthouse expansion project located in Washington, D.C. (hereinafter the "Project").

*See* AJM Ex. 1, Depo. of M. Corrigan at pp. 8-9.

3.     Defendant Travelers Casualty and Surety Company ("Travelers"), was the

surety for Centex and issued a payment bond on March 18, 2002.  *See* Ex. A to

Complaint.  Defendants Fidelity and Deposit Co. of Maryland ("Fidelity") and Great

American Insurance Company ("Great American") were the sureties for defendant AJM

and issued a payment bond dated January 17, 2005.  *See* Exhibit B to Complaint.

4.     AJM sub-subcontracted with DLI, Inc. ("DLI") to provide carpentry labor

for the installation of a portion of AJM's scope of work on the project. *See* AJM Ex. 1,

Depo. of M. Corrigan at pp. 16-17.

5.     DLI, in turn, entered into sub-subcontracts with Craftsmanship Unlimited

and Shalom Carpentry to supply labor for the performance of its work for AJM. Thus, the

chain of contractual responsibility for the work was as follows:



| Owner | ↔ | United States (GSA) |
| ↓ | | ↓ |
| General Contractor | ↔ | Centex Construction |
| ↓ | | ↓ |
| 1st Tier Subcontractor | ↔ | Allegheny Jefferson Millwork |
| ↓ | | ↓ |
| 2nd Tier Subcontractor | ↔ | DLI, Inc. |
| ↓ | | ↓ |

3rd Tier Subcontractors      ↔      Craftsmanship Unlimited
Shalom Carpentry

*See* AJM Ex. 1, Depo. of M. Corrigan at pp. 70-72.

6.     The work performed by DLI on behalf of AJM at the Project was divided

into two phases: (i) the "time and materials" phase; and (ii) the lump sum contract phase.

*See* AJM Ex. 1, Depo. of M. Corrigan at pp. 20-24; AJM Ex. 2, Depo. of D. Lacey at pp.

12-14.

7.     During the "time and materials" phase, Centex engaged AJM to complete

the fabrication and installation of bookcases and trim on Floors 2, 3 and 4 of the Project

following a default by a prior millwork subcontractor. AJM entered into an oral

agreement with DLI to install the cabinetry and millwork on a time and materials basis.

*See* AJM Ex. 1, Depo. of M. Corrigan at pp. 20-24; AJM Ex. 2, Depo. of D. Lacey at pp.

12-14.

8.     AJM and DLI agreed on an hourly rate of $55 per hour for standard hours,

and $65 per hour for overtime hours. *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 20-21;

AJM Ex. 2, Depo. of D. Lacey at pp. 36-37.

9.     Presently, the parties dispute whether the unpaid balance on the "time and

materials" phase of the Project is $5,665 (AJM's accounting) or $11,704.42 (DLI's

accounting). With the exception of this discrepancy of $6,039.42, however, all work on

this phase of the Project has been otherwise completed, billed and paid in full. *Compare*

3

AJM Ex. 3 (AJM Reconciliation of Account) with AJM Ex. 4 (DLI Reconciliation of Account).

10.    The second phase involved millwork to be installed on the 5th and 6th floors of the Project, which was the subject of a lump sum subcontract between the parties.  *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 20-24; AJM Ex. 2, Depo. of D. Lacey at pp. 12-14.

11.    On or about February 12, 2005, defendant AJM submitted a subcontract to plaintiff DLI for review.  DLI made certain revisions to the subcontract and eventually signed and returned the contract on April 5, 2005.[2] The total amount of the subcontract was $1,175,000.00. *See* Complaint at ¶12; AJM Ex. 5, Copy of Subcontract. The parties are in agreement that all but $11,750.70 has been paid on the lump sum agreement.[3] *Compare* AJM Ex. 3 (AJM Reconciliation of Account) with AJM Ex. 4 (DLI Reconciliation of Account); *See* AJM Ex. 2, Depo. of D. Lacey 17-18.

---

[2]Plaintiff alleges in the complaint that defendant AJM never returned a signed copy of the revised subcontract to plaintiff.  *See* Complaint at ¶14. In a cover letter to AJM dated April 5, 2005, DLI's President Dale Lacey said, "After reviewing the contract, we have made several deletions and additions which need to be made part of the agreement between us." On DLI's file copy of this letter, Mr. Lacey made a handwritten notation, "We never received  ... a copy of my contract approved by [AJM Manager] Mike Corrigan. I figured he accepted the deletions that I made to the Agreement." *See* AJM Ex. 6, Letter from DLI to AJM dated April 5, 2005 (with notations by Mr. Lacey).

[3]DLI's reconciliation of the contract shows a balance of $86,750.20 on the lump sum contract, but Dale Lacey has admitted in deposition that $75,000 of this balance was actually billed as an extra claim invoice as DLI Invoice No. 4606. *See* AJM Ex. 2, Depo. of D. Lacey at pp. 17-18; AJM Ex. 7, Invoice No. 4606.

12.    DLI's remaining claims consist of five "Extra Claim" Invoices submitted to

AJM as follows:

| Invoice No. | Amount Claimed | Description of Basis for Claim |
|---|---|---|
| 4358 | $166,493.75 | Change order work under lump sum contract for 5th and 6th Floors |
| 4387 | $43,095.00 | Change order work under lump sum contract for 5th and 6th Floors |
| 4397 | $64,285.00 | Change order work under lump sum contract for 5th and 6th Floors |
| 4592 | $191,909.41 | Davis Bacon charges by DOL - listed as "Millwork installation in invoice." |
| 4606 | $75,000.00 | Incentive claim arising from American Indian Museum project |
| **Total** | **$540,783.16** | |

See AJM Ex. 3, AJM Reconciliation of Account; AJM Ex. 7, Collection of Extra Claim

Invoices.

13.    As the Project in question involves a federal construction contract, the

applicable wages paid to employees are governed by the prevailing wage schedule

pursuant to the Davis Bacon Act,  40 U.S.C. §3142. See AJM Exs. 8 & 9, Copies of AJM

facsimiles to DLI re: Davis Bacon Rates.

14.    Plaintiff, DLI, and its sub-subcontractor, Shalom Carpentry, are based in

Florida.  DLI's other sub-subcontractor, Craftsmanship Unlimited, is based in North

Carolina.  Most, if not all, of the employees of DLI, Shalom, and Craftsmanship on the

5

Project were from out-of-state. *See* AJM Ex. 14, U.S. Dept. of Labor detailed breakdown of Davis Bacon claims.

15.     On October 5, 2004, two months before commencement of DLI's work on the Project, AJM transmitted to DLI a copy of the Davis Bacon prevailing wage information then in effect.[4]  *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 20-23; AJM Ex. 8.

16.     AJM transmitted information about the Davis Bacon prevailing wage to DLI a second time by facsimile on January 5, 2005. *See* AJM Ex. 9.

17.     On January 12, 2005, DLI submitted to AJM its first "certified" payroll indicating the rates paid to its workers as required by Davis Bacon regulations. *See* AJM Ex. 10.

18.     In February 2005, AJM and DLI began to receive communications of claims that the employees of DLI and its sub-subcontractors were not being paid according to the requirements of the Davis Bacon Act. *See* AJM Ex. 2, Depo. of D. Lacey at pp. 29-32.

---

[4]DLI's president, Dale Lacey, has testified that DLI never received this facsimile, even though AJM's documentation includes a facsimile confirmation page confirming a successful transmittal. DLI has contended that the facsimile number utilized for this first transmittal (561-586-1120) was no longer working at the time of this transmittal. *See* AJM Ex. 2, Depo. of D. Lacey at pp. 39-40. However, a facsimile transmitted by DLI to AJM three months later on January 12, 2005 indicates it was transmitted from that number. *See* AJM Ex. 10.

19.     AJM was placed on notice by Centex on September 2, 2005 that, in light of Davis Bacon claims potentially reaching a figure of $600,000, Centex would place on hold all payments to AJM pending resolution of the Department of Labor charges against DLI. *See* AJM Ex. 11, Centex e-mail to AJM.

19.     On March 29, 2006, the Department of Labor provided AJM with a reconciliation of the Davis Bacon claims against DLI and its sub-subcontractors, Craftsmanship and Shalom, in the amount of $191,727.46. *See* AJM Ex. 12.

20.     By correspondence to DLI's attorney dated May 31, 2006, AJM gave DLI written notice of its default under the terms of the subcontract based upon the Davis Bacon charges and asserted AJM's right to resolve the Davis Bacon claim by paying a sum designated by the Department of Labor into an escrow account, and then backcharge that payment to DLI. *See* AJM Ex. 13.

22.     On March 20, 2007, the Department of Labor served its final determination on Centex advising that the sum claimed for the Davis Bacon violations came to a total of $196,509.99. *See* AJM Ex. 14.[5]

23.     Centex and AJM formally responded to the Department of Labor on April 17, 2007 advising that they intended to pay the total sum claimed to the Department of

---

[5] Counsel for DLI has verbally advised counsel for AJM that the Department of Labor has agreed to reduce the amount of the Davis Bacon charges to approximately $160,000.00. As of the filing of this Motion, however, AJM has not received written confirmation of this representation.

Labor to hold in escrow pending the resolution of all outstanding violations.  Counsel for DLI was copied on this response. *See* AJM Ex. 15.

24.     Finally, on May 29, 2007, AJM transmitted the sum of $196,509.99 to the Department of Labor in the form of three certified checks broken down by claim against the three immediate employers at issue: DLI, Craftsmanship and Shalom. Again, counsel for DLI was copied on this letter to the Department of Labor.  *See* AJM Ex. 16.

Respectfully submitted,

GAVETT AND DATT, P.C.

BY_____/s/_____
Geoffrey S. Gavett, D.C. Bar No. 375884
15850 Crabbs Branch Way
Suite 180
Rockville, Maryland 20855-2622
(301) 948-1177
**Counsel for Defendants**
**Allegheny Jefferson Millwork, LLC**
**Fidelity and Deposit Co. of Maryland**
**Great American Insurance Co.**
**Travelers Casualty and Surety Co.**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **for the use and benefit of** | | |
| **D.L.I. INCORPORATED** | : | |
| | | |
| **Plaintiff** | : | |
| | | **Case No.: 1:06CV00875 (RCL)** |
| **v.** | : | |
| | | |
| **ALLEGHENY JEFFERSON** | : | |
| **MILLWORK, LLC, et al.** | | |
| | : | |
| **Defendants** | | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
### OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The defendants, Allegheny Jefferson Millwork, LLC, Fidelity and Deposit Company of Maryland, Great American Insurance Company, and Travelers Casualty and Surety Company (referred to collectively as "AJM" or "defendants"), respectfully submit this Memorandum of Points and Authorities in support of their Motion for Partial Summary Judgment in the above-captioned matter.

Defendants will demonstrate that with respect to the "Extra Work Order" claim of plaintiff DLI, Inc. ("DLI") arising out of DLI's alleged liability to the United States Department of Labor for violations of the Davis-Bacon Act and related prevailing wage statutes, there is no genuine dispute as to any material fact and defendants are entitled to judgment with respect to that issue as a matter of law. As shown below, the dispute between the parties regarding the so-called "Davis Bacon" issue constitutes the vast majority of damages DLI seeks in this action, and partial summary judgment on this issue

will therefore greatly narrow the issues to be determined at a trial of this matter between the parties.

## I.    BACKGROUND

Plaintiff DLI instituted this action against defendant AJM for breach of contract and to assert a claim against payment bonds issued by the remaining surety defendants.[6] DLI's claims arise out of its sub-subcontracts for the installation of architectural millwork and casework at a construction project at the E. Barrett Prettyman Courthouse (the "Project") in Washington, D.C.

### A.    Parties and the Chain of Contractual Responsibility

Defendant, Allegheny Jefferson Millwork, LLC ("AJM"), is a limited liability company formed by Allegheny Millwork, Inc. and Jefferson Millwork & Design, Inc. *See* MSJ Ex. 1, Depo. of M. Corrigan at pp. 6-8.  On October 17, 2004, Centex Construction Co. ("Centex")[7], as general contractor, entered into a subcontract with AJM, as subcontractor, to supply and install a portion of the architectural millwork and casework for the E. Barrett Prettyman Courthouse expansion project located in Washington, D.C. (hereinafter the "Project"). *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 8-9. Defendant Travelers Casualty and Surety Company ("Travelers"), was the surety for Centex and issued a payment bond on March 18, 2002.  *See* Ex. A to Complaint.  Defendants Fidelity

---

[6]  The United States of America is a nominal party pursuant to the provisions of the Miller Act, 40 U.S.C. § 3131, *et seq.*.

[7]Following a recent merger with another company, Centex is now known as Balfour Beatty Construction.

and Deposit Co. of Maryland ("Fidelity") and Great American Insurance Company

("Great American") were the sureties for defendant AJM and issued a payment bond

dated January 17, 2005.  *See* Exhibit B to Complaint.

AJM sub-subcontracted with plaintiff DLI, Inc. ("DLI") to provide carpentry labor

for the installation of a portion of AJM's scope of work on the project. *See* AJM Ex. 1,

Depo. of M. Corrigan at pp. 16-17.  DLI, in turn, entered into sub-subcontracts with

Craftsmanship Unlimited and Shalom Carpentry to supply labor for the performance of its

work for AJM. Thus, the chain of contractual responsibility for the work was as follows:



| | | |
|---|---|---|
| Owner | ↔ | United States (GSA) |
| ↓ | | ↓ |
| General Contractor | ↔ | Centex Construction |
| ↓ | | ↓ |
| 1st Tier Subcontractor | ↔ | Allegheny Jefferson Millwork |
| ↓ | | ↓ |
| 2nd Tier Subcontractor | ↔ | DLI, Inc. |
| ↓ | | ↓ |
| 3rd Tier Subcontractors | ↔ | Craftsmanship Unlimited Shalom Carpentry |

*See* AJM Ex. 1, Depo. of M. Corrigan at pp. 70-72.

**B.     The Contract Phases and DLI's "Extra Claim" Invoices**

The work performed by DLI on behalf of AJM at the Project was divided into two

phases: (i) the "time and materials" phase; and (ii) the lump sum contract phase. *See* AJM

Ex. 1, Depo. of M. Corrigan at pp. 20-24; AJM Ex. 2, Depo. of D. Lacey at pp. 12-14.

3

Each phase involved different components of work. In addition, DLI has submitted "extra claim" Invoices for sums beyond the scope of the first two phases.

### 1.    Phase One - The "Time and Materials" Phase

During the "time and materials" phase, Centex engaged AJM to complete the fabrication and installation of bookcases and trim on Floors 2, 3 and 4 of the Project following a default by a prior millwork subcontractor. AJM entered into an oral agreement with DLI to install the cabinetry and millwork on a time and materials basis. *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 20-24; AJM Ex. 2, Depo. of D. Lacey at pp. 12-14. AJM and DLI agreed on an hourly rate of $55 per hour for standard hours, and $65 per hour for overtime hours. *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 20-21; AJM Ex. 2, Depo. of D. Lacey at pp. 36-37.

Presently, the parties dispute whether the unpaid balance on the "time and materials" phase of the Project is $5,665 (AJM's accounting) or $11,704.42 (DLI's accounting). With the exception of this discrepancy of $6,039.42, however, all work on this phase of the Project has been otherwise completed, billed and paid in full. *Compare* AJM Ex. 3 (AJM Reconciliation of Account) with AJM Ex. 4 (DLI Reconciliation of Account).

### 2.    Phase Two - The "Lump Sum Contract" Phase

The second phase involved millwork to be installed on the 5th and 6th floors of the Project, which was the subject of a lump sum subcontract between the parties. *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 20-24; AJM Ex. 2, Depo. of D. Lacey at pp. 12-14. On

4

or about February 12, 2005, defendant AJM submitted a subcontract for this second phase to plaintiff DLI for review. DLI made certain revisions to the subcontract and eventually signed and returned the contract on April 5, 2005.[8] The total amount of the subcontract was $1,175,000.00. *See* Complaint at ¶12; AJM Ex. 5, Copy of Subcontract. The parties are in agreement that all but $11,750.70 has been paid on the lump sum agreement.[9] *Compare* AJM Ex. 3 (AJM Reconciliation of Account) with AJM Ex. 4 (DLI Reconciliation of Account); *See* AJM Ex. 2, Depo. of D. Lacey 17-18.

### 3.    Plaintiff DLI's "Extra Claim" Invoices

DLI's remaining claims consist of five "Extra Claim" Invoices submitted to AJM as follows:

| Invoice No. | Amount Claimed | Description of Basis for Claim |
|---|---|---|
| 4358 | $166,493.75 | Change order work under lump sum contract for 5th and 6th Floors |

---

[8]Plaintiff alleges in the complaint that defendant AJM never returned a signed copy of the revised subcontract to plaintiff. *See* Complaint at ¶ 14. In a cover letter to AJM dated April 5, 2005, DLI's President Dale Lacey said, "After reviewing the contract, we have made several deletions and additions which need to be made part of the agreement between us." On DLI's file copy of this letter, Mr. Lacey made a handwritten notation, "We never received ... a copy of my contract approved by [AJM Manager] Mike Corrigan. I figured he accepted the deletions that I made to the Agreement." *See* AJM Ex. 6, Letter from DLI to AJM dated April 5, 2005 (with notations by Mr. Lacey).

[9]DLI's reconciliation of the contract shows a balance of $86,750.20 on the lump sum contract, but Dale Lacey has admitted in deposition that $75,000 of this balance was actually billed as an extra claim invoice as DLI Invoice No. 4606. *See* AJM Ex. 2, Depo. of D. Lacey at pp. 17-18.

| Invoice No. | Amount Claimed | Description of Basis for Claim |
|---|---|---|
| 4387 | $43,095.00 | Change order work under lump sum contract for 5th and 6th Floors |
| 4397 | $64,285.00 | Change order work under lump sum contract for 5th and 6th Floors |
| 4592 | $191,909.41 | Davis Bacon charges by DOL |
| 4606 | $75,000.00 | Incentive claim arising from American Indian Museum project |
| **Total** | **$540,783.16** | |

*See* AJM Ex. 3, AJM Reconciliation of Account; AJM Ex. 7, Collection of Extra Claim Invoices. While other charges are disputed between the parties, the charge presented with respect to Invoice No. 4592 (Davis Bacon Claims by DOL) is the subject of the defendants' Motion for Partial Summary Judgment in two respects: (1) AJM contends as a matter of law that DLI is not entitled to present an "Extra Claim Invoice" for the Davis Bacon charges; and (2) AJM has had to pay the Department of Labor on DLI's behalf for the Davis Bacon charges in the amount of $196,509.99 and is entitled to back charge or set off this amount against DLI's Extra Work Invoices. If AJM is correct in its contentions, the DLI "Extra Claim" Invoices are affected as follows:

| Description | Amount |
|---|---|
| Total DLI Extra Claim Invoices | $540,783.16 |
| (Less Invoice No. 4592) | ($191,909.41) |
| (Less Back Charge for Payment to DOL | ($196,509.99) |
| Remaining DLI Extra Claim Invoices in Dispute | $152,363.76 |

6

The correct treatment of the Davis Bacon claims therefore creates a significant gap between the parties as to the aggregate value of DLI's claims.

### C.    The Davis Bacon Controversy

As the Project in question involves a federal construction contract, the applicable wages paid to employees are governed by the prevailing wage schedule pursuant to the Davis Bacon Act, 40 U.S.C. §3142. *See* AJM Exs. 8 & 9, Copies of AJM facsimiles to DLI re: Davis Bacon Rates. Plaintiff, DLI, and its sub-subcontractor, Shalom Carpentry, are based in Florida. DLI's other sub-subcontractor, Craftsmanship Unlimited, is based in North Carolina. Most, if not all, of the employees of DLI, Shalom, and Craftsmanship on the Project were from out-of-state. *See* AJM Ex. 14, U.S. Dept. of Labor detailed breakdown of Davis Bacon claims.

On October 5, 2004, two months before commencement of DLI's work on the Project, AJM transmitted to DLI a copy of the Davis Bacon prevailing wage information then in effect.[10]  *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 20-23; AJM Ex. 8. AJM transmitted information about the Davis Bacon prevailing wage to DLI a second time by facsimile on January 5, 2005. *See* AJM Ex. 9. On January 12, 2005, DLI submitted to

---

[10]DLI's president, Dale Lacey, has testified that DLI never received this facsimile, even though AJM's documentation includes a facsimile confirmation page confirming a successful transmittal. DLI has contended that the facsimile number utilized for this first transmittal (561-586-1120) was no longer working at the time of this transmittal. However, a facsimile transmitted by DLI to AJM three months later on January 12, 2005 indicates it was transmitted from that number.

AJM its first "certified" payroll indicating the rates paid to its workers as required by Davis Bacon regulations. *See* AJM Ex. 10.

Concerns regarding Davis Bacon claims by the employees of DLI and its sub-subcontractors, Craftsmanship and Shalom, began to surface in February of 2005. *See* AJM Ex. 2, Depo. of D. Lacey at pp. 29-32. On September 2, 2005, Centex placed AJM on notice that, in light of Davis Bacon claims potentially reaching a figure of $600,000, Centex would place on hold all payments to AJM pending resolution of the Department of Labor charges against DLI. *See* AJM Ex. 11, Centex e-mail to AJM.

On March 29, 2006, the Department of Labor provided AJM with a reconciliation of the Davis Bacon claims against DLI and its sub-subcontractors, Craftsmanship and Shalom, in the amount of $191,727.46. *See* AJM Ex.12. By correspondence to DLI's attorney dated May 31, 2006, AJM gave DLI written notice of its default under the terms of the subcontract based upon the Davis Bacon charges and asserted AJM's right to resolve the Davis Bacon claim by paying a sum designated by the Department of Labor into an escrow account, and then backcharge that payment to DLI. *See* AJM Ex. 13.

On March 20, 2007, the Department of Labor served its final determination on Centex advising that the sum claimed for the Davis Bacon violations came to a total of $196,509.99, broken down as follows:

| Employer | Wages Claimed |
|---|---|
| DLI, Inc. | $26,122.63 |
| Craftsmanship Unlimited | $33,688.86 |
| Shalom Carpentry, Inc. | $136,698.50 |
| | |
| Total Claim | $196,509.99 |

*See* AJM Ex. 14.[11] The Department of Labor also provided written authorizations from Craftsmanship and Shalom agreeing to the payment of their workers and essentially withdrawing any protest of the Davis Bacon finds by the Department.

Centex and AJM formally responded to the Department of Labor on April 17, 2007 advising that they intended to pay the total sum claimed to the Department of Labor to hold in escrow pending the resolution of all outstanding violations. Counsel for DLI was copied on this response. *See* AJM Ex. 15. Finally, on May 29, 2007, AJM transmitted the sum of $196,509.99 to the Department of Labor in the form of three certified checks broken down by claim against the three immediate employers at issue: DLI, Craftsmanship and Shalom. Again, counsel for DLI was copied on this letter to the Department of Labor. *See* AJM Ex. 16.

### D.    Applicable Provisions of the Subcontract

The subcontract between DLI (Subcontractor) and AJM (Contractor) contains several provisions pertinent to the disposition of the dispute between the parties:

---

[11] Counsel for DLI has verbally advised counsel for AJM that the Department of Labor has agreed to reduce the amount of the Davis Bacon charges to approximately $160,000.00. As of the filing of this Motion, however, AJM has not received written confirmation of this representation.

9

**4. Final Payment.** A final payment, consisting of the unpaid balance of the Price, shall be made within sixty (60) days after the last of the following to occur:(a) full completion of the Work by Subcontractor, (b) timely and proper performance under all other agreements with the Contractor, (c) final acceptance thereof by the architect and owner, (e) the furnishing of evidence (satisfactory to Contractor and Owner) by Subcontractor to Contractor *that the Subcontractor has paid in full all persons furnishing labor or materials in connection with the Work* including any taxes or governmental charges with respect thereto or with respect to the Work, and that neither Subcontractor nor any person claiming under or through Subcontractor has filed or has the right to maintain a lien or other claim against the Owner, the Contractor, the Contractor's surety, if any, or the Project Premises, including a sworn certification of payment and releases of liens by all suppliers and persons working under the subcontractor....

**5. Payment of Labor, Supplies and Material.** Subcontractor will receive the payments made by the Contractor and will hold the right to receive such payments as a trust fund *to be applied first to the payment of its subcontractors (hereinafter also known as "Sub-subcontractors"), laborers and suppliers for the Work*, including any amounts payable to any employee benefit plan covering such persons, and Subcontractor will so apply the payments from Contractor before using any part thereof for any other purpose....*If Subcontractor shall fail to pay promptly, when due, for all labor, supplies and materials furnished in connection with the performance of the Work, Contractor may, but shall not be required to, pay the amount of such liabilities and recover the amount thereof from Subcontractor, directly or by the application of any portion of the Price then, or thereafter becoming, due hereunder.*

**15. Labor.** Subcontractor shall conform to the labor policy of Contractor and shall not employ any persons or engage in any activities which cause, or are likely to cause, a strike, work stoppage, or other similar concerted labor action. *Subcontractor shall comply with all wage scales, reporting obligations and other labor requirements established under the Contract or Contract Documents and by any governmental authority having jurisdiction.* Subcontractor shall maintain and exercise control over all employees engaged in the performance of the Work; provided, however, Subcontractor shall remove or cause to be removed from the Project premises any such employee whose presence is determined by the Owner or Contractor to be detrimental to the Owner's best interests.

**18.  General.**  Subcontractor shall, *at its own expense*:

(a)  obtain all necessary permits and licenses and *comply with all statutes, ordinances, rules, regulations and orders of any governmental or quasi-governmental authority applicable to the performance of the Work, and be responsible for compliance therewith* and correct any violations thereof, including, without limitation, the provisions of the equal opportunity clauses applicable to the Project....

**21.  Breach.**  If the Subcontractor performs any Work which does not conform to the Contract requirements, *or the Subcontractor commits any act or allows any omission that is a breach of this agreement*, whether or not the same rises to the level of a default, *the Subcontractor shall be responsible for and indemnify and hold the Contractor harmless from any and all losses, harm, costs, charges and expenses, including, but not limited to, consequential damages, liquidated damages, fines, penalties, costs and attorneys fees, which the Contractor may suffer, pay or incur arising out of or relating to such breach. Without in any way limiting the foregoing, if either before or after the completion of the Work, a claim is made against the Contractor by a federal, state or local authority, or any agency or instrumentality, thereof for violation or alleged violation of any law, statute, ordinance or regulation which arises out of or relates to the Work performed or omitted by the Subcontractor, the Subcontractor shall indemnify and hold the Contractor harmless as stated above.* This obligation of the Subcontractor shall apply in all cases where the Subcontractor is or is alleged to be either wholly or partially responsible for the violation or alleged violation. The foregoing rights are intended to be in addition to, and not in lieu of, any other right or remedy the Contractor may have at law or in equity, and nothing herein shall be interpreted or deemed to in any way diminish those rights and remedies.

**22.  Default**

(a) In the event of a default by the Subcontractor, the Contractor shall have all of the rights and remedies as stated above for breach.  *The Contractor shall have the following additional rights and remedies provided in this Section 22 in the event of the default.*

(b) *In the event that Subcontractor fails to perform any of its obligations hereunder, including without limitation, its refusal or neglect to supply a sufficiency of skilled laborers..., its failure to comply with any of the provisions of sections 3 through 6 herein*,...then in any such events,

each of which shall constitute a default hereunder, Contractor shall have the right, to (i) remedy, or cause any surety to remedy such default utilizing such persons or firms and such equipment and materials as may be necessary and recover from the Subcontractor the amount of any default, loss or damage, whether liquidated or unliquidated, suffered or incurred as a result of such default, including, without limitation, attorneys' fees, penalties, increased costs and loss of profits, *in which event Contractor may deduct and withhold from payments otherwise due Subcontractor any of the foregoing amounts, which deductions shall be deemed credits or back charges against the Price*....

**29.  Merit Shop Project.**  It is expressly understood by the Subcontractor that this Contract applies to a merit shop construction job wherein employees of both union and non-union employers will be working on the jobsite at the same time. *Contractor shall not be responsible for any direct or consequential expenses or damages incurred by the Subcontractor resulting from any labor disputes*, including but not limited to damages for work delays....

Complaint, Exhibit C (emphasis added).

## II.    STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Defendants' Motion for Partial Summary Judgment is submitted pursuant to Fed.

R. Civ. P. 56.  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court should

grant a motion for summary judgment if there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 247 (1986).  Rule 56 provides that a party may move for a

summary judgment "upon all or any part thereof" and that if the judgment is not rendered

upon the whole case, the court shall, if practicable, ascertain what material facts exist

without substantial controversy and what material facts are actually and in good faith

controverted.  "It shall thereupon make an order specifying the facts that appear without

12

substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just." Fed. R. Civ. P. 56(d).

In deciding the motion, the court must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant. *See, e.g., Helm v. Western Maryland Ry. Co.,* 838 F.2d 729, 734 (4th Cir. 1988); *Anderson,* 477 U.S. at 255.  *See also In Re Apex Express Corp.,* 190 F.3d 624, 633 (4th Cir. 1999).

## III.    <u>LEGAL ARGUMENT</u>

### A.    DLI and its Sub-Subcontractors Were Required to Pay Their Employees According to the Requirements of the Davis Bacon Act and Related Statutes

The Davis Bacon Act, 40 U.S.C. §3142, requires all contractors and subcontractors performing work on federal or District of Columbia construction contracts or federally assisted contracts in excess of $2,000 to pay their laborers and mechanics not less than the prevailing wage rates and fringe benefits for corresponding classes of laborers and mechanics employed on similar projects in the area. The prevailing wage rates and fringe benefits are determined by the United States Secretary of Labor for inclusion in covered contracts. The statute explicitly requires that provision for payment of the "prevailing wage" be included in all contracts falling under the jurisdiction of the Act. *Id at § 3142(c).*

13

As the Department of Labor prevailing wage determinations have the force and effect of law, they must be deemed to be included as terms of any contract falling within the jurisdiction of the Davis Bacon Act, even if these wages are not specifically set out in the contract. Further, the contractor is charged with constructive knowledge of these regulations, even if the contractor does not have actual knowledge therof. *See e.g. De Matteo Construction Co. v. United States, 600 F.2d 1384, 1391 (Ct. Cl. 1979); G.L. Christian & Associates v. United States, 160 Ct. Cl. 1, 12, 15, 312 F.2d 418, 424, 426, rehearing denied, 160 Ct. Cl. 58, 320 F.2d 345, cert. denied, 375 U.S. 954 (1963); Chris Berg, Inc. v. United States, 192 Ct. Cl. 176, 182, 426 F.2d 314, 317 (1970); General Builders Supply v. United States, 187 Ct. Cl. 477, 484, 409 F.2d 246, 250-51 (1969); Condec Corp. v. United States, 177 Ct. Cl. 958, 966-67, 369 F.2d 753, 757-58 (1966).*

In *BUI Construction Co. & Building Supply, 84-1 B.C.A. (CCH) P17,183; 1984 ASBCA LEXIS 659 (1984)* , the Armed Services Board of Contract Appeals addressed the issue of whether a contractor was entitled to a modification of his contract price when the solicitation package issued for bids on the project at issue failed to include reference to the Davis Bacon Act or the minimum prevailing wage determinations issued under the authority of that Act. The Board of Contract Appeals found the contractor "is charged with the knowledge of such mandatory requirements. Lack of actual knowledge does not extinguish a contractor's obligation to comply with the law." *Id at pp. 5-6.*

14

**B.    DLI Was Contractually Bound to Pay Its Workers According to Prevailing Wage Laws**

As noted in the recitation of facts above, DLI was given a written subcontract in February 2005 relating to its work on this project. DLI held onto the contract for nearly six weeks and then signed the Agreement after making extensive changes and annotations. As noted by DLI's president, Dale Lacey, on DLI's file copy of the transmittal letter: "We never received ... a copy of my contract approved by [AJM Manager] Mike Corrigan. I figured he accepted the deletions that I made to the Agreement."[12] *See* AJM Ex. 6, Letter from DLI to AJM dated April 5, 2005.

The version of the Agreement edited and signed by DLI contains several important provisions relating to the payment of wages to its employees. Paragraph 15 is of particular importance as it explicitly states: "Subcontractor shall comply with all wage scales, reporting obligations and other labor requirements established under the Contract or Contract Documents and by any governmental authority having jurisdiction."  Similarly, paragraph 18 requires that Subcontractor, "at its own expense*,"* comply with all statutes,

---

[12]A signature to the contract by AJM is, of course, not necessary to bind DLI to its terms. District of Columbia law is clear that the mere expectation that another party will sign an agreement does not prevent those signing from being bound even though the expected party does not sign. *See Davis v. Winfield, 664 A.2d 836, 838 (D.C. 1995)* *("*When the parties to a contract set forth the terms of their agreement in writing and manifest in some manner a clear intent to be bound, the absence of one party's signature on the written agreement will not defeat or invalidate the contract. The purpose of a signature is simply to demonstrate mutual assent to a contract, but that may be shown instead, or in addition, by the conduct of the parties."*)*.

ordinances, rules, regulations and orders of any governmental authority and be responsible for compliance therewith and correct any violations thereof.

On a closely related topic, Paragraph 29 explicitly states that the Subcontractor expressly understands that the Contract applied to a merit shop construction job and that Contractor shall not be responsible for any direct or consequential expenses or damages incurred by the Subcontractor resulting from any labor disputes. These paragraphs of the subcontract make it clear that the wages ordered by the DOL in this case are the express responsibility of the Subcontractor.

### C.     DLI Was Placed on Notice of the Applicability of the Davis Bacon Act

As noted above, the case law is clear that a contractor providing labor for a project falling within the terms of the Davis Bacon Act is, at a minimum, on constructive notice of the requirement that the contractor's laborers be paid according to the terms of the Davis Bacon Act and related statutes. Further, DLI expressed its intent and willingness to be bound by the provisions of applicable federal and state law regarding payment of wages when it signed the subcontract with AJM. The evidence in this case, however, is also clear that DLI was placed on actual notice of the prevailing wage and certified payroll requirements of the statute.

On October 5, 2004, AJM Manager, Michael Corrigan, transmitted to Dale Lacey of DLI a seven page facsimile which included the prevailing wage information for the Project. On the second page of the facsimile, Mr. Corrigan circled the applicable information for carpenters and totaled the hourly rate and fringe benefit figures by hand

16

written notation. A confirmation page at the end of the document evidences a successful transmission on October 5, 2004 at 5:20 p.m. (17:20 military time). *See* AJM Ex. 8.

AJM again transmitted the Davis Bacon wage determination specific to this project to DLI on January 5, 2005 via facsimile. The cover page directed to "Danny" at DLI specifically references "Prettyman Courthouse - Davis Bacon Wage Determination" and contains a letter from the General Services Administration to Centex Construction incorporating the attached Davis Bacon Wage Determination for the Project. The information attached to the letter is duplicative of the information transmitted previously on October 5, 2004. Again, a facsimile confirmation page at the end of the document evidences a successful transmission on January 5, 2005 at 10:51 a.m. *See* AJM Ex. 9.

Lastly, DLI's knowledge of a prevailing wage program is demonstrated by its compliance with the requirement to submit certified payrolls on the project. DLI's first certified payroll submitted to AJM for the project was for work performed during the month of December 2004, and is evidenced by a facsimile transmitted by "Danny" of DLI to Mike Corrigan of AJM on January 12, 2005, just one week after Mr. Corrigan had re-transmitted the Davis-Bacon information to Danny. All subsequent payrolls for the Project were certified by DLI in a similar format. *See* AJM Ex. 10; AJM Ex. 1, Depo. of M. Corrigan @ pp. 41, 63.

   **D.    The Terms of the Subcontract Between AJM and DLI Are Clear that AJM May Backcharge DLI for the Amount of the Davis Bacon Claim Based on AJM's Payment to the U.S. Department of Labor.**

The Davis Bacon Act provides that wages due to laborers may be withheld from contract balances owed to a contractor based on alleged violations of the Act. The authority of the government to withhold such wages extends not only from the employer in violation of the act, but also from the contract balances owed to contractors higher up in the chain of contracts. Specifically, subparagraph (c)(3) of 40 U.S.C. § 3142 provides:

> **(c) Stipulations required in contract.** Every contract based upon the specifications referred to in subsection (a) must contain stipulations that--
>
>> (3)   there may be withheld from the contractor so much of accrued payments as the contracting officer considers necessary to pay to laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by the laborers and mechanics and not refunded to the contractor or subcontractors or their agents.

The remedy of withholding has been consistently applied by the Department of Labor in Davis-Bacon Act cases and upheld by the courts. *See, e.g., Gevyn Construction Corp.,* 650 F.2d 289 (Ct. Cl. 1980)(Davis Bacon wages withheld from contract balance owed to general contractor based upon violations by subcontractor). *See also, In the Matter of Cherry Hill Construction, Inc.* WAB No. 85-7 (Wage Appeals Board, U.S. Dept. of Labor)(Oct. 2, 1987)(attached as AJM Ex. 17); *In the Matter of All Phase Electric Co.,* WAB No. 85-18 (Wage Appeals Board, U.S. Dept. of Labor)(June 18, 1986)(attached as AJM Ex. 18).

With respect to the Project at issue in this matter, AJM was placed on notice by Centex on September 2, 2005 that, in light of claims potentially reaching a figure of

$600,000, Centex would place on hold all payments to AJM pending resolution of the Department of Labor charges against DLI. *See* AJM Ex. 11. On March 29, 2006, the Department of Labor provided AJM with a reconciliation of the Davis Bacon claims against DLI and its sub-subcontractors, Craftsmanship and Shalom, in the amount of $191,727.46. *See* AJM Ex. 12.

By correspondence to DLI's attorney dated May 31, 2006, AJM gave DLI written notice of its default under the terms of the subcontract based upon the Davis Bacon charges and asserted AJM's right to resolve the Davis Bacon claim by paying a sum designated by the Department of Labor into an escrow account, and then backcharge that payment to DLI. *See* AJM Ex. 13. On March 20, 2007, the Department of Labor served its final determination on Centex advising that the sum claimed for the Davis Bacon violations came to a total of $196,509.99. *See* AJM Ex. 14. Centex and AJM formally responded to the Department of Labor on April 17, 2007 advising that they intended to pay the total sum claimed to the Department of Labor to hold in escrow pending the resolution of all outstanding violations.  Counsel for DLI was copied on this response. *See* AJM Ex. 15. Finally, on May 29, 2007, AJM transmitted the sum of $196,509.99 to the Department of Labor in the form of three certified checks broken down by claim against the three immediate employers at issue: DLI, Craftsmanship and Shalom. Again, counsel for DLI was copied on this letter to the Department of Labor.  *See* AJM Ex. 16.

Paragraph 5 of the subcontract between AJM and DLI make clear AJM's right to set off its payments of the Davis Bacon charges against sums owed to DLI under the subcontract:

> Subcontractor will receive the payments made by the Contractor and will hold the right to receive such payments as a trust fund *to be applied first to the payment of its subcontractors (hereinafter also known as "Sub-subcontractors"), laborers and suppliers for the Work*, and that Subcontractor will so apply the payments from Contractor before using any part thereof for any other purpose.

* * *

> If Subcontractor shall fail to pay promptly, when due, for all labor, supplies and materials furnished in connection with the performance of the Work, Contractor may, but shall not be required to, pay the amount of such liabilities and recover the amount thereof from Subcontractor, directly or by the application of any portion of the Price then, or thereafter becoming, due hereunder."

Similarly, Paragraph 9 of the Subcontract authorizes AJM to pay a sub-subcontractor directly if DLI fails to make payment owed to that sub-subcontractor.

Paragraph 21 of the Subcontract requires DLI to indemnify and hold the Contractor harmless against any damages arising out of breach of the subcontract and any violations of statutes or ordinances arising from the performance of DLI's work.

Paragraph 22, regarding Default, explicitly allows the Contractor:

> . . . in the event that Subcontractor fails to perform any of its obligations hereunder, including its failure to comply with any of the provisions of sections 3 through 6, to recover from the Subcontractor the amount of any default "including, without limitation, attorneys' fees, penalties, increased costs and loss of profits, *in which event Contractor may deduct and withhold from payments otherwise due Subcontractor any of the*

20

> *foregoing amounts, which deductions shall be deemed credits or back charges against the Price....*"

These provisions make it clear that AJM was and is authorized to withhold the payments due to DLI in order to pay for the Davis Bacon charges arising from performance of the work by DLI and its sub-subcontractors.

Moreover, District of Columbia law, which governs the contractual relationship between AJM and DLI, recognizes a defendant's right to claim a set off or recoupment against a plaintiff's claim when the defendant has suffered damage at the hands of the plaintiff. *Johnson v. Fairfax Village Condominium IV Unit Owners Assoc.,* 641 A.2d 495, 508 (D.C. 1994). Absent a contractual right of set off, there is no question that AJM has been, by virtue of the withholding scheme of the Davis Bacon Act, required to pay the debts of DLI and its sub-subcontractors for wages owed to their employees. Equity requires that AJM be permitted to set off these payments against DLI's claims arising from the project.

## <u>CONCLUSION</u>

As shown in subsections A through C of Section III above, DLI was required to meet the prevailing wage standards set by the Department of Labor under the Davis Bacon Act because: (a) the statute constructively imposes this contract term on all employers participating on a project under the jurisdiction of the Davis Bacon Act; (b) the subcontract reviewed, edited and signed by DLI commits DLI to complying with prevailing wage standards; and (c) DLI was given actual notice of the Davis Bacon standards at the outset of the Project as evidenced by two confirmed facsimiles containing

21

this information and DLI's conformance with the certified payroll process. Given the statutory standards, contractual requirements, and actual notice given to it, DLI cannot, after the fact of the Project, present an "Extra Claim" invoice because it did not accurately assess its potential responsibility under the Davis Bacon Act when it agreed to undertake the sub-subcontracts with AJM.

Further, as shown in subsection D of Section III, AJM has been required to pay the liability of DLI in this matter pursuant to the withholding provisions of the Davis Bacon Act. AJM is entitled by the terms of the contract endorsed by DLI to backcharge or set off these payments against DLI's contract balance in this matter. Further, equitable principles of set off or recoupment entitle AJM to reduce the amount of DLI's claim by the amounts paid to the Department of Labor.

For all of the foregoing reasons, the defendants respectfully request that their Motion for Partial Summary Judgment be granted and the accompanying proposed Order be entered.

Respectfully submitted,

GAVETT AND DATT, P.C.

BY_____/s/_____
Geoffrey S. Gavett, D.C. Bar No. 375884
15850 Crabbs Branch Way, Suite 180
Rockville, Maryland 20855-2622
(301) 948-1177
**Counsel for Defendants Allegheny
Jefferson Millwork, LLC, Fidelity &
Deposit Co. of Md, Great
American Insurance Co., and
Travelers Casualty and Surety Co.**