UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : <br> for the use and benefit of <br> D.L.I. INCORPORATED : <br>   : <br>       Plaintiff : <br>   : <br> v. : <br>   : <br> ALLEGHENY JEFFERSON : <br> MILLWORK, LLC., et al. <br>   : <br>       Defendants | Case No.: 1:06CV00875 <br> Judge: Royce C. Lamberth |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
STATEMENT OF "UNDISPUTED FACTS"**
(Pursuant to LCvR 7(h))

Defendants, Allegheny Jefferson Millwork, LLC ("AJM"), Fidelity and Deposit Company of Maryland, Great American Insurance Company, and Travelers Casualty and Surety Company (referred to collectively as "AJM"), pursuant to LCvR 7(h), respectfully submit this Response to the Plaintiff DLI, Inc. ("DLI") Statement of "Undisputed Facts" of plaintiff DLI, Inc. ("DLI"), which appears in Section II at pp. 2-5 of DLI's Opposition to Defendants' Motion for Partial Summary Judgment and Plaintiff's Counter-Motion for Summary Judgment." As required by LcvR 7(h), this Reply will indicate those statements with which AJM agrees and, in the case of disputed statements, provide citations to the evidentiary record providing support for AJM's position.

    **DLI Statement No. 1**.    Plaintiff agrees with Defendants' Statement of Material Facts as to which there is no genuine issue (hereinafter "Defendants' Statement"), except for Defendants' Statements ¶¶8, 11, 12 and 22.

**AJM REPLY**: Although DLI disputes just four of AJM's Statements of Material Fact as to Which There is no Genuine Dispute, DLI has failed to comply with the provisions of LcvR 7(h) which provides in relevant part:

> An opposition to such motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue to be litigated, which shall include references to the parts of the record relied on to support the statement.
>
> * * *
>
> In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of materials facts are admitted, unless a fact is controverted in the statement of genuine issues filed in opposition to the motion.

DLI's Opposition fails to set forth a separate recitation of evidence on which it relies to dispute AJM's Statement Nos. 8, 11, 12 and 22. Given DLI's failure to comply with the provisions of Rule 7(h), this Court may accept all of AJM's statements of material fact as being true.

**DLI Statement No. 2**.    As to the lump sum contract for the 5th and 6th floors referenced in paragraph 11 of Defendants' Statement, the base contract amount was $1,250,000.00. Depo. of M. Corrigan at pp. 23-28. See also copy of December 22, 2004 electronic mail from M. Corrigan to D. Lacy attached as Exhibit 1, referenced at Depo. of M. Corrigan p. 27. AJM added $75,000.00 to the base amount of the lump sum contract in the event that AJM did not pay DLI $200,000.00 on another Project, the Smithsonian North American Indian Museum. Depo. of M. Corrigan at pp. 23-28. Indeed, AJM did not pay DLI the $200,000.00 on the Indian Museum Project so AJM increased the base amount of the lump sum contract from $1,175,000.00 to $1,250,000. Depo. of M. Corrigan at pp. 23-28. Therefore, the amount still remaining owed and not paid on the lump sum contract is $86,750.00.

**AJM REPLY**: AJM disputes this statement as to the base contract amount of the lump sum contract based on the following portions of the record in this case:

    a.    The contract between AJM and DLI indicates on its face that the contract price is $1,175,000.00. *See* AJM Ex. 5, Copy of Subcontract.[1]

    b.    DLI did not bill AJM for the additional sum of $75,000 until February 16, 2006, more than six months after leaving the Project at issue. DLI's Invoice No. 4606 refers to the $75,000 billed as "[c]ontract increase due to agreement with Michael Corrigan." *See* AJM Ex. 7, Invoice No. 4606.

    c.    In sum, Mr. Corrigan testified that the $75,000 in question related to payment of DLI on another project unrelated to the Prettyman Courthouse. While the $75,000 in question may have been promised as a matter of *quid pro quo* with respect to the other project, this sum has nothing whatsoever to do with the subject of the lump sum contract for the performance of work on selected segments of the Prettyman Courthouse. *See* AJM Ex. 1, Deposition of M. Corrigan at pp. 23-28.

**DLI Statement No. 3**. The Courthouse Project was DLI's first Davis-Bacon project. Depo. of D. Lacy at p. 8.

**AJM REPLY**: AJM contends that this statement of fact is not "material" to the resolution of the issues between the parties as required by Fed. R. Civ. Proc. 56. Consolidated Memorandum of Law in Reply to Plaintiff's Opposition to Defendants'

---

[1] AJM submitted eighteen exhibits in support of its Motion for Partial Summary Judgment in this matter as AJM Exs. 1-18. AJM respectfully refers the Court to its previously submitted Motion for Partial Summary Judgment in this matter for the exhibits themselves.

Motion for Partial Summary Judgment and in Opposition to Plaintiff's Counter-Motion for Summary Judgment (hereinafter "AJM Reply Memorandum") at pp. 3-4. AJM further states, however, that it has no evidence to contradict the testimony of Dale Lacey under oath and therefore accepts the truth of this statement.

**DLI Statement No. 4**.    Since the inception of DOL's involvement with the Project regarding unpaid wages, DLI has worked with the DOL to resolve the unpaid wage claim. See Affidavit of Dale Lacy attached as Exhibit 2. On July 23, 2007, the DOL and DLI agreed that the unpaid wage claim totaled $164,834.83. See Exhibit 2 and revised statements of unpaid wages and DLI authorization to release funds attached as Exhibit 3. Contrary to Defendants' Statement, the DOL's final determination of the unpaid wage claim was $164,834.83. See Exhibit 2 and 3.

**AJM REPLY**:    AJM was not party to any negotiations between the Department of Labor and DLI. AJM admits that DLI informed AJM verbally of a modification of the total Davis Bacon claim to a lesser number[2], but AJM has never received any communication from the Department of Labor verifying this fact and there is nothing in the documentation submitted as DLI Ex. 3 which explicitly states that the aggregate claims have been reduced to the aggregate figure of $164,834.83. It is also worthwhile noting that DLI did not execute its agreement to the payment of the Davis Bacon claims with the Department of Labor until July 23, 2007, <u>after</u> the depositions of the parties in this matter were completed. *See* DLI Ex. 3.

As shown in AJM's Motion for Partial Summary Judgment, AJM has made payment in the amount of $196,509.99 to the Department of Labor on May 29, 2007 for

---

[2] *See* Defendants' Statement of Material Facts as to Which There is no Genuine Issue at p. 7, fn. 5.

the Davis Bacon violations at issue in the form of three certified checks broken down by claim against the three immediate employers at issue: DLI, Craftsmanship and Shalom. *See* AJM Ex. 16.

If, as contended by DLI, the Department of Labor has agreed to a reduction of the Davis Bacon claims to $164,834.83, then AJM has over-escrowed sums with the Department of Labor in the amount of $31,675.16. The net effect of this reduction would be to reduce the amount of DLI's Extra Claim Invoice No. 4592 (*See* AJM Ex. 7) and likewise reduce the amount of AJM's backcharge to DLI to the same amount.

**DLI Statement No. 5**.    AJM agreed to pay at least a portion of the DOL unpaid wage claim.  Depo. of M. Corrigan at p. 53.

**AJM REPLY**:    DLI's citation to Mr. Corrigan's testimony is grossly inappropriate in light of the dictates of Fed. R. Evid. 408.*See* AJM's at pp. 8-9. Mr. Corrigan clearly and unequivocally testified on this issue as follows:

> Q.    And you allowed D.L.I. to continue to work?
>
> A.    I offered in settlement and discussion later on contributions towards their problem from the Joint Venture provided certain releases were done, which never happened.
>
> Q.    So, you had offered to pay a portion of the DOL issue?
>
> A.    For purposes of settlement, yes, I did. That's a matter of record.

*See* AJM Ex. 1, Depo. of M. Corrigan at p. 53. Counsel for AJM registered an immediate and timely objection to questions regarding settlement as constituting irrelevant evidence pursuant to Fed. R. Evid. 408. *Id* at 54.

**DLI Statement No. 6**.    During the Project, during the course of discussions with the DOL, AJM agreed to compensate DLI financially with regards to the DOL unpaid wage claim.  Depo. of M. Corrigan at pp. 55-56.

**AJM REPLY**:    AJM disputes DLI's interpretation of Mr. Corrigan's testimony. Mr. Corrigan did not testify in the cited pages that AJM agreed to compensate DLI financially with regards to the DOL unpaid wage claim. Mr. Corrigan testified that this notion was "discussed" and was not "ruled out." However, there is no testimony in Mr. Corrigan's deposition that AJM ever agreed definitively to pay DLI's Davis Bacon liability without a number of conditions attached. In addition, AJM contends that any such statement, if made, is not material and ultimately irrelevant as DLI has failed to provide any evidence of a separate consideration offered by DLI to support AJM taking on this obligation. *See* AJM's Reply Memorandum at pp. 9-10.

**DLI Statement No. 7**.    The dispute involving the DOL wage claim was not whether a prevailing wage per the Davis Bacon Act had to be paid laborers but rather the issue involved whether *per diem* and fringe benefits paid to laborers was included when determining the amount of hourly wages paid.  Depo. of M. Corrigan at pp. 52, 75-77.

**AJM REPLY**:    AJM concurs with this statement.

**DLI Statement No. 8**.    AJM took the position that DLI and its subcontractors paid the correct amount to its laborers.  Depo. of M. Corrigan at pp. 75-77.

**AJM REPLY**:    AJM contends that this statement of fact is not "material" to the resolution of the issues between the parties as required by Fed. R. Civ. Proc. 56. *See* AJM Reply Memorandum at pp 3-4, 9-10, 14. As discussed in AJM's Reply Memorandum, AJM's advocacy on behalf of DLI with the Department of Labor does not translate to an assumption of liability. Further, DLI has incorrectly characterized Mr.

Corrigan's testimony. In the cited pages, Mr. Corrigan makes clear three basic points: (a) AJM agreed with and was sympathetic to DLI's interpretation of the Davis Bacon Act; (b) AJM relied on the accuracy of DLI's certified payrolls to advocate on behalf of DLI with the Department of Labor; and (c) any modification of the wages payable to the employees of DLI and its subcontractors did not mean that DLI was entitled to a corresponding increase in its compensation for the project. Mr. Corrigan clearly testifies on Pages 77-78 of his deposition that DLI had plenty of margin built into in its hourly rate to cover the full amount of its Davis Bacon liability. *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 75-78.

**DLI Statement No. 9**. AJM supported its position by providing DLI and the DOL with a legal opinion from its attorneys, Thelen Reid, that the amount DLI and its subcontractors paid to its laborers was correct. Depo. of M. Corrigan at p. 56.

**AJM REPLY**: AJM contends that this statement of fact is not "material" to the resolution of the issues between the parties as required by Fed. R. Civ. Proc. 56. *See* AJM Reply Memorandum at pp 9-10, 14. In addition, DLI has selectively cited Mr. Corrigan's testimony on the role played by Thelen Reid. As noted by Mr. Corrigan at pages 59-60 of his deposition, Thelen Reid produced two documents: an advocacy letter to be presented to the Department of Labor supporting DLI's position and an "internal memo" to AJM indicating that the Davis Bacon issue could be seen in two different ways. *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 59-60.

**DLI Statement No. 10**. In fact, due to the issues regarding the DOL wage claim, DLI instructed its subcontractors to raise their hourly rates. See Exhibit 2. Depo. of D. Lacy. p. 8. For the pay period March 6-12, 2005, DLI's subcontractors did raise their pay rates. See Exhibit 2. However, AJM instructed DLI to instruct its

subcontractors to lower the hourly rates as it was AJM's position that DLI and its subcontractors were paying their laborers correctly. See Exhibit 2. Depo. of D. Lacy. p. 8.

**AJM REPLY**: AJM contends that this statement of fact is not "material" to the resolution of the issues between the parties as required by Fed. R. Civ. Proc. 56. *See* AJM Reply Memorandum at pp 9-10. If this statement was made by Mr. Corrigan, it clearly occurred after DLI agreed to perform work on the project in question. Any change in what DLI and its sub-subcontractors were required to pay their workers had no material effect on what was owed by AJM to DLI under the contract. AJM further disputes this Statement of Fact and attaches as AJM Ex. 19 the Affidavit of Michael Corrigan in which Mr. Corrigan expressly denies instructing DLI and its sub-subcontractors to lower the wages they paid. DLI's offering of this testimony is especially self-serving and lacking in any credibility whatsoever for several reasons:

(a) DLI has not produced one shred of documentation to support the statement;

(b) DLI's representative, Dale Lacey, did not make one mention in his deposition testimony of this alleged increase of wages and instruction by AJM to reduce wages, despite extensive questioning on discussions between AJM and DLI on this subject (*See* AJM Ex. 2, Depo. of D. Lacey); and

(c) DLI's counsel did not inquire of Mr. Corrigan in his deposition about this allegation despite its alleged relevance (*See* AJM Ex. 1, Depo. of M. Corrigan).

**DLI Statement No. 11**.   On January 27, 2006, AJM presented a payment schedule to DLI via electronic mail.  See electronic mail attached as Exhibit 4.

**AJM REPLY**:   DLI's reliance on Exhibit 4 is another egregious example of presenting evidence in clear contravention of Fed. R. Evid. 408. *See* AJM Reply Memorandum at pp.8-9. Mr. Corrigan's e-mail clearly indicates a "conditional" concept for settlement. What is all the more egregious about DLI's reliance upon Exhibit 4 is that it fails to include DLI's response. AJM attaches as AJM Ex. 20 a reply from DLI's president, Dale Lacey, in which he emphatically and in very colorful language rejects Mr. Corrigan's proposal. Thus, Exhibit 4 is not only an improper attempt to offer evidence of settlement discussions, it was a settlement proposal rejected by the plaintiff.

**DLI Statement No. 12**.   A couple of days after the January 27, 2006 electronic mail from AJM to DLI, the parties met in person to discuss payment arrangements.  See worksheet with notes attached as Exhibit 5.  AJM agreed to pay DLI $300,000.00 and to pay the DOL claim.  Depo. of D. Lacy at p. 47.  DLI accepted the payment arrangement as set forth by AJM.  Depo. of D. Lacy at p. 47.  AJM never made the payments as agreed to DLI.

**AJM REPLY**: Again, DLI has offered evidence of a document relating to settlement discussions. Mr. Corrigan was shown the same exhibit as referenced by DLI in this contention at his deposition. Mr. Corrigan testified about this document as follows:

> Q.   What happened as a result of this doodling?
>
> A.   It was not agreed to, he left the table and we went to a bar and that was it.
>
> Q.   So, you guys didn't reach any agreement but yet you went out to drink?
>
> A.   Correct. [Remaining testimony omitted as irrelevant].

AJM Ex. 1, Depo. of M. Corrigan at p. 106. It is further worth noting that an alleged agreement between DLI and AJM was never documented after the fact of the meeting between the parties.

**DLI Statement No. 13**.    After the parties meeting referenced above, the parties went to a bar to have drinks.  Depo. of M. Corrigan at p. 106.

**AJM REPLY**:    AJM contends that this statement of fact is not "material" to the resolution of the issues between the parties as required by Fed. R. Civ. Proc. 56. *See* AJM Reply Memorandum at pp 4-5.

        Respectfully submitted,

        GAVETT AND DATT, P.C.

        BY       /s/
        Geoffrey S. Gavett, D.C. Bar No. 375884
        15850 Crabbs Branch Way
        Suite 180
        Rockville, Maryland 20855-2622
        (301) 948-1177
        **Counsel for Defendants**

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a copy of the foregoing document were electronically filed and electronically served on this _____ day of _____, 2006 to:

| | |
|---|---|
| Shawn C. Whittaker, Esquire<br>1010 Rockville Pike, Suite 607<br>Rockville, Maryland 20851<br>301-838-4502 | **Counsel for Plaintiff** |

                                                                  _____/s/_____
                                                                  Geoffrey S. Gavett

F:\Data\GD\Corporate\428.001\pleadings\AJM Response to DLI Statement of Undisputed Facts.wpd