## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **for the use and benefit of** | | |
| **D.L.I. INCORPORATED** | : | |
| | | |
| **Plaintiff** | : | |
| | | **Case No.: 1:06CV00875 (RCL)** |
| **v.** | : | |
| | | |
| **ALLEGHENY JEFFERSON** | : | |
| **MILLWORK, LLC, et al.** | | |
| | : | |
| **Defendants** | | |

### DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN:

(1)   **REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT;**

**AND**

(2)   **SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Allegheny Jefferson Millwork, LLC ("AJM"), Fidelity and Deposit Company of Maryland, Great American Insurance Company, and Travelers Casualty and Surety Company, respectfully file this Reply to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment and Opposition to Plaintiff's Counter-Motion for Partial Summary Judgment (referred to collectively as "DLI Opposition").

Defendants filed a Motion for Partial Summary Judgment, setting forth the position that with respect to the "Extra Work Order" claim of plaintiff DLI, Inc. ("DLI")

arising out of DLI's alleged liability to the United States Department of Labor for violations of the Davis-Bacon Act and related prevailing wage statutes, there is no genuine dispute as to any material fact and defendants are entitled to judgment with respect to that issue as a matter of law.

In response to Defendants' Motion, Plaintiff has filed an Opposition and Counter-Motion for Summary Judgment in which it tries to argue that it is entitled to summary judgment that:

      (1)    the lump sum contract price is $1,250,000.00, leaving a balance due from AJM to DLI in the amount of $86,750.00, plus interest; and

      (2)    AJM is responsible for payment of the Department of Labor Davis-Bacon wage claim.

DLI further takes the position that summary judgment is not proper with respect to the issue between the parties regarding disputed work tickets.

As shown below, there is no merit to Plaintiff's position.

## I.    THE PARTIES' STATEMENTS OF MATERIAL FACT

### A.   DLI'S RESPONSE TO AJM'S STATEMENT OF MATERIAL FACTS

In response to AJM's Motion for Summary Judgment and accompanying Statement of Material Facts as to Which There is No Genuine Issue, DLI has indicated that it only disputes AJM's Statement Nos. 8, 11, 12 and 22. *See* DLI Opposition at p. 2.

2

However, DLI has failed to comply with the provisions of LCvR 7(h) which provides in

relevant part:

>    An opposition to such motion shall be accompanied by a
>    separate concise statement of genuine issues setting forth all
>    material facts as to which it is contended there exists a
>    genuine issue to be litigated, which shall include references to
>    the parts of the record relied on to support the statement.
>
>                              * * *
>
>    In determining a motion for summary judgment, the Court
>    may assume that facts identified by the moving party in its
>    statement of materials facts are admitted, unless a fact is
>    controverted in the statement of genuine issues filed in
>    opposition to the motion.

DLI's Opposition fails to set forth a separate recitation of evidence on which it relies to

dispute AJM's Statement Nos. 8, 11, 12 and 22. Given DLI's failure to comply with the

provisions of Rule 7(h), this Court may accept all of AJM's statements of material fact as

being true.

**B.    AJM'S RESPONSE TO DLI'S STATEMENT OF MATERIAL FACTS**

Pursuant to the provisions of LcvR 7(h), AJM respectfully refers the Court to the

accompanying Defendants' Response to Plaintiffs' "Statement of Undisputed Facts."

**II.    STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT**

Defendants' Motion and Plaintiff's Counter-Motion for Partial Summary Judgment

are submitted pursuant to Fed. R. Civ. P. 56.  Pursuant to Rule 56 of the Federal Rules of

Civil Procedure, a court should grant a motion for summary judgment if there is no genuine issue as to any **material** fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  As this Court has consistently stated, defendant, as the moving party, bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Crenshaw v. Georgetown University,* 23 F. Supp. 2d 11, 15 (D.D.C. 1998) and *Wada v. Tomlinson,* Civ. Action No. 03-1488, 2007 U.S. Dist. LEXIS 34010, slip op. at 90-94 (D.D.C. 2007), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

        In response to Defendants' motion, plaintiff must go beyond the pleadings and by its own affidavits,  depositions, answers to interrogatories, and admissions, "designate specific facts showing that there is a genuine issue for trial."  *Id., citing Celotex,* 477 U.S. at 324.  Moreover, as this Court has stated, "although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *Id., citing  Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).   "To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient **admissible** evidence that a reasonable trier-of-fact could find for the nonmoving party."  *Id., citing Laningham v. U.S. Navy,* 259 U.S. App. D.C.

115, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby,* 477 U.S. at 251 (emphasis added).

### III.     AJM'S REPLY TO DLI'S LEGAL ARGUMENTS

#### A.     AMOUNT DUE ON LUMP SUM CONTRACT

DLI argues that the amount due on the lump sum contract was $1,250,000.00 as opposed to $1,175,000 as alleged by AJM. The difference between DLI and AJM on this issue amounts to $75,000. As an initial matter, the lump sum contract between AJM and DLI indicates on its face that the contract price is $1,175,000.00. *See* AJM Ex. 5, Copy of Subcontract.[1] DLI ultimately billed AJM for the additional sum of $75,000 on February 16, 2006, more than six months after leaving the Project at issue. DLI's Invoice No. 4606 refers to the $75,000 billed as "[c]ontract increase due to agreement with Michael Corrigan." *See* AJM Ex. 7, Invoice No. 4606.

AJM's Manager, Michael Corrigan, has testified that the $75,000 in question involved payment to DLI on another project unrelated to the Prettyman Courthouse. While the $75,000 in question may have been promised as a matter of *quid pro quo* with respect to the other project, this sum has nothing whatsoever to do with the subject of the lump sum contract for the performance of work on selected segments of the Prettyman

---

[1] AJM submitted eighteen exhibits in support of its Motion for Partial Summary Judgment in this matter as AJM Exs. 1-18. AJM respectfully refers the Court to its previously submitted Motion for Partial Summary Judgment in this matter for the exhibits themselves. An additional two exhibits are attached hereto as AJM Exs. 19 and 20.

Courthouse. *See* AJM Ex. 1, Deposition of M. Corrigan at pp. 23-28. Mr. Corrigan also testified, however, that this figure "would be an addition to a total contract amount due to D.L.I. after all settlement of outstanding change orders, back charges, what have you, are contemplated and agreed to." *Id.* at p. 27.

The proper characterization of DLI's claim for $75,000 is largely a matter of semantics. DLI sees this figure as an increase in the price of the lump sum contract even though the figure had nothing to do with work under the lump sum contract. AJM sees the figure as a matter collateral to the project at issue. In the end, AJM has resisted payment of this figure given the numerous dollars in dispute, unresolved change orders, and AJM's substantial back charge for the Davis Bacon issue.

## B.    LIABILITY FOR DAVIS-BACON WAGES

As noted in Defendants' Motion for Summary Judgment, the Project in question involves a federal construction contract and the applicable wages paid to employees are governed by the prevailing wage schedule pursuant to the Davis Bacon Act.  As such, DLI  was required to pay Davis Bacon Act wages to its employees. Indeed, DLI has admitted that the issue on this project was not whether Davis Bacon applied, but how to calculate and credit the *per diem* sums paid to its workers against the Davis Bacon wage rates. *See* DLI Opposition at p. 4 ¶7.

DLI takes the position that it is entitled to additional compensation on the Davis Bacon issue. In support of this contention, DLI makes three arguments: (1) there was a

breach of contract because AJM agreed after the issue surfaced that it would pay for

DLI's liability on the wage claim (*See* DLI Opposition at pp. 7-9); (2) the contract

between the parties is subject to reformation because of a mutual mistake of fact (DLI

Opposition at pp. 9-10); and (3) AJM is liable to pay the wage claim under a theory of

promissory estoppel (DLI Opposition at pp. 10-11). As shown below, DLI's position on

each of these arguments is completely groundless.

### (1)    Breach of Contract

In its Motion for Partial Summary Judgment, AJM noted that the subcontract

between DLI (Subcontractor) and AJM (Contractor) contained several provisions which

make it clear that DLI was responsible for the Davis-Bacon wages in dispute in this case.

In its response, DLI ignores the clear mandates of its subcontract, and instead, DLI asserts

that AJM "continuously agreed to compensate DLI for any liability on the wage claim."

DLI Opposition at 8.  In alleged support of this statement, DLI cites to the deposition of

Dale Lacy at p. 42. A careful review of Mr. Lacey's testimony reveals, however, that any

discussion of an assumption of liability for the Davis Bacon charges by AJM did not

begin, by Mr. Lacey's own admission, until some time during March 2005 when DLI had

already been on the project for a period of four or more months. *See* AJM Ex. 2, Depo. of

D. Lacey at pp. 42-44.

Moreover, DLI has grossly misrepresented to the Court the testimony of Michael

Corrigan on this subject. AJM respectfully refers the Court to the detailed Response of

Defendants to DLI's Statement of "Undisputed Facts" with respect to Statement Nos. 5 through 9. As shown in AJM's Response, all discussions of an assumption of liability by AJM for the Davis Bacon charges were in the nature of settlement discussions. Mr. Corrigan's characterization of AJM's position regarding settlement is supported by AJM Ex. 20 which is an e-mail string beginning with an e-mail from Mr. Corrigan to Mr. Lacey proposing a nine point settlement and a reply from Mr. Lacey emphatically rejecting that proposal.

Further, to the extent that AJM attempted to support DLI in its position on the Davis Bacon Act before the Department of Labor, such support hardly constitutes an agreement to assume liability. Indeed, as noted in AJM's Response to DLI Statement of Fact No. 9, AJM procured from legal counsel two documents: an advocacy letter to be presented to the Department of Labor supporting DLI's position and an "internal memo" to AJM indicating that the Davis Bacon issue could be seen in two different ways. *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 59-60. This second internal memorandum was given to DLI and demonstrates that AJM was advocating for its subcontractor, not making misrepresentations of law or fact.

Federal Rule of Evidence 408 prohibits evidence of conduct or statements made in compromise negotiations regarding a claim when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount. *See Carney v. American University,* 331 U.S. App. D.C. 416, 151 F.3d 1090 (D.C. Cir. 1998). Thus,

courts have prohibited parties from introducing evidence attempting to show that settlement talks have resulted in binding contracts, as DLI is attempting to do in this case. *See, e.g., In re Bondurant,* 180 B.R. 654 (Bankr. N.D. Ala. 1995). Because all of AJM's alleged statements were in the nature of conditional settlement proposals, they are inadmissible as evidence in this case and cannot be relied upon by DLI in opposition to AJM's Motion for Partial Summary Judgment or in support of its own Motion for Partial Summary Judgment.

Assuming that AJM did not make the statements relied upon by DLI in the context of settlement discussions and instead made gratuitous promises to pay, there are two central flaws in DLI's contention that AJM is liable for these additional costs based on such statements. First, as a modification of a prior agreement between the parties, the burden falls on DLI to demonstrate that the modification is supported by some additional consideration flowing from DLI to support the claim. DLI offers no evidence of such consideration. *See Rinck v. Assoc. of Reserve City Bankers,* 676 A.2d 12, 17 (D.C. 1996); *Hershon v. Hellman Co., Inc.,* 565 A.2d 282, 283-84 (D.C. 1989). Second, Paragraph 27(c) of the Subcontract between the parties contains a classic integration clause which specifically requires that any modification of the Agreement between the parties be put in writing and executed by the parties. *See* AJM Ex. 5 at p. 7. DLI has failed to produce any document complying with this requirement. *Hildreth Consulting Engineers, P.C. v. Larry*

*E. Knight, Inc.*, 801 A.2d 967, 974 (D.C. 2002); *Marlowe v. Argentine Naval Comm'n*, 257 U.S. App. D.C. 225, 228, 808 F.2d 120, 123 (1986).

DLI cites two cases in support of its statement that, "in some circumstances, the law has allowed additional compensation to a contractor in light of an increased wage determination." Plaintiff's Opposition and Counter-Motion at 8, *citing Reidell v. United States,* 43 Fed. Cl. 770 (Fed. Cl. 1999) and *American Line Builders v. United States,* 26 Ct. Cl. 1155, 1212-1215 (Ct. Cl. 1992). These decisions are completely inapplicable to the current case.

In *Reidell,* the plaintiff, a laborer for a subcontractor, requested the Department of Labor to determine whether the federal contract under which he was working was subject to the Davis-Bacon Act after a federal contracting officer for the project had concluded that the Davis-Bacon Act did not apply. The Department of Labor determined that in fact, the Act did apply and that laborers on the project should be paid Davis-Bacon wages retroactively. The *Reidell* case is distinguishable from the facts of the present case in three important respects. First, there was never any preliminary erroneous interpretation suggesting that Davis Bacon was not applicable to the Prettyman Courthouse project. The evidence is clear that Davis-Bacon applies to the contract and that DLI was obligated to pay Davis-Bacon wages. Second, the Department of Labor dispute here arose because in fact, it was determined that DLI was not paying the proper Davis Bacon wages. Third, in

*Reidell*, it was determined that the federal agency owed the Davis Bacon wages, not the intermediary employer.

In the *American Line Builders* ("ALB") case, Plaintiff ALB filed a Complaint for Additional Compensation, alleging that the defendant United States, Department of Energy, Western Area Power Administration (WAPA), directed the plaintiff to perform work in addition to that specified in the contract between the plaintiff and from WAPA's direction that ALB reclassify certain of its employees. Unlike that case, in this case AJM subcontracted the work to DLI pursuant to an Agreement whereby DLI was responsible for Davis-Bacon wages of its employees. AJM did not seek to reclassify any workers, as in the ALB case, rather, the Department of Labor determined that DLI was not in compliance with the Davis-Bacon wages it was paying, and DLI alone is responsible for those wages.

### (2)    Mutual Mistake

DLI asserts that the parties made a mutual mistake in determining the correct labor rate, and that AJM supported its understanding of the correct labor rate with a legal opinion. AJM further asserts that DLI instructed its subcontractors to increase the labor rate, but again reduced the labor rate based on the representations of AJM and its attorneys. DLI concludes that the law allows reformation of a contract when the parties believe an extrinsic fact to be true which is in fact erroneous, and that the court should allow compensation to DLI for the mutual mistake of the parties. DLI's Opposition at 9-

10. As an initial matter, reformation of a contract is an equitable doctrine, and DLI did

not seek equitable reformation of the subcontract in its complaint. In support of its

argument, DLI relies on *Isaac v. First National Bank*, 647 A.2d 1159 (1994). AJM agrees

that *Isaac* states the rule regarding recision or reformation of a contract based on a mutual

mistake of fact:

> Mutual mistake in this sense generally refers to both parties
> believing an extrinsic fact to be true which in fact is
> erroneous. *See Bituminous Coal Operators' Ass'n Inc. v.
> Connors, 276 U.S. App. D.C. 9, 19, 867 F.2d 625, 635 (1989)*
> ("a contract may be rescinded if the contracting parties
> entertained a material mistake of fact that went to the heart of
> their bargain"); *Shear v. National Rifle Ass'n of Amer., 196
> U.S. App. D.C. 344, 353, 606 F.2d 1251, 1260 (1979)* ("where
> both parties assume a certain state of facts to exist, and
> contract on the faith of that assumption, they can be relieved
> from their obligation if the assumption is erroneous") (quoting
> *Leasco Corp. v. Taussig, 473 F.2d 777, 781 (2d Cir. 1972)).
> See generally* E. ALLAN FARNSWORTH, 2
> FARNSWORTH ON CONTRACTS § 9.3, at 508 (1990) ("A
> mutual mistake occurs when both parties are under
> substantially the same erroneous belief as to the facts").

*Id* at 1163, n. 8.

In this case, DLI has failed to show that the Davis Bacon issue went to the essence

of the agreement between the parties at the formation of the contract. Indeed, DLI would

be hard pressed to make this argument when it has admitted that the first notice of a Davis

Bacon issue did not arise until February 2005, two months after work began. *See* DLI

Opposition at p. 7. As DLI has admitted, the parties understood that Davis Bacon rates

would apply to the project. DLI Opposition at p. 14 ¶7. What was not discussed and

12

apparently not understood by either party is whether the payment of a travel *per diem* would be credited towards payment of the Davis Bacon wage rate for the project. There simply cannot be a mutual mistake of fact when an issue was never discussed or negotiated at the inception of the agreement.

### (3)     Promissory Estoppel

DLI attempts to argue that the doctrine of promissory estoppel should be applied to this case although DLI did not plead a cause of action for promissory estoppel in its complaint.  First, DLI asserts that promissory estoppel can be applied to make gratuitous promises enforceable. DLI's Opposition at 10, *citing Green v. Howard University,* 134 U.S. App. D.C. 81 (D.C. Cir. 1969).  DLI asserts that assuming AJM's agreement to pay DLI for any wage claim liabilities were gratuitous promises, this Court can apply the doctrine of promissory estoppel to find AJM liable for the Department of Labor wage claim.

First, DLI miscontrues the *Green* case.  That case never states that in a situation of a gratuitous promise, the doctrine of promissory estoppel will automatically apply. Instead the only time the term "gratuitous" is mentioned in that case is in a footnote wherein the Court noted that the Restatement (Second) of Contracts supported a finding that the contract at issue in that case between Howard University and the teacher appellants had been breached, and then the Court cited, as a " *See also"* citation, Henderson, *Promissory Estoppel and Traditional Contract Doctrine,* 78 Yale L.J. 343

(1969), with the description, "where it is shown that promissory estoppel has application in the field of bargain transactions, as well as in the area of gratuitous promises." *Green,* 134 U.S. App. D.C. at 81 n.8, 412 F.2d 1128.

This Court has made it clear that in order to hold a party liable under the doctrine of promissory estoppel, "there must be a promise which reasonably leads the promisee to rely on it to his detriment, with injustice otherwise not being avoidable." *Maurice Electrical Supply Co., Inc., v. Anderson Safeway Guard Rail Corp.,* 632 F. Supp. 1082 (D.D.C. 1986), *citing N. Litterio & Co. v. Glassman Construction Co.,* 115 U.S. App. D.C. 335 (D.C. Cir. 1963); *Solway Decorating Co. v. Merando, Inc.,* 264 A.2d 501 (D.C. App. 1970); and *Solway Decorating Co. v. Merando, Inc.,* 240 A.2d 361 (D.C. App. 1968). The *Maurice Electrical Supply* case was a breach of contract case brought by Maurice Electrical Supply against Anderson Safeway Guard Rail Corporation for its alleged failure to perform a contract to supply certain lighting poles to be used in a construction project. After finding that there was no contract between the parties, the Court also examined whether the doctrine of promissory estoppel applied. The Court concluded in that case that although the plaintiff relied to its detriment on defendant's price quotes, such reliance was not reasonable in light of the substantial difference in prices quoted by defendant and other would-be suppliers. Therefore, the court found that plaintiff could not recover on a theory of promissory estoppel

The facts of this case similarly show that plaintiff cannot recover under the

14

doctrine of promissory estoppel. DLI offers several factual arguments in an attempt to

argue that the doctrine should apply. DLI Opposition at 10-11. AJM will below identify

the factual arguments offered by DLI and then indicate the reason these arguments are

unavailing:

> (1)    The record shows that AJM informed DLI that AJM would
>         financially assist DLI with any wage claims;

Response:  AJM respectfully refers the Court to the detailed Response of

Defendants to DLI's Statement of "Undisputed Facts" with respect to Statement Nos. 5

through 9. As shown in AJM's Response, all discussions of an assumption of liability by

AJM for the Davis Bacon charges were in the nature of settlement discussions. Mr.

Corrigan's characterization of AJM's position regarding settlement is supported by AJM

Ex. 20 which is an e-mail string beginning with an e-mail from Mr. Corrigan to Mr.

Lacey proposing a nine point settlement and a reply from Mr. Lacey rejecting that

proposal.

> (2)    AJM provided DLI with a legal opinion from its attorneys to support
>         its promises;

Response: As noted in AJM's Response to DLI Statement of Fact No. 9, AJM

procured from legal counsel two documents: an advocacy letter to be presented to the

Department of Labor supporting DLI's position and an "internal memo" to AJM

indicating that the Davis Bacon issue could be seen in two different ways. *See* AJM Ex. 1,

Depo. of M. Corrigan at pp. 59-60. This second internal memorandum was given to DLI

and demonstrates that AJM was advocating for its subcontractor, not making

misrepresentations of law or fact.

    (3)    AJM repeatedly promised to compensate DLI for any unpaid wages
if the position taken by AJM was found to be incorrect;

Response: This contention is essentially redundant of contention No. 1 above. For

the same reasons offered in response thereto, there is no basis in the record for an alleged

promise to pay these wages.

    (4)    DLI relied on the promises and representations of AJM to its detriment;

Response: DLI did not rely on the alleged promises and representations of AJM at

the time the contract between the parties was formed. As acknowledged by Dale Lacey in

his affidavit, DLI Ex. 2, questions regarding the Davis Bacon rate did not arise until

March of 2005, three months after DLI commenced work on the project. At this point in

time, the parties had already agreed on a set hourly rate of $55 per hour, $65 per hour for

overtime, for the "time and materials" phase of the parties' contract. *See* AJM Ex. 1,

Depo. of M. Corrigan at pp. 20-21; AJM Ex. 2, Depo. of D. Lacey at pp. 36-37.

    (5)    A majority of the project was a time and material contract, which is
an hourly contract, and DLI could have increased its hourly rate to
include the increased wage.

Response: According to DLI's own accounting of the project (AJM Ex. 4, DLI Ex.

5), the total of DLI's claim comes to $2,211,246.25. DLI attributes a total of $1,250,000

to the lump sum contract, leaving a balance of $961,246.25 for "time and materials"

work. Thus, DLI's own account disputes the contention that a majority of the project was

a time and material contract. Further, at the time the Davis Bacon issue first arose for

discussion in March 2005, the parties had already agreed upon the hourly rate for time

and materials work, and DLI had already issued four invoices for time and materials

work. *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 20-21; AJM Ex. 2, Depo. of D. Lacey

at pp. 36-37; AJM Ex. 4, DLI Summary of Account. As noted by Mike Corrigan in his

deposition, DLI was reporting on its certified payroll that it was paying its employees $28

per hour in wages and fringe benefits. AJM Ex. 1, Depo. of M. Corrigan at p. 75. Mr.

Corrigan further noted that the $55 per hour rate agreed upon by the parties for time and

materials work left more than sufficient margin for DLI to cover its costs on the Davis

Bacon issue. *Id* at p. 78.

Based on the foregoing, DLI has failed to supply any evidence entitling it to

recovery on a theory of promissory estoppel. In light of DLI's failure to plead a cause of

action for promissory estoppel in its complaint and the complete absence of any evidence

in support of such a theory, DLI's argument should be rejected as a matter of law.

### C.    THE SUBCONTRACT

Faced with the multiple clear provisions of the subcontract quoted in Defendants'

Motion for Partial Summary Judgment, which make it clear that DLI is responsible for the

wages at issue, DLI now takes the position that the provisions of the written subcontract

are inapplicable because "AJM admittedly never executed the subcontract and returned it

to DLI." DLI Opposition at 11-12, citing deposition of M. Corrigan at 38. DLI cites no

legal authority to support its position in this regard. DLI's attempt to repudiate the

Subcontract is particularly unsupportable when DLI alleged in paragraph 14 of its own

Complaint: "*A copy of the revised subcontract is attached hereto as Exhibit C and is*

*incorporated herein by reference.*" (italics in the original). The subcontract attached as Exhibit C

to the Complaint is the same subcontract relied upon by AJM in this matter.

A signature to the contract by AJM is not necessary to bind DLI to its terms.

District of Columbia law is clear that the mere expectation that another party will sign an

agreement does not prevent those signing from being bound even though the expected

party does not sign. *See Davis v. Winfield, 664 A.2d 836, 838 (D.C. 1995)*("When the

parties to a contract set forth the terms of their agreement in writing and manifest in some

manner a clear intent to be bound, the absence of one party's signature on the written

agreement will not defeat or invalidate the contract. The purpose of a signature is simply

to demonstrate mutual assent to a contract, but that may be shown instead, or in addition,

by the conduct of the parties").

The conduct of the parties in this case meets the *Davis v. Winfield* test. As noted in

Defendants' Motion for Partial Summary Judgment, DLI was given a written subcontract

in February 2005 relating to its work on this project. DLI held onto the contract for nearly

six weeks and then signed the Agreement after making extensive changes and

annotations. As noted by DLI's president, Dale Lacey, on DLI's file copy of the

transmittal letter: "We never received  ... a copy of my contract approved by [AJM

Manager] Mike Corrigan. I figured he accepted the deletions that I made to the

18

Agreement." *See* AJM Ex. 6 to its Motion, Letter from DLI to AJM dated April 5, 2005.

This is not a case where the party who failed to sign the contract seeks to avoid its enforcement. This is a case where the party signing the contract seeks to deny its existence. Moreover, DLI seeks to repudiate the subcontract after it relied upon this document as a basis for its Complaint in this matter. DLI is bound to this document and must accept all of the terms and conditions contained therein.

### D.    Breach of Agreement to Pay

DLI makes the facetious argument that there was an agreement between the parties in which AJM would pay DLI $300,000.00 to settle DLI's outstanding extra claim tickets (*See* AJM Ex. 7 for collection of extra claim tickets), and an agreement by AJM to pay the Davis Bacon liability. DLI Opposition at p. 13. With respect to the Davis Bacon liability, AJM respectfully refers the Court to the arguments appearing in Section III.B. above as to why there was no assumption of liability of the Davis Bacon claims by AJM.

On the issue of a settlement agreement, it should be noted that DLI's Complaint in this matter does not allege a breach of an executory accord to settle the dispute between the parties, even though the Complaint was filed more than four months after the alleged agreement to settle. DLI's Complaint is limited to a claim of a breach of subcontract and quantum meruit claims against AJM, and Miller Act bond claims against the surety defendants. DLI should not now be heard to make a claim for breach of an alleged settlement agreement when this agreement was never plead in DLI's Complaint, and

especially when discovery in this matter has now been closed.

As to proof of a settlement between the parties for the sum of $300,000.00, DLI relies upon the self serving testimony of its own president and a single sheet of paper on which a summary of DLI's claims appeared and the parties made a number of notes and Mr. Lacey applied a rather large doodle. *See* AJM Ex. 4 and DLI Ex. 5. AJM's Manager, Michael Corrigan, was shown the same exhibit as referenced by DLI in this contention at his deposition. Mr. Corrigan testified about this document as follows:

> Q.    What happened as a result of this doodling?
>
> A.    It was not agreed to, he left the table and we went to a bar and that was it.
>
> Q.    So, you guys didn't reach any agreement but yet you went out to drink?
>
> A.    Correct. [Remaining testimony omitted as irrelevant].

AJM Ex. 1, Depo. of M. Corrigan at p. 106. It is further worth noting that an alleged agreement between DLI and AJM was never documented after the fact of the meeting between the parties.

DLI has failed to plead the existence of an enforceable settlement agreement in its Complaint and failed to meet its burden to show an agreement to settle existed. DLI is not entitled to summary judgment in its favor on either of these claims.

## **CONCLUSION**

For all of the foregoing reasons, and for the reasons previously set forth in Defendants' Motion for Partial Summary Judgment, the defendants respectfully request that their Motion for Partial Summary Judgment be granted and that Plaintiff's Counter-Motion for Partial Summary Judgment be denied.

Respectfully submitted,

GAVETT AND DATT, P.C.

BY _____/s/_____

Geoffrey S. Gavett, D.C. Bar No. 375884
15850 Crabbs Branch Way, Suite 180
Rockville, Maryland 20855-2622
(301) 948-1177
**Counsel for Defendants Allegheny
Jefferson Millwork, LLC, Fidelity &
Deposit Co. of Md, Great
American Insurance Co., and
Travelers Casualty and Surety Co.**

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Defendants' Consolidated Memorandum of Law in Reply to Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment and Support of Defendants' Opposition to Plaintiff's Counter-Motion for Partial Summary Judgment, and proposed order were electronically filed and electronically served on this      day of         , 2007 to:

Shawn C. Whittaker, Esquire                                    **Counsel for Plaintiff**
The Law Office of Shawn C. Whittaker, P.C.
902 Wind River Lane, Suite 203
Gaithersburg, Maryland 20878
240-477-1677


                                          /s/
                                        Geoffrey S. Gavett


F:\Data\GD\Corporate\428.001\pleadings\AJM Consolidated Memo of Law - Reply to Opp & Opp to Pltf MSJ.wpd

22

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **for the use and benefit of** | | |
| **D.L.I. INCORPORATED** | : | |
| | | |
| **Plaintiff** | : | **Case No.: 1:06CV00875 (RCL)** |
| | | |
| **v.** | : | |
| | | |
| **ALLEGHENY JEFFERSON** | : | |
| **MILLWORK, LLC, et al.** | | |
| | : | |
| **Defendants** | | |

## <u>ORDER</u>

UPON CONSIDERATION OF Plaintiff's Counter-Motion for Partial Summary

Judgment, the opposition thereto, and any oral argument of counsel, it is this _____ day of

_____, 200___,

ORDERED, that the Motion is DENIED.

_____          _____
                                            Royce C. Lamberth, Judge
                                            United States District Court for the
                                            District of Columbia

cc:    Shawn C. Whittaker, Esquire
       The Law Office of Shawn C. Whittaker, P.C.
       902 Wind River Lane, Suite 203
       Gaithersburg, Maryland 20878
       **Counsel for Plaintiff**

       Geoffrey S. Gavett, Esquire
       Gavett and Datt, P.C.
       15850 Crabbs Branch Way
       Suite 180
       Rockville, MD 20855
       **Counsel for Defendants**