**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,
for the use and benefit of
D.L.I. INCORPORATED

        Plaintiff,

vs.

ALLEGHENY JEFFERSON MILLWORK, LLC,
    et al.

        Defendant(s).

Case No.06cv-875 (RCL)

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT**

    Now comes the Plaintiff D.L.I. Incorporated (hereinafter "DLI"), by and through counsel Shawn C. Whittaker, and submits this Response to Defendants' Reply to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment and Defendants' Consolidated Memorandum of Law in Support of Defendants' Opposition to Plaintiff's Counter-Motion for Partial Summary Judgment and in support thereof states the following:

**I.    INTRODUCTION.**

    Each party has filed motions for partial summary judgment. There are four components of the parties' motions:  (1) the amount due on the lump-sum contract; (2) disputed field tickets for change

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

orders; (3) Department of Labor (hereinafter "DOL") wage claim; and (3) breach of post-project agreement to pay. Despite the parties' arguments and positions, there is one common theme rampant in this litigation – AJM has on numerous occasions agreed to compensate DLI for its performance on the Project, whether it is for the increase of the base price on the lump-sum contract, the DOL wage issue, or the post-project reconciliation, and then later denies any liability to DLI. This Court should stop AJM's deceptive practices and enter summary judgment for DLI.

DLI believes that the record clearly shows that DLI is entitled to summary judgment for: (1) $86,750.00 for the remaining amount due on the lump-sum contract, as the contract amount was $1,250,000.00, not $1,175,000.00; (2) $164,834.83 for AJM's responsibility for the payment of the DOL wage claim; and/or (3) $300,000.00 for the parties' post-project reconciliation and agreement by AJM to pay such amount to DLI for DLI's performance on the Project. AJM also admits to owing DLI at least $5,665.00 on the time and material portion of the Project. *See Def. Mot. at p. 4.*

As to the lump-sum contract, the record clearly shows AJM agreed to increase the lump-sum contract price from $1,175,000.00 to $1,250,000.00, leaving a balance due and owing from AJM to DLI in the amount of $86,750.00, plus interest. As to the DOL wage claim,

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

the record unmistakably shows that AJM agreed to compensate DLI for the payment of the DOL wage claim in the event that the DOL found any wage liability.  As to the $300,000.00, again the record shows that AJM, knowing that it owed DLI monies on the Project, agreed to pay DLI $300,000.00 as final payment for all claims, which payment DLI accepted.  However, par for course, AJM failed to pay the $300,000.00, which led to the institution of this litigation.  As to the "Extra Claim" invoices for the change orders, summary judgment is not proper as the facts are in dispute.

## II.  THE PARTIES' STATEMENTS OF MATERIAL FACTS.

### A.  DLI'S SECOND RESPONSE TO DEFENDANTS' STATEMENTS OF "UNDISPUTED FACTS."

In AJM's Consolidated Memorandum, AJM claims that DLI fails to comply with LCvR 7(h).  AJM asserts that DLI fails to set forth a separate recitation of evidence on which it relies to dispute AJM's Statement of Material Facts (hereinafter "AJM' Statement").  AJM's allegation is erroneous, as DLI has fully complied with LCvR 7(h) and has provided support from the record both to dispute AJM's statement of undisputed facts and its own statement of undisputed facts.  However, to ensure complete clarity and complete compliance with LCvR 7, DLI will again indicate the parts of the record that

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

indicate that there is a dispute as to AJM's Undisputed Facts ¶¶ 8, 11, 12 and 22.

**AJM Statement 8**.    AJM and DLI agreed on an hourly rate of $55 per hour for standard hours, and $65 per hour for overtime hours. *See* AJM Ex. 1, Depo. of M. Corrigan at pp. 20-21; AJM Ex. 2, Depo. of D. Lacy at pp. 36-37.

**DLI Reply.**    DLI disputes the above statement because due to the issues regarding the DOL wage claim, DLI and AJM agreed that AJM would compensate DLI an additional amount for the increased rates that needed to be paid to the workers.  Depo of D. Lacy at 99 35-38. DLI raised its hourly rates and instructed its subcontractors to raise their hourly rates.  Id. at p. 38.  See also DLI's Opp. Ex. 2. For the pay period March 6-12, 2005, DLIs' subcontractors did raise their pay rates.  See DLI's Opp. Exhibit 2.  However, AJM instructed DLI to lower its and its subcontractors hourly rates as it was AJM's position that DLI and its subcontractors were paying their laborers correctly.  See DLI's Opp. Exhibit 2.  Depo. of D. Lacy. p. 38.

**AJM Statement 11.**    On or about February 12, 2005, defendant AJM submitted a subcontract to plaintiff DLI for review.  DLI made certain revisions to the subcontract and eventually signed and retuned the contract on April 5, 2005.  The total amount of the subcontract was $1,175,000.00.  *See* Complaint at ¶12; AJM Ex. 5, Copy of Subcontract.  The parties are in agreement that all but $11,750.70 has been paid on the lump sum agreement.  *Compare* AJM Ex. 3 (AJM Reconciliation of Account) with AJM Ex. 4 (DLI Reconciliation of Account); *See* AJM Ex. 2, Depo. Of D. Lacy 17-18.

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

**DLI Reply.**   DLI disputes the above statement because the base contract amount was $1,250,000.00 for the lump sum contract for the 5th and 6th floors.  Depo. of Corrigan at pp. 23-28.  See also copy of December 22, 2004 electronic mail from M. Corrigan to D. Lacy attached to DLI's Opposition as Exhibit 1, references at Depo. of M. Corrigan p. 27.  AJM added $75,000.00 to the base amount of the lump sum contract in the event that AJM did not pay DLI $200,000.00 on another Project, the Smithsonian North American Indian Museum.  Depo. of M. Corrigan at pp. 23-28.  Indeed, AJM did not pay DLI the $200,000 on the Indian Museum Project so AJM increased the base amount of the lump sum contract from $1,175,000.00 to $1,250,00.00.  Depo. of M. Corrigan at pp. 23-28. Therefore, the amount still remaining owed and not paid on the lump sum contract is $86,750.00.  See DLI's Opp. at ¶ 1.

DLI asserts that this fact is not in dispute, but not as AJM contends.  Quite the contrary, the record clearly shows that there is no dispute as to the base amount of the lump sum contract. Indeed, AJM's Consolidated Memorandum of Law concedes that the lump sum contract was $1,250,000.00.  Mr. Corrigan of AJM testified that there "'would be an addition to a **total contract amount…'"** Consolidated Mem. at p. 6 (quoting Dep. of M. Corrigan at pp. 23-28) (emphasis added).  AJM's Consolidated Memorandum continues that the

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

dispute is largely a matter of semantics and that AJM has **resisted** payment of this figure given the numerous dollars in dispute. However, semantics and AJM's **resistance** to payment does not mean that AJM does not owe DLI the $86,750.00 on the lump sum contract. This fact is not in dispute and DLI is entitled to partial summary judgment in the amount of $86,750.00.

**AJM Statement 12**. DLI's remaining claims consist of five "Extra Claim" Invoices submitted to AJM as follows:

| Invoice No. | Amount Claimed | Description of Basis of Claim |
|---|---|---|
| 4358 | $166,493.75 | Change order work under lump sum contract for 5th and 6th Floors |
| 4387 | $43,095.00 | Change order work under lump Sum contract for 5th and 6th Floors |
| 4397 | $64,285.00 | Change order work under lump Sum contract for 5th and 6th Floors |
| 4592 | $191,909.41 | Davis Bacon charges by DOL – Listed as "Millwork Installation in invoice" |
| 4606 | $75,000.00 | Incentive claim arising from American Indian Museum Project |
| **Total** | **$540,783.16** | |

*See* AJM Ex. 3, AJM Reconciliation of Account; AJM Ex. 7, Collection of Extra Claim Invoices.

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

**DLI Reply.**     AJM's statement is simply a summary of all of the components of DLI's claim.   DLI does not believe that it needs to restate why it disagrees with AJM's characterizations of DLI's claims.   However, DLI agrees that there are four remaining claims (and the amount AJM admits owing on the time and material portion of the project), but does not agree that the $75,000.00 is a remaining claim.   DLI also disputes the amount of the DOL claim.

**AJM Statement 22.**   On March 20, 2007, the Department of Labor served its final determination on Centex advising that the sum claimed for the Davis Bacon violations came to a total of $196,509.99.   *See* AJM Ex. 14.

**DLI Reply**.     The reason DLI disputes the above statement is because on July 23, 2007, the DOL and DLI finalized the DOL claim of $164,834.83.   See DLI's Opp. Ex. 2 and revised statements of unpaid wages and DLI authorization to release funds attached to DLI's Opp. as Ex. 3.   *See also letter to DOL with releases attached as Exhibit A to this Response.*   Contrary to Defendants' Statement, the DOL's final determination of the unpaid wage claims was $164,834.83.   See DLI's Opp. Exs. 2 and 3; DLI's Opp. at ¶ 4.   Prior to the July 23, 2007 DOL determination, no final determination had been made.   DLI has been in continuous discussions with the DOL to resolve the wage claim.

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

    **B.    DLI'S RESPONSES TO AJM'S RESPONSE TO DLI'S STATEMENT OF UNDISPUTED FACTS.**

    **DLI STATEMENT 1.**    Plaintiff agrees with Defendants' Statement of Material Facts as to which there is no genuine issue (hereinafter "Defendants' Statement"), except for Defendants' Statements ¶¶ 8, 11, 12, and 22.

    <u>**DLI REPLY TO AJM REPLY TO DLI STATEMENT No. 1.**</u>    Please see above section for a complete reply to AJM's contention that DLI's Opposition failed to set forth a separate recitation of evidence on which it relies to dispute AJM's Statement Nos. 8, 11, 12 and 22.

    **DLI STATEMENT 2.**    As to the lump sum contract for the 5th and 6th floors referenced in paragraph 11 of Defendants' Statement, the base contract amount was $1,250,000.00. Depo. of M. Corrigan at pp. 23-28.  See also copy of December 22, 2004 electronic mail from M. Corrigan to D. Lacy attached as Exhibit 1, referenced at Depo. of M. Corrigan p. 27.  AJM added $75,000.00 to the base amount of the lump sum contract in the event that AJM did not pay DLI $200,000.00 on another Project, the Smithsonian North American Indian Museum. Depo. of M. Corrigan at pp. 23-28.  Indeed, AJM did not pay DLI the $200,000.00 on the Indian Museum Project so AJM increased the base amount of the lump sum contract from $1,175,000.00 to $1,250,000. Depo. of M. Corrigan at pp. 23-28.  Therefore, the amount still remaining owed and not paid on the lump sum contract is $86,750.00.

    <u>**DLI REPLY TO AJM REPLY TO DLI STATEMENT No. 2.**</u>    DLI alleges that this fact is not in dispute, but not as AJM asserts.  The base contract amount was $1,250,000.00 for the lump sum contract for the 5th and 6th floors.  Depo. of Corrigan at pp. 23-28.  See also copy of December 22, 2004 electronic mail from M. Corrigan to D. Lacy attached to DLI's Opposition as Exhibit 1, references at Depo. of M. Corrigan p. 27.  AJM added $75,000.00 to the base amount of the lump sum contract in the event that AJM did not pay DLI $200,000.00 on another Project, the Smithsonian North American Indian Museum. Depo. of M. Corrigan at pp. 23-28.  Indeed, AJM did not pay DLI the $200,000 on the Indian Museum Project so AJM increased the base amount of the lump sum contract from $1,175,000.00 to $1,250,00.00. Depo. of M. Corrigan at pp. 23-28.  Therefore the amount still remaining owed and not paid on the lump sum contract is $86,750.00. See DLI's Opposition at ¶ 1. In fact, the record clearly shows that there is no dispute as to the base amount of the lump sum contract.

Indeed, AJM's Consolidated Memorandum of Law concedes that the lump sum contract was $1,250,000.00. Mr. Corrigan of AJM testified that there "'would be an addition to a **total contract amount…'**" Consolidated Mem. at p. 6 (quoting Dep. Of M. Corrigan at pp. 23-28) (emphasis added).

**DLI STATEMENT 3.** The Courthouse Project was DLI's first Davis-Bacon project. Depo. of D. Lacy at p. 8.

**<u>DLI REPLY TO AJM REPLY TO DLI STATEMENT No. 3.</u>** DLI disputes AJM's contention that the statement of fact is not "material" as this facts is directly relevant as to how AJM dealt with DLI regarding the DOL wage claim. However, AJM doe not dispute this fact.

**DLI STATEMENT 4.** Since the inception of DOL's involvement with the Project regarding unpaid wages, DLI has worked with the DOL to resolve the unpaid wage claim. See Affidavit of Dale Lacy attached as Exhibit 2. On July 23, 2007, the DOL and DLI agreed that the unpaid wage claim totaled $164,834.83. See Exhibit 2 and revised statements of unpaid wages and DLI authorization to release funds attached as Exhibit 3. Contrary to Defendants' Statement, the DOL's final determination of the unpaid wage claim was $164,834.83. See Exhibit 2 and 3.

**<u>DLI REPLY TO AJM REPLY TO DLI STATEMENT No. 4.</u>** DLI submits to this Court that the DOL wage claim has been reduced and resolved in full. *See letter to DOL with releases attached as Exhibit A to this Response.* Further, despite AJM's statement, AJM has been involved with discussions with DOL, especially during the Project. Additonally, DLI's counsel has kept AJM's counsel informed of DLI's discussions with the DOL and has copied him on all correspondence. Even more, AJM's counsel himself has had numerous discussions with the DOL regarding this Project. If AJM contests DLI's statement, then AJM should simply contact the DOL representative, Bruce Dory, to confirm DLI's assertion.

**DLI STATEMENT 5.** AJM agreed to pay at least a portion of the DOL unpaid wage claim. Depo. of M. Corrigan at p. 53.

**<u>DLI REPLY TO AJM REPLY TO DLI STATEMENT No. 5.</u>** DLI disputes AJM's contention that Mr. Corrigan's testimony is "grossly inappropriate in light of the dictates of Fed. R. Evid. 408." AJM

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

simply attempts to classify every discussion between the parties as settlement discussions to avoid the introduction of evidence against AJM.  It is AJM who mischaracterizes its testimony.  The deposition quote contained in the Consolidated Memorandum at p. 5 involved a specific discussion after the end of the Project, when the parties reached an agreement that AJM would pay DLI $300,000.00 to close out the Project.  Depo. of M. Corrigan at p. 54.  Mr. Corrigan continues that during the Project on a day-to-day basis he agreed, on behalf of AJM, to assist DLI financially with DOL claim.

    As is further discussed, offers to pay or settle made before a controversy are distinguishable from offers made after a controversy has arisen.  <u>Crain v. Allison</u>, 443 A.2d 558 (D.C. 1982).  Such statements made prior to a controversy are admissible.

    **DLI STATEMENT 6.**  During the Project, during the course of discussions with the DOL, AJM agreed to compensate DLI financially with regards to the DOL unpaid wage claim.  Depo. of M. Corrigan at pp. 55-56.

    **<u>DLI REPLY TO AJM REPLY TO DLI STATEMENT No. 6.</u>**  DLI requests this Court to read the entirety of Mr. Corrigan's deposition.  DLI submits to this Court that it is abundantly evident that Mr. Corrigan on numerous times, during and after the Project, agreed to compensate DLI financially for any DOL wage claim.  As is further discussed, Mr. Corrrigan's statements are legally relevant and material.

    **DLI STATEMENT 7.**  The dispute involving the DOL wage claim was not whether a prevailing wage per the Davis Bacon Act had to be paid laborers but rather the issue involved whether *per diem* and fringe benefits paid to laborers was included when determining the amount of hourly wages paid.  Depo. of M. Corrigan at pp. 52, 75-77.

    **<u>DLI REPLY TO AJM REPLY TO DLI STATEMENT No. 7.</u>**  AJM concurs with this statement.

    **DLI STATEMENT 8.**  AJM took the position that DLI and its subcontractors paid the correct amount to its laborers.  Depo. of M. Corrigan at pp. 75-77.

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

**DLI REPLY TO AJM REPLY TO DLI STATEMENT No. 8.**    DLI disputes AJM's assertions that AJM's statements regarding financial responsibility for the DOL wage claim are not "material." AJM made such statements to keep DLI on the Project and as is further explained, such statements are legally material.

**DLI STATEMENT 9.**    AJM supported its position by providing DLI and the DOL with a legal opinion from its attorneys, Thelen Reid, that the amount DLI and it subcontractors paid to its laborers was correct. Depo. of M. Corrigan at p. 56.

**REPLY TO AJM REPLY TO DLI STATEMENT No. 9.**    DLI believes that such statements are material and relevant. AJM providing legal opinions to DLI from AJM's attorneys proves that AJM induced DLI to maintain its rates and stay on the Project. Such evidence also supports that AJM agreed to pay DLI in the event that DLI would owe additional money for any wage claim. AJM did not want to pay DLI additional monies so AJM supported its own opinions with the legal opinions of its attorneys.

**DLI STATEMENT 10.**    In fact, due to the issues regarding the DOL wage claim, DLI instructed its subcontractors to raise their hourly rates. See Exhibit 2. Depo. of D. Lacy. p. 8. For the pay period March 6-12, 2005, DLI's subcontractors did raise their pay rates. See Exhibit 2. However, AJM instructed DLI to instruct its subcontractors to lower the hourly rates as it was AJM's position that DLI and its subcontractors were paying their laborers correctly. See Exhibit 2. Depo. of D. Lacy. p. 8.

**REPLY TO AJM REPLY TO DLI STATEMENT No. 10.**    DLI disputes AJM's reply that DLI statement 10 is not "material." Statement 10 because is a further indication that that AJM agreed to compensate DLI on the DOL wage issue and DLI relied on such representations. Despite AJM's assertions that there is no documentation besides Mr. Lacy's self-serving affidavit, AJM is in possession of DLI's payroll from March 6-12, 2005, showing that DLI's payroll was reduced. Further, contrary to AJM's assertion, Dale Lacy did in fact testify to the wage increase and Mr. Corrigan instructing DLI and its subcontractors to reduce the labor rates because AJM instructed DLI that it was paying the correct rates. See Depo. of D. Lacy at p. 37-38.

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

DLI STATEMENT 11.    On January 27, 2006, AJM presented a payment schedule to DLI via electronic mail.  See electronic mail attached as Exhibit 4.

**REPLY TO AJM REPLY TO DLI STATEMENT No. 11.** As   previously stated, AJM simply attempts to classify every discussion between AJM and DLI as a settlement discussion to prevent the introduction of evidence.  Evidence that a party offered to pay a lesser amount than the full claim can be used to support a breach of contract claim when discussions had not crystallized to point of threatened litigation.  Cook Assocs. v PCS Sales (USA), Inc.,) 271 F Supp 2d 1343 (DC Utah 2003).  Such discussions are mere business communications and not settlement discussions.  Id.  Further, even if the discussions are settlement discussions, AJM's statements contained in settlement discussions can be used for other purposes other than to show liability, such as estoppel.  Savoy IBP 8, Ltd. v Nucentrix Broadband Networks, Inc., 333 BR 114 (ND Tex, 2005).  Nonetheless, it is this Court that must look at the discussions between the parties to determine if such discussions are settlement discussions.  DLI asserts that prior to this litigation the parties did not have settlement discussions as no controversy had arisen.  The parties were friends, involved on numerous projects together.  Further, the parties reached a valid and enforceable agreement for AJM to pay DLI $300,000.00 to close out the Project.

DLI STATEMENT 12.    A couple of days after the January 27, 2006 electronic mail from AJM to DLI, the parties met in person to discuss payment arrangements.  See worksheet with notes attached as Exhibit 5.  AJM agreed to pay DLI $300,000.00 and to pay the DOL claim.  Depo. of D. Lacy at p. 47.  DLI accepted the payment arrangement as set forth by AJM.  Depo. of D. Lacy at p. 47.  AJM never made the payments as agreed to DLI.

**REPLY TO AJM REPLY TO DLI STATEMENT No. 12.**  See DLI Reply to AJM reply to DLI statement No. 11.

DLI STATEMENT 13.    After the parties meeting referenced above, the parties went to a bar to have drinks.  Depo. of M. Corrigan at p. 106.

**REPLY TO AJM REPLY TO DLI STATEMENT No. 13.**  DLI believes that this statements is material as it shows the state of mind of the

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 12

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

parties and corroborates that AJM agreed to pay DLI $300,000.00 to close-out the Project.

**III. ANALYSIS.**

**A.    AMOUNT    DUE    ON    THE    LUMP-SUM    CONTRACT.**

DLI is entitled to summary judgment on this issue, pursuant to Fed. R. Civ. Proc. 56, as AJM has plainly admitted that additional monies are owed to DLI on the lump sum contract.  In AJM's Reply to DLI's Opposition to AJM's Motion for Partial Summary Judgment, AJM states, "[i]n the end, AJM has resisted payment of this figure given the numerous dollars in dispute, unresolved change orders, and AJM's substantial back charge for the Davis Bacon issue."  AJM provides no legal or factual basis for continuing to dispute this claim.

Throughout this litigation, AJM has denied liability for the $75,000.00 increase in the lump-sum contract.  AJM characterizes this additional money as a "matter of semantics," but it is money that is unquestionably due to DLI on the lump-sum contract.  AJM claims the $75,000.00 increase in the lump sum contract was promised to DLI with respect to another project; however, as AJM points out in its Reply to DLI's Opposition to AJM's Motion for Partial Summary Judgment, Mr. Corrigan testified that the $75,000.00 "would be an addition to a total contract amount due to D.L.I. after all settlement of outstanding change orders, back charges, what have

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 13

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

you, are contemplated and agreed to." See Depo. of M. Corrigan at pp. 23-28.

The Court obviously will see through AJM's admitted use of semantics to avoid a credit which is clearly due DLI. In fact, if AJM had ever admitted owing DLI the additional $75,000.00, this matter may have settled. Nonetheless, this issue warrants no further discussion. The facts regarding the amount due on the lump sum contract are not in dispute. Summary judgment should be entered as to the remaining balance of the lump sum contract, which is $86,750.70, plus interest. Further, DLI also requests this Court to sanction AJM for its continued defense of payment of the remaining amount due on the lump-sum contract as AJM's position is no supported existing law or the evidence.

### B. DAVIS-BACON ISSUE.

DLI contends that it is entitled to summary judgment as to AJM's liability on the Davis-Bacon wage issue on three legal grounds: (a) breach of contract; (b) mutual mistake; and/or (c) promissory estoppel. During the Project, the evidence clearly indicates that discussions arose between DLI and AJM and AJM agreed to compensate DLI for any wage liability. As a result, DLI believes that it is entitled to compensation in the amount of $164,834.83 for

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

the wage claim.  Again, AJM has failed that it agreed to pay any amount to DLI again failed to deliver on a promise it made to DLI.

**(1)    Breach of Contract.**

First, AJM argues that DLI ignores the language of the contract.  However, as is more fully set forth in Section III(C), it is AJM that ignores the clear and unambiguous language contained in AJM's own contract.  The specific language of the contract document is inapplicable.

Second, AJM argues that evidence used by DLI to support DLIs' claim for breach of contract is irrelevant, pursuant to Fed. R. Evid. 408, as all discussions of an assumption of liability by AJM for the DOL wage claim were in the nature of settlement discussions. Again, as previously mentioned, AJM simply attempts to classify every discussion between the parties as settlement discussions to avoid the introduction of evidence against AJM.  Offers to pay or settle made before a controversy are distinguishable from offers made after a controversy has arisen.  <u>Crain v. Allison</u>, 443 A.2d 558 (D.C. 1982).

In <u>Crain</u>, the issue before the Court was the admissibility of a letter written by the plaintiff's husband to the defendant requesting reimbursement for medical expenses.  Id. at 565.  The Court held "because the parties were not engaged in a dispute at the

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 15

time the letter was written, this letter could not have been written in the context of settlement negotiations." Id. at 566. The court also concluded that the word "settlement" as used in context, means "payment" and the statement is not an offer to compromise. Id.

In the case at hand, there was absolutely no dispute early in the Project when the parties entered into discussions regarding the DOL wage claims. Assuming as true AJM's testimony and intentions as stated, AJM advocated on behalf of DLI and itself that all parties were paying the correct wages. Depo. of M. Corrigan at p. 56. Thus, not only was there no dispute between AJM and DLI, but the parties were aligned Any reference Mr. Corrigan makes in his deposition testimony regarding "settlement" discussions is an overt attempt to prevent the introduction of evidence that AJM agreed to be liable for the DOL wage claims.

Third, AJM argues that DLI has failed to show consideration for a breach of contract to pay the DOL wage claim. However, the relationship between AJM and DLI parties is similar to a requirements contract and does not require the need for additional consideration.

A requirements contract is defined as:

> a contract where one party promises to supply all
> specific goods or services which the other party may need
> during a certain period at an agreed price. The other

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 16

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

> party implicitly promises that he will obtain his
> required goods or services from the first party
> exclusively. Though this type of contract lacks fixed
> and definable signposts of quantity which are ordinarily
> found in supply contracts, business necessities require
> that they be deemed enforceable.

Shader Contractors, Inc. v. United States, 149 Ct. Cl. 535, 540 (Ct. Cl. 1960). In addition to lacking a minimum quantity, requirement contracts also lack a promise from the buyer to order a specific amount, but consideration is furnished, nevertheless, by the buyer's promise to turn to the seller for all such requirements. Therefore, requirement contracts are enforceable despite a lack of consideration. Torncello v. United States, 231 Ct. Cl. 20, 29 (Ct. Cl. 1982).

In this case, DLI provided labor as required by AJM to install AJM's materials for the duration of the Project, both on a lump-sum basis and a time and material basis. Despite the additional promises to pay DLI, there was no need for additional consideration as DLI provided AJM labor to install AJM's materials as needed. Therefore, as the parties had a requirements contract, AJM's argument that DLI needed to provide additional consideration is unsupported by law or the facts.

Moreover, even in the absence of an agreement to pay a Davis-Bacon wage liability, Congress and the Courts have found that in

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 17

certain cases a contractor is entitled to additional compensation for a Davis-Bacon liability. AJM attempts to differentiate the cases <u>Reidell v. United States</u>, 43 Fed. Cl. 770 (Fed. Cl. 1999) and <u>American Line Builders v. United States</u>, 26 Ct. Cl. 1155 (Ct. Cl. 1992), which DLI cited in its Motion in support of its breach of contract claim, from the present facts.

AJM attempts to distinguish <u>Reidell</u> because AJM contends that there was never any preliminary erroneous interpretation suggesting that the Davis Bacon Act was not applicable to this Project as was in <u>Reidell</u>. However, similar to <u>Reidell</u>, the DOL determined that the correct wages were not paid on this Project and found that wages were owed retroactively. AJM's interpretations of the correct labor rate and instructions to DLI were erroneous. Further, AJM contends that the DOL dispute arose because in fact, it was determined that DLI was not paying the proper Davis Bacon wages. However, the <u>Reidell</u> Court cites 29 C.F.R. § 1.6(f) to determine that it had jurisdiction to determine it that the defendant should pay plaintiffs money, regardless of when Davis-Bacon issue arose. <u>Id</u>. at 773. Therefore, any preliminary determination of whether the Davis-Bacon Act is applicable or if it was later determined that DLI was not paying the proper Davis Bacon wages is insignificant in determining whether AJM should compensate DLI for the increased

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 18

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

wages.  Quite simply, the <u>Reidell</u> Court found that the contracting entity had to pay back wages for a contractor retroactively.  The contractor was entitled to additional compensation.  No additional consideration was necessary.

Further, AJM contends in <u>Reidell</u>, it was determined that the federal agency owed the Davis-Bacon wages, not the intermediary. However, in <u>Northern Colorado Constructors, Ltd.</u>, WAB Case No. 86-31 (Dec. 14, 1987), the Court stated, "the Davis-Bacon Act itself creates a contractual obligation on the part of the prime contractor to pay the sums which its subcontractor owes to the subcontractor's employees."  The Court ruled that a prime contractor was equally responsible for the repayment of unpaid wages as was its subcontractor.  Similarly, in the case at hand, AJM is equally liable for the correct payment of in wages.  AJM should bear the burden of paying the correct amount for DLI's labor to install its materials and for making an agreement to pay any liabilities for increased wages.

Again, in its weak attempt to distinguish <u>American Line Builders</u> from the instant case, AJM overlooks the real issue that a contractor was allowed to collect additional compensation when the DOL found that worked were not paid the proper wages.  The only distinction AJM makes between <u>American Line Builders</u> and the case at

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 19

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

hand is that AJM did not seek to reclassify any workers. However, that slight distinction is simply anecdotal. AJM instructed DLI that the *per diem* amounts and fringes paid to workers complied with the Davis-Bacon wage scale. This would be no different than if AJM had wrongly classified workers and it was later found that that those workers were owed additional compensation due to being misclassified. The fact of the matter is that DLI's laborers were classified correctly and that issue should not bar DLI from collecting wages from AJM, as AJM agreed to compensate DLI for the wages. AJM has not offered any sensible argument to contradict the logic set forth in American Line Builders.

Obviously, the DOL has seen the potential of such a circumstance where a contractor needs to be compensated after there has been a determination that wage need to be increased. 29 C.F.R § 1.6(f) states:

> The Administrator may issue a wage determination after contract award or after the beginning of construction if the agency has failed to incorporate a wage determination in a contract required to contain prevailing wage rates determined in accordance with the Davis-Bacon Act, or has used a wage determination which by its terms or the provisions of this part clearly does not apply to the contract. Further, the Administrator may issue a wage determination which shall be applicable to a contract after contract award or after the beginning of construction when it is found that the wrong wage determination has been incorporated in the contract because of an inaccurate description of the project or its

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

location in the agency's request for the wage
determination. Under any of the above circumstances, the
agency shall either terminate and resolicit the contract
with the valid wage determination, or incorporate the
valid wage determination retroactive to the beginning of
construction through supplemental agreement or through
change order, provided that the contractor is compensated
for any increases in wages resulting from such change.
The method of incorporation of the valid wage
determination, and adjustment in contract price, where
appropriate, should be in accordance with applicable
procurement law.

29 C.F.R. § 1.6(f). The regulations explicitly states that a

contractor should be compensated for any increases in wages after a

contract is awarded.  In this case, the DOL found that DLI owed

additional wages, because *per diem* and fringes were not included in

hourly rates.  DLI should be compensated by AJM for such a finding,

especially since AJM agreed to pay DLI in the event of such a

finding.  It would be unjust to require DLI to pay for the increase

while AJM, despites its assurances, paid no amount for the increased

wages.

Lastly, AJM's argument regarding consideration completely

ignores that parties can modify an existing contract.  "Parties to a

contract are free to modify that contract by mutual consent.  In

order to be valid, however, the modification must possess the same

elements of consideration as necessary for normal contract

formation."  <u>Rinck v. Assoc. of Reserve City Bankers</u>, 676 A.2d 12,

17 (D.C. 1996).  AJM was free to modify its contract with DLI, which

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 21

it did.   AJM agreed to provide DLI additional compensation and DLI agreed to provide labor to the Project.   DLI was free to find another contract at a greater price, but it relied on AJM's representations that AJM would compensate DLI for its performance on the Project.

**(2) Mutual Mistake.**

AJM asserts that reformation of a contract is an equitable doctrine and DLI did not seek equitable reformation of the subcontract in its complaint.   AJM fails to provide any legal support for such a position.   DLI has complied with the requirements of R. Civ. P. (8)(a) by giving the defendant fair notice of the basis of the suit.   <u>In re Estate of Curseen v. Ingersoll</u>, 890 A.2d 191 (D.C. 2006).   Further, a party need not allege the legal theories upon which it relies.   <u>Hostrop v Board of Junior College Dist. No. 515</u>, 523 F2d 569 (Ill., 1975).   Generally, there is no burden on a plaintiff to justify altering its original theory of recovery.   <u>Vidimos, Inc. v Laser Lab</u>, 99 F.3d 217(Ind., 1996). DLI's Complaint against AJM put AJM on notice of DLI's claim for reimbursement for the DOL wage claim, both under a breach of contract and quasi-contract/unjust enrichment causes of action.   If the Court does rule that DLI should have plead equitable reformation

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 22

in its' Complaint, DLI requests this Court for leave to amend its' Complaint.

AJM also asserts DLI has failed to show that the DOL wage claim issue went to the essence of the agreement between the parties at the formation of the contract. However, the correct labor rates were obviously part of the parties' price negotiations. DLI did not know that it was paying the incorrect labor rates. It relied on the mistake made by AJM that it was paying the correct labor rates.

Often times a mutual mistake is not discovered until after a contract has already been formed. AJM contends that because the first notice of a Davis Bacon issue arose two months after the work began that there was no mutual mistake of fact. However, it is clear from the facts that after DLI began work on the Project that there was a mutual mistake in determining the wage rates. Due to the confusion over the correct wage rate, DLI actually instructed its subcontractors to increase the wage rate, but again reduced the wage rate based on representations of AJM and its attorneys. Depo of D. Lacy p. 38. As a result, the existence of the mutual mistake of fact by DLI and AJM occurred when they entered the agreement but was not discovered until after work on the project began.

Further, AJM's contention that DLI has failed to show that the Davis Bacon issue went to the essence of the agreement is extremely

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

flawed.  AJM hired DLI to install AJM's materials.  In other words, DLI provided the labor to install AJM's materials.  At the essence of any agreement to provide labor is a wage rate and what is to be included in determining such a wage rate.

### (3)    Promissory Estoppel.

Again, AJM asserts, without any legal support, that DLI was required to plead a cause of action for promissory estoppel in its complaint.  DLI respectfully refers the Court to DLI's response in the above section with respect to the basic requirements for pleadings.  If this Court does find that DLI should have pled promissory estoppel, then DLI respectfully requests this Court for leave to amend its Complaint.

In AJM's Consolidated Memorandum, AJM argues that DLI misconstrued Green v. Howard University, 134 U.S. App. D.C. 81 (D.C. Cir. 1969) to use promissory estoppel to make gratuitous promises enforceable.  First, promissory estoppel can be used in the absence of gratuitous promises, such as in the instance of bargained transactions.  Id.  Secondly, gratuitous promises can be enforced through promissory estoppel as evidenced by Green.

In Green, Howard University terminated several teachers without a hearing, even though the teachers had requested one.  In proving that Howard University had an obligation to provide a hearing, the

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 24

teachers relied on personal assurances of Howard University officials and written statements of Howard University policy in the Faculty handbook.  The Court noted,

> Restatement (Second) of Contracts § 90 (Tent. Draft No. 2, 1965) which supports a finding that a contract between Howard and the teacher appellants had been breached.  See also Henderson, Promissory Estoppel and Traditional Contract Doctrine, 78 Yale L.J. 343 (1969), where it is shown that promissory estoppel has application in the field of bargain transactions, as well as in the area of gratuitous promises.

Green, 134 U.S. App. D.C 81.  The Court found that the the personal assurances that the Howard University officials made to the teachers regarding a hearing were in fact gratuitous promises that were sufficient and should be enforced through promissory estoppel.

DLI agrees that the rule regarding promissory estoppel is that, "there must be a promise which reasonably leads the promisee to rely on it to his detriment, with injustice otherwise not being avoidable." Maurice Electrical Supply Co., Inc. v. Anderson Safeway Guard Rail Corp., 632 F. Supp. 1082 (D.C 1986), citing N. Litterio & Co. v. Glassman Construction Co., 115 U.S. App. D.C. 335 (D.C. Cir. 1963); Solway Decorating Co. v. Merando, Inc., 264 A.2d 501 (D.C. App. 1970); and Solway Decorating Co. v. Merando, Inc., 240 A.2d 361 (D.C. App. 1968).  However, DLI disputes AJM's argument that the facts DLI used to prove recovery under the doctrine of promissory

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 25

estoppel are unavailing. DLI will respond to each of AJM's responses.

    (1) The record shows that AJM informed DLI that AJM would financially assist DLI with any wage claims:

    <u>DLI's Response</u>: AJM argues that **all** of the statemens made by AJM to DLI were in the nature of settlement discussions. DLI respectfully refers the Court to DLI's responses and analysis regarding settlement discussions. AJM statements are admissible and were not made during settlement discussions.

    (2) AJM provided DLI with a legal opinion from its attorneys to support its promises;

    <u>DLI's Response</u>: AJM argues that the legal opinion it supplied to DLI from its attorneys demonstrates that AJM was advocating for its subcontractor, not making misrepresentations of law or fact. Be as it may, AJM did make misrepresentations upon which DLI relied. AJM asserted that DLI was paying the correct amounts, which assertion it supported with the opinion of its own attorneys. DLI reasonably relied on AJM's position and AJM's agreement to compensate DLI for any unpaid wages. In fact, DLI increased its labor rate but returned it to the lower rate when instructed to do so by AJM.

    (3) AJM repeatedly promised to compensate DLI for any unpaid wages if the position taken by AJM was found to be incorrect;

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 26

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

DLI's Response:  See DLI's responses above.

(4)  DLI relied on the promises and representations to its detriment;

DLI's Response:  AJM argues that DLI did not rely on the alleged promises and representations of AJM at the time of the contract between the parties was formed.  The issue with regard to promissory estoppel is not when the reliance occurred but whether a promissee reasonably relied on a promise to his detriment.  Maurice Electrical Supply Co., 632 F. Supp. 1082.  At the time the Davis Bacon issues began to arise, AJM repetitively promised to compensate DLI for any unpaid wages.  DLI relied on the promise and representations of AJM to its detriment.  DLI could have increased its wages, sought additional compensation, or left the project. However, it relied on AJM's representations and continued to provide labor on both the lum-sum contract and the time and material contract.

(5)  A majority of the project was a time and material contract, which is an hourly contract, and DLI could have increased its hourly rate to include the increased wage.

DLI's Response:  The DOL issue arose in early 2005, about 2 months into the Project.  The Project was completed in December 2005.  Approximately, one half of the Project was time and material

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 27

and one-half was the lump-sum portion. DLI was legally free to charge a higher hourly rate on the time and material porition of the contract, or to submit a change order.

The evidence used by DLI to prove recovery under the doctrine of promissory estoppel is relevant and proves that AJM made promises to financially assist DLI with any wage claims. DLI relied on AJM's representations to its detriment. DLI is entitled to judgment under the legal theory of promissory estoppel.

## C. SUBCONTRACT.

AJM attempts to use the subcontract language, which is void of any mention of the Davis-Bacon Act, to escape its own promises to pay DLI for the wage claim. AJM argues that a signature to the contract by AJM is not necessary to bind DLI to its terms. However, the subcontract specifically states in Paragraph 28, "[t]he subcontract shall be of no force or effect unless and until accepted in writing by the Contractor at its office." In <u>Obelisk Corp. v. Riggs National Bank of Washington, D.C.</u>, 668 A.2d 847, 853 (D.C. 1995) the court held, "[w]hen language of a contract is clear and unambiguous on its face, we will assume that the meaning ordinarily ascribed to those words reflects the parties' intentions." AJM's Consolidated Memorandum simply ignores the statement contained in

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 28

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

its own contract. Quite simply, AJM never accepted DLI's alterations to the contract document and never returned an executed subcontract to DLI. Therefore, the subcontract language is inapplicable.

On December 9, 2004, DLI received the scope of work from AJM. Depo. of D. Lacy at p. 77. In February 2005, when the wage claim issue arose, DLI received a written subcontract from AJM. On or about April 5, 2005, five months into the Project, after making numerous revisions to the subcontract, DLI returned a copy of the subcontract to AJM. See letter attached to DLI's Response as Exhibit 6. DLI never received a response to the revised subcontract. Pursuant to the plain meaning of Paragraph 28 of the subcontract, the subcontract is unenforceable because AJM, by its own admission, never returned it to DLI. As a result, the subcontract between DLI and AJM is inapplicable to this matter.

### D. BREACH OF AGREEMENT TO PAY.

Once again, AJM argues that DLI must plead breach of a settlement agreement. DLI vehemently disagrees with AJM's characterization of AJM's post-project reconciliation and agreement to pay DLI $300,000.00 as a settlement agreement. AJM knows DLI was owed money, as is evident by this action and its own admissions. Therefore, in an effort to avoid any dispute between friends, AJM

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 29

offered to pay DLI $300,000.00 to close out the Project. DLI accepted such an offer and the parties went and had drinks. Thereafter, DLI waited for payment. When it did not receive payment, it filed suit. The written and oral evidence shows that AJM agreed to pay DLI $300,000.00. In any event, if this Court finds that DLI should have pled breach of the specific agreement to pay DLI $300,000.00, then DLI respectfully requests this Court for leave to amend its Complaint.

### IV. CONCLUSION.

For the reasons and analysis set forth above, DLI respectfully requests summary judgment for

(1) $86,750.00 - the remaining amount due on the lump-sum contract;

(2) $164,834.83 – the DOL claim;

(3) $5,665.00 – the amount owed on the time and material project; or

(3) $300,000.00 – the post-project reconciliation.

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 30

THE LAW OFFICE OF SHAWN C. WHITTAKER, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

Respectfully submitted,


/s/Shawn C. Whittaker
Shawn C. Whittaker
DC Bar #468533
1010 Rockville Pike, Suite 607
Rockville, MD 20852
(301)838-4502

Attorney for D.L.I. Incorporated

PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT - 31